Caption in Compliance with D.N.J. LBR 9004-1(b)

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Order Filed on March 18, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In Re:

BOWFLEX INC., *et al.*,[1]

               Debtors.

Chapter 11

Case No. 24-12364 (ABA)

(Jointly Administered)

## AMENDED ORDER (I) APPROVING THE AUCTION AND BIDDING PROCEDURES, (II) APPROVING THE DEBTORS' ENTRY INTO THE STALKING HORSE AGREEMENT AND STALKING HORSE BID PROTECTIONS, (III) SCHEDULING BID DEADLINES AND AN AUCTION, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (V) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through eighteen (18), is

hereby **ORDERED**.

**DATED: March 18, 2024**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: BowFlex Inc. (2667) and BowFlex New Jersey LLC (3679). The Debtors' service address is 17750 S.E. 6th Way, Vancouver, Washington 98683.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**SIDLEY AUSTIN LLP**
Matthew A. Clemente (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
mclemente@sidley.com

Maegan Quejada (*pro hac vice* pending)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
mquejada@sidley.com

Michael A. Sabino (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
msabino@sidley.com

**FOX ROTHSCHILD LLP**
Joseph J. DiPasquale, Esq.
Mark E. Hall, Esq.
Michael R. Herz, Esq.
49 Market Street
Morristown, NJ 07960
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
jdipasquale@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

Upon the *Debtors' Motion Seeking Entry of an Order (I) Approving the Auction and Bidding Procedures, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Authorizing the Debtors to Enter Into the Stalking Horse Agreement, (VI) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VII) Authorizing the Assumption and Assignment of Assumed Contracts, (VIII) Authorizing the Sale of Assets and (IX) Granting Related Relief* (the "Motion"),[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) approving the proposed marketing, auction, and bidding procedures attached as Exhibit 1 to this Order (the "Bidding Procedures"), by which the Debtors will solicit and select the highest or otherwise best offer(s) for the sale or sales (the "Sale Transactions") of all, substantially all, or any portion of the Debtors' assets (the "Assets"); (b) designating a stalking horse bidder and approving the Break-Up Fee[2] and Expense Reimbursements relating to a stalking horse bidder (the "Stalking Horse Bid Protections"); (c) establishing certain dates and deadlines related thereto and scheduling an auction or auctions, if any, for the Sale Transactions (the "Auction"); (d) approving the manner of notice of the Auction and sale hearing (the "Sale Hearing") as may be necessary; (e) authorizing entry into and approving that certain Asset Purchase Agreement with Johnson Health Tech Retail, Inc.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures (as defined below), as applicable.

[2] The "Break-Up Fee" is defined as 3.5% of $37,500,000.

(Page | 4)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

(the "Stalking Horse Bidder"), substantially in the form attached to the Bidding Procedures as

Schedule 2 (the "Stalking Horse Agreement"); (f) approving procedures for the assumption and

assignment of certain Executory Contracts (as defined below) and Unexpired Leases (as defined

below) in connection with the Sale Transaction, if any; and (g) granting related relief, all as more

fully set forth in the Motion; and upon the First Day Declaration and the Campbell Declaration

filed in support of the Motion; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the

District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle,

C.J.); and this Court having found that venue of this proceeding and the Motion in this district is

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief

requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other

parties in interest; and this Court having found that the Debtors' notice of the Motion was

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all

of the proceedings had before the Court and after due deliberation and sufficient cause appearing

therefor **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

(Page | 5)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

2.     The Debtors have articulated good and sufficient reasons for authorizing and approving (i) the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of the Debtors' enterprise and (ii) the selection of the Stalking Horse Bidder; and the Debtors' entry into the Stalking Horse Agreement, as determined by the Debtors in an exercise of their business judgment.

3.     The Debtors' proposed notice of the Motion and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of these Chapter 11 Cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**I.     Important Dates and Deadlines.**

5.     **Final Bid Deadline**. April 5, 2024 at 12:00 p.m., prevailing Eastern Time, is the deadline by which all Qualified Bids must be **actually received** by the parties specified in the Bidding Procedures.

6.     **Stalking Horse Bidder and Bid Protections**. Johnson Health Tech Retail, Inc. shall be the Stalking Horse Bidder for the Assets.

5

(Page | 6)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

7.     If the Stalking Horse Bidder is not a Successful Bidder, then upon the closing of an Alternative Transaction, the proposed Expense Reimbursement is hereby approved in its entirety and shall be payable by the Debtors in accordance with, and subject to the terms of, the Stalking Horse Agreement; *provided* that (a) the Consultation Parties and the U.S. Trustee shall have ten (10) days from receipt to review the summary invoices relating to the Expense Reimbursement for reasonableness; (b) in the event any Consultation Party or the U.S. Trustee files with this Court an objection to any such invoice within ten (10) days of its receipt thereof, the undisputed portion of such legal invoice shall be paid without further order of the Court, and the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection by the parties or this Court; and (c) in the event no Consultation Party or the U.S. Trustee files with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, such invoice shall be paid in the manner and subject to the terms and conditions set forth in the Stalking Horse Agreement without further order of the Court and shall not be subject to any further review, challenge or disgorgement.  The Expense Reimbursement shall constitute an administrative expense claim against the Debtors' bankruptcy estates without superpriority status or a lien.

8.     If the Stalking Horse Bidder is not a Successful Bidder, then upon the closing of an Alternative Transaction, the proposed Break-Up Fee is hereby approved in its entirety and shall be payable by the Debtors in accordance with, and subject to the terms of, the Stalking Horse Agreement. The Debtors are authorized to pay the Break-Up Fee in accordance with, and subject to the terms of, the Stalking Horse Agreement without further order of the Court.

(Page | 7)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

9.      The Break-Up Fee, to the extent payable under the Stalking  Horse Agreement, shall constitute an allowed administrative expense claim against the Debtors' estates without superpriority status or a lien.

10.      The Stalking Horse Bidder shall be deemed a Qualified Bidder, and the Stalking Horse Bid shall be deemed a Qualified Bid for purposes of the Bidding Procedures, which status cannot be abrogated by subsequent amendment or modification by the Debtors of the Bidding Procedures.

11.      No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

12.      **Auction**. The date and time of the Auction, if needed, is April 8, 2024, at 10:00 a.m. prevailing Eastern Time, which time may be extended by the Debtors in consultation with any official committee of unsecured creditors appointed in these cases and the DIP Agent (the "Consultation Parties"), upon written notice with the Court; provided that if the extension of the Auction breaches or is likely to breach a DIP Milestone, such extension shall require consent of the DIP Agent. The Auction will be held at the offices of the proposed co-counsel to the Debtors: Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019. Only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, those parties in interest who provide

| | |
|---|---|
| (Page \| 8) | |
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

notice to Debtors' counsel that is received at least five (5) days prior to the Auction ("Parties in Interest"), and any other parties as the Debtors may determine to include in their reasonable discretion, in consultation with the Consultation Parties, in each case, along with the representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction. The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders, the Consultation Parties, the U.S. Trustee, and Parties in Interest, in each case, no later than two business days before such Auction, and will post notice of the date, time, and place of the Auction no later than two business days before such Auction on the website of the Debtors' notice, claims, and solicitation agent, Epiq Corporate Restructuring, LLC (the "Notice and Claims Agent"), at https://dm.epiq11.com/Bowflex. For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets, in consultation with the Consultation Parties.

13.     **Notice of Successful Bidder**. Upon conclusion of the Auction, the Debtors shall file a Notice of Successful Bidder.

14.     **Sale Objection Deadline.** Objections to the Sale, if any, must be made on or before April 11, 2024 at 5:00 p.m. (prevailing Eastern time) (the "Sale Objection Deadline").

15.     **Sale Order.** The Debtors shall file and serve a form of proposed Sale Order, in form and substance satisfactory to the DIP Agent, no later than April 9, 2024.

(Page | 9)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

16. **Sale Hearing.** April 15, 2024, at 1 p.m. prevailing Eastern Time, is the date and time for the hearing for the Court to consider the Successful Bid or Successful Bids, if needed. Nothing in this Order or the Bidding Procedures shall be deemed to be a consent by the Secured Parties (as defined below) to any Bid chosen by the Debtors to be the Successful Bid.

17. **Sale Closing.** Closing of the Sale Transaction shall occur no later than **April 22, 2024**, or such later date as consented to by the DIP Agent.

## II.     Auction, Bidding Procedures, Auction Notice, and Related Relief.

18. The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures. Subject to the terms of the Bidding Procedures, the Debtors, in consultation with the Consultation Parties, may modify the Bidding Procedures as necessary or appropriate to maximize value for their estates.

19. Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

(Page | 10)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

20.     The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved. Within four (4) business days following the entry of this Order, the Debtors will cause the Auction Notice to be served upon (a) the Office of the United States Trustee for the District of New Jersey, (b) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis), (c) the United States Attorney's Office for the District of New Jersey, (d) the Internal Revenue Service, (g) the United States Securities and Exchange Commission, (h) the attorneys general for the states in which the Debtors operate, (i) the Consultation Parties, (j) any parties known or reasonably believed to have expressed an interest in the Debtors' Assets, (k) all known holders of liens, encumbrances, and other claims secured by the Assets, (l) each governmental agency that is an interested party with respect to the Sale Transaction, and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.

21.     The Debtors shall publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion (a) within three (3) business days after entry of this Order, in *The New York Times (National Edition)*, (b) within four (4) business days after entry of this Order, in *The Seattle Times*, and (c) within seven (7) days after entry of this Order, in *The Columbian,* and post the Auction Notice on their case website, https://www.dm.epiq11.com/BowFlex/.

22.     If the Debtors determine not to conduct an Auction, then the Debtors shall file a notice with the Court of such determination within one (1) business day of the making of such determination by the Debtors.

(Page | 11)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

23.     Pursuant to Local Rule 6004-2: (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly; and (c) the Auction shall be transcribed or videotaped.

**III.     Assumption and Assignment Procedures.**

24.     The procedures set forth below regarding the assumption and assignment of the Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder, if any, pursuant to section 364(f) of the Bankruptcy Code in connection with the Sale are hereby approved to the extent set forth herein.

25.     These Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' Executory Contracts and Unexpired Leases to be assumed and assigned in connection with the Sale under the Stalking Horse Agreement, if any, subject to the payment of any amount necessary to satisfy all defaults and actual pecuniary loss to the counterparty resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the relevant counterparty can assert under an Executory Contract or Unexpired Lease, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to a Contract (the foregoing amounts as

11

| (Page | 12) | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

stated in the Contract Assumption Notice (or Supplemental Assumption Notice), the "Cure Payments"):

(a)   **Contract Assumption Notice.** No later than three (3) business days following the entry of the Bidding Procedures Order (the "Assumption and Assignment Service Deadline"), the Debtors shall serve a notice of contract assumption (the "Contract Assumption Notice"), in substantially the form attached hereto as **Exhibit 3** via first class mail on the Contract Counterparties and provide a copy of the same to the Consultation Parties. The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Executory Contract or Unexpired Lease, (ii) the name of the counterparty to the Executory Contract or Unexpired Lease, (iii) Debtors' good faith estimates of the Cure Payments, if any, required in connection with the Executory Contract or Unexpired Lease, and (iv) the Sale Objection Deadline; provided, however, that service of a Contract Assumption Notice does not constitute an admission that any Contract listed thereon is an Executory Contract or that such stated Cure Payment constitutes a claim against the Debtors or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. Further, the inclusion of a contract on the Contract Assumption Notice is not a guarantee that such contract will ultimately be assumed and assigned.

(b)   **Cure Payments.** The payment of the applicable Cure Payments by the Debtors and/or the Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately Assumed Contracts by the Debtors and the assignment of such Contracts to the Successful Bidder, constitute adequate assurance of future performance thereof.

(c)   **Supplemental Contract Assumption Notice.** To the extent the Debtors, at any time after the Assumption and Assignment Service Deadline (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (ii) remove any Executory Contracts or Unexpired Leases from the list attached to the Contract Assumption Notice, (iii) and/or modify the previously stated Cure Payment associated with any Executory Contract or Unexpired Lease, the Debtors

(Page | 13)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the Contract Counterparties affected by the Supplemental Assumption Notice. Each Supplemental Assumption Notice will include the same information with respect to listed Contracts as was included in the Contract Assumption Notice. A Successful Bidder may designate additional Contracts to be assumed and assigned up to two business days prior to closing and may remove Executory Contracts or Unexpired Leases from the list of Executory Contracts and Unexpired Leases up to two business days prior to closing.

(d)     **Objections.** Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the correct Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (a) proposed counsel to the Debtors, (b) counsel to the Stalking Horse Bidder, and (c) the Bid Notice Parties (as defined in the Bidding Procedures), and (v) any other party that has filed a notice of appearance in these chapter 11 cases, so as actually to be received on or before the deadline set forth in the Contract Assumption Notice, the Sale Objection Deadline, or deadline set forth in the Supplemental Assumption Notice, as applicable, which such deadline shall be at least 14 days from service of the Contract Assumption Notice or Supplemental Assumption Notice, as applicable.

(e)     **Dispute Resolution.** In the event that the Debtors and a Contract Counterparty cannot resolve an objection to a Cure Payment, the Executory Contract or Unexpired Lease at issue may be assumed by the Debtors and assigned to the Successful Bidder, *provided that* the Debtors shall segregate the Cure Payment that the Contract Counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties. Any objection to the proposed assumption and assignment of a contract or related Cure payment proposed in connection with the Sale Transaction that remained unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Court).

(Page | 14)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

(f) **Contract Assumption.** No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date the Sale Transaction has closed.

26.     Any party failing to timely file an objection to the Cure Payments or the proposed assumption and assignment of an Executory Contract or Unexpired Lease listed on the Contract Assumption Notice or a Supplemental Assumption Notice is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Executory Contract or Unexpired Lease, (c) the related relief requested in the Motion, and (d) the Sale Transaction. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Executory Contract or Unexpired Lease, adequate assurance of future performance, the relief requested in the Motion, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to such party's Executory Contract or Unexpired Lease.

## IV.     Miscellaneous.

27.     Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the Debtors, the Debtors' lenders, and the agents under their respective credit agreements, the Stalking Horse Bidder, if applicable, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy

14

(Page | 15)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

28.    The Debtors are authorized to revise the Sale Schedule in consultation with the Consultation Parties and as otherwise set forth in this Order. The Debtors are further authorized, but not directed, in consultation with the Consultation Parties, to conduct multiple Sale Transactions and/or Auctions (as necessary) in substantial conformity with the Sale Schedule and Bidding Procedures established through this Order.

29.    The failure to include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bidding Procedures.

30.    The Court, at the request of the Debtors in consultation with the Consultation Parties and subject to its availability, may modify the dates of and adjourn any hearing set by this Order without further Order of this Court, *provided* that the Debtors will serve notice to all requisite parties informing them of such modification.

31.    Unless otherwise set forth in this Order, the Debtors, in consultation with the Consultation Parties, may modify any of the deadlines set forth herein or provide for additional

(Page | 16)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

deadlines within a Sale Schedule, *provided* that the Debtors will disclose all applicable deadlines in a notice filed with the Court, including, as applicable, the Auction Notice.

32.     The Debtors may modify any Good Faith Deposit, in consultation with the Consultation Parties, as necessary or appropriate, based on the Assets being sold.

33.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

34.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

35.     Notwithstanding anything to the contrary contained herein or in the Bidding Procedures or otherwise: (i) the rights of the DIP Agent to consent to the sale of any portion of their Collateral (as defined in the DIP Order)[1] shall be expressly reserved and not modified, waived, or impaired in any way by this Order, and (ii) nothing in this Order shall amend, modify, alter, waive, or impair, in any way, any provision of the DIP Order, including, but not limited to, the requirements with respect to compliance with the DIP Budget, the DIP Credit Agreement and Section 5.3 of the DIP Order with respect to the application of the proceeds of the DIP Lenders'

---

[1] "DIP Order" means any interim or final *Order (A) Authorizing Debtors to Obtain Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (C) Authorizing Debtors to Enter into Agreements with Crystal Financial LLC d/b/a SLR Credit Solutions; (D) Authorizing Debtors to Use Cash Collateral; and (E) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001,* whichever is then in effect, as applicable.

| Debtors: | BOWFLEX INC., *et al.* |
|---|---|
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

Collateral (capitalized terms contained in this paragraph that are not otherwise defined herein shall have the meanings set forth in the DIP Order).

36.     The DIP Agent, the DIP Lenders (as defined in the DIP Order), the Prepetition Term Loan Agent (as defined in the DIP Order), the Prepetition Term Loan Lenders (as defined in the DIP Order), or any of their respective designees (each a "Secured Party" and collectively, the "Secured Parties") may, subject to section 363(k) of the Bankruptcy Code, credit bid all or any of the respective portion of their outstanding obligations (the "Credit Bid"). Any Credit Bid shall be a Qualified Bid without the need to provide a Good Faith Deposit, the Secured Parties shall be a Qualified Bidder in connection with any such Credit Bid, and any such Credit Bid shall be a Qualified Bid.

37.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

38.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

39.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

(Page | 18)

| Debtors: | BOWFLEX INC., *et al.* |
|---|---|
| Case No. | 24-12364 (ABA) |
| Caption: | Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief. |

40.     Nothing contained in this Order prejudices parties in interest from seeking the appointment of a consumer privacy ombudsman at a later date in connection with any proposed sales pursuant to the Bankruptcy Code.

41.     Any party may move for modification of this Order in accordance with Local Rule 9013-5(e).

42.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOWFLEX INC., *et al.*,[1] | Case No. 24-12364 (ABA) |
| Debtors. | (Jointly Administered) |

**BIDDING PROCEDURES FOR THE**
**SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS**
**IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On March 4, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court").

On March 8, 2024, the Court entered the Order *(I)(A) Approving the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines and an Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing the Debtors to Enter Into the Stalking Horse Agreement, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief*, [Docket No. 79] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures") setting forth the process by which the Debtors are authorized to solicit Bids for and conduct an auction (the "Auction") for a sale or disposition (collectively, the "Sale," and each, a "Sale Transaction") of all or substantially all of the Debtors' Assets (as defined herein) or any portion thereof, either as a going concern or as a liquidation.

Any Sale will be implemented pursuant to section 363 of the Bankruptcy Code or a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan").

> Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to Epiq Corporate Restructuring, LLC by calling (888) 311-7005 (toll free)] or (971) 328-4573 (international) or visiting the Debtors' restructuring website at (https://dm.epiq11.com/Bowflex).

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: BowFlex Inc. (2667) and BowFlex New Jersey LLC (3679). The Debtors' service address is 17750 S.E. 6th Way, Vancouver, Washington 98683.

[2] All capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Bidding Procedures Order.

## I.      Assets to be Auctioned.

The Debtors are seeking to sell all of their Assets, or any portion thereof, either as a going concern or as a liquidation. These Assets include, but are not limited to, the Debtors' going-concern business, Unexpired Leases, Executory Contracts, equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, and books and records, in each case, free and clear of all liens, claims, interests, or other encumbrances (collectively, the "Assets").

## II.     Public Announcement of Auction.

Within four (4) business days following entry of the Bidding Procedures Order, the Debtors shall (i) serve on the parties that receive notice of the Motion, including the Consultation Parties (as defined below), a notice (A) setting forth (I) the date, time, and place of the (a) Auction and (b) the Sale Hearing (as defined below) and (II) the deadlines and procedures for objecting to the proposed Sale Transaction(s), and (B) the Bidding Procedures Order and the Bidding Procedures in the form attached to the Bidding Procedures as Schedule 1 (the "Auction Notice"), (ii) publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in (A) within three (3) business days after entry of the Bidding Procedures Order, *The New York Times (National Edition)*, (B) within four (4) business days after entry of the Bidding Procedures Order, *The Seattle Times*, and (C) within seven (7) days after entry of the Bidding Procedures Order, *The Columbian*, and (iii) post the Auction Notice on their case website, https://dm.epiq11.com/Bowflex.

## III.    Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Assets or part of the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

   a.      an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors; and

   b.      sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties.

   c.      a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable.

The Debtors, in consultation with their advisors and the Consultation Parties, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a Bid (such Potential Bidder, an "Acceptable Bidder"). The Debtors shall promptly inform the Consultation Parties of any entity that becomes an Acceptable Bidder. The Secured Parties shall each be an Acceptable Bidder.

## IV.    Qualified Bid Requirements.

To participate in the Auction, an Acceptable Bidder (other than the Secured Parties) must deliver to the Debtors and their advisors an irrevocable offer for the purchase of some or all of the Assets (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline (as defined below):

a.    **Purchased Assets and Assumed Liabilities**: Each Bid must clearly state the following: (a) the particular Assets, or the portion thereof identified with reasonable specificity, to be purchased and/or liquidated or otherwise disposed of; (b) the liabilities and obligations to be assumed, including any debt and cure costs to be assumed; and (c) as applicable, whether the Acceptable Bidder intends to operate the Debtors' business as a going concern or to liquidate the business. For the avoidance of doubt, each Bid must clearly state the Acceptable Bidder's intentions with regard to any foreign entities whose Assets are to be purchased, including the portion of the Purchase Price (as defined below) specifically allocated to the assets of those foreign entities as set forth in paragraph IV.c. below.

b.    **Good Faith Deposit**: Except with respect to any credit bid (each a "Credit Bid"), the Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate purchase price of the Bid to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals 10% of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the Auction;

c.    **Purchase Price**: Each Bid must (a) clearly set forth the purchase price to be paid, assuming a purchase of the applicable Assets and any assumption of liabilities (the "Purchase Price"), (b) identify separately the cash and non-cash components of the Purchase Price, and (c) indicate the allocation of the Purchase Price among the applicable Assets; *provided* that, for the avoidance of doubt, such allocation shall not prejudice the rights of any party in interest to contest such allocation. The Purchase Price should be a single point value in U.S. Dollars for the applicable Assets on a cash-free, debt-free basis. Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all Assets or whether the Qualified Bid should be viewed as separate Bid for one or more sets of Assets;

3

d.      **Same or Better Terms; Bid Documents**: Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents"). The Bid Documents shall include: (a) form of purchase agreement, (b) a schedule of contracts and leases to be assumed to the extent applicable to the Bid, (c) with respect to the purchase agreement, a redline of such agreement marked to reflect the amendments and modifications made to the form of the Stalking Horse Agreement attached hereto as **Schedule 2**, (d) any other material documents integral to such Bid, and (e) a statement from the Acceptable Bidder that (i) it is prepared to enter into and consummate the transactions contemplated in the form purchase agreement, no later than five (5) days after the conclusion of the Auction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder (or, if no Auction is held, the deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures (the "Bid Deadline")) and (ii) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best Bid (the "Back-Up Bid") until the consummation of the Sale Transaction;

e.      **No Qualified Bidder Bid Protections**: A Qualified Bid must include a statement that the Bid does not entitle such bidder to any Break-Up Fee,[1] termination fee, Expense Reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

f.      **Employee Obligations**: Each Bid must indicate whether the Acceptable Bidder intends to hire all employees who are primarily employed in connection with the applicable Assets included in such Bid. If the Acceptable Bidder does not intend to hire all employees who are primarily employed in connection with the applicable Assets included in such Bid, the Acceptable Bidder must include a description of the Acceptable Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees who are primarily employed in connection with the applicable Assets, and a description of any contemplated incentive plan, to the extent applicable;

g.      **Sources of Financing**: To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit

---

[1]    The "Break-Up Fee" is defined as 3.5% of $37,500,000.

committee approvals, and shall have covenants and conditions acceptable to the Debtors;

h.   **Contingencies; No Financing or Diligence Outs**: The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline.

i.   **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom FTI Capital Advisors, LLC and Sidley Austin LLP should contact regarding such Bid;

j.   **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement;

k.   **Authorization**: Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

l.   **Joint Bids**: The Debtors will be authorized to approve joint Bids in their reasonable business judgment, in consultation with the Consultation Parties, on a case-by-case basis, so long as a joint Bid meets the Qualified Bid requirements and the applicable bidders otherwise comply with these Bidding Procedures;

m.   **Adequate Assurance of Future Performance**: Each Bid must (i) identify any executory contracts (the "Executory Contracts") and any unexpired leases (the "Unexpired Leases") to be assumed or assumed and assigned in connection with the proposed Sale Transaction, (ii) provide for the payment of all cure amounts (the "Cure Amounts") related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder, (iii) demonstrate, in the Debtors' reasonable business judgment,

5

in consultation with the Consultation Parties (as defined herein), that the Acceptable Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, and (iv) provide the following documentation:

(i)     The legal name of the proposed assignee of Unexpired Leases (the "Proposed Assignee") and any guarantors, as applicable;

(ii)    Financial statements for the calendar or fiscal years ended 2021, 2022 and, if available, 2023 for the Proposed Assignee and any guarantors, as applicable, and other financial information about the Proposed Assignee to demonstrate its ability to provide adequate assurance of future performance; and

(iii)   Summary documentation regarding the Proposed Assignee's and any guarantor's, as applicable, retail experience and present retail operations;

n.    **Acknowledgement of Compliance with Bidding Procedures, Bidding Order, Bankruptcy Code, and Non-Bankruptcy Law**: Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, Bankruptcy Code and any applicable non-bankruptcy law;

o.    **No Collusion**: The Acceptable Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale Transaction, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (email shall suffice), in consultation with the Consultation Parties;

p.    **Good Faith Offer**: The Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction;

q.    **Irrevocable**: Each Bid must state that in the event such Bid is chosen as the Back-Up Bid (as defined below), it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

r.    **Back-Up Bid**: Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined below) if the Acceptable Bidder's Bid is the next highest or otherwise best bid;

s.    **Regulatory Approvals and Covenants**: A Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale Transaction, if any, and the time period within which the

Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the applicable purchase agreement and/or confirmation of the Plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible);

t.      **Expected Closing Date**: Each Bid must state the Acceptable Bidder's expected date of closing of the Sale Transaction;

u.      **Time Frame for Closing**: A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors, in consultation with the Consultation Parties;

v.      **No Fees**: Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive a fee analogous to a Break-Up Fee, Expense Reimbursement, termination fee, or other similar form of compensation; *provided*, *however*, that parties entitled to payment or reimbursement of expenses under any DIP Order shall be entitled to payment or reimbursement of expenses incurred in connection with these Bidding Procedures and the matters contemplated hereby;

For the avoidance of doubt, each Acceptable Bidder by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; provided that the Debtors are authorized in their reasonable business judgment, in consultation with the Consultation Parties, to provide the Stalking Horse Bid Protections (as defined below) to Johnson Health Tech Retail, Inc. (the "Stalking Horse Bidder") in accordance with these Bidding Procedures to the extent provided in the Bidding Procedures Order;

w.      **Adherence to Bidding Procedures**: By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction;

x.      **Consent to Jurisdiction**: The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the closing of the Sale Transaction, as applicable; and

7

y.      **Conditions to Closing**: Each Bid must identify with particularity each and every condition to closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required.

Only Bids fulfilling all of the preceding requirements contained in this section may, or otherwise in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable business judgment, in consultation with the Consultation Parties, be deemed to be "Qualified Bidders"; *provided* that, notwithstanding anything to the contrary herein, any Bid submitted by the Secured Parties shall be a Qualified Bid.

Neither the Debtors nor any of their advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Assets, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Assets with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets. All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Assets, except to the extent expressly provided in the Bankruptcy Court's order approving the Sale Transaction. Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Bankruptcy Court's order approving the Sale Transaction.

Within one (1) business day after the Bid Deadline, the Debtors, in consultation with the Consultation Parties, shall determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided* that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors, in consultation with the Consultation Parties, may provide the Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction.

## V.      **Right to Credit Bid.**

The Secured Parties and any other Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (each a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

Any Credit Bid made by a Secured Creditor will be evaluated by the Debtors and the Consultation Parties as, a cash Bid solely for purposes of evaluating Bids (including evaluating

Qualified Bids and subsequent Bids). Notwithstanding anything to the contrary contained herein or the Bidding Procedures Order, all Secured Parties shall not be subject to the Good Faith Deposit requirement (whether for a Credit Bid or otherwise), are hereby deemed Qualified Bidders, and their Bids (including, for the avoidance of doubt, any Credit Bids) are hereby deemed Qualified Bids with respect to the Assets.

## VI.    Obtaining Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors. *No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement*. Beginning on the date the Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request. The Debtors shall promptly consult with the Consultation Parties (a) with respect to any due diligence disputes that arise concerning any Acceptable Bidder and (b) prior to revoking due diligence access to any such entity. The Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room for the benefit of all Acceptable Bidders. To the extent the Debtors provide any material written information to an Acceptable Bidder that the Debtors had not previously provided to a Consultation Party, the Debtors shall make such information available to such Consultation Party.

Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction. For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right, in consultation with the Consultation Parties, to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

The Debtors shall provide the Consultation Parties periodic updates regarding the activity of each Acceptable Bidder in the electronic data room in a form and frequency mutually acceptable

9

to the Debtors and the Consultation Parties; *provided* that the Debtors shall cooperate in good faith to provide any such information reasonably requested by the Consultation Parties.

**A.    Communications with Acceptable Bidders (including Qualified Bidders).**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Acceptable Bidders (including any Qualified Bidders) shall be through FTI Capital Advisors.

**B.    Due Diligence from Acceptable Bidders (including Qualified Bidders).**

Each Acceptable Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors and their respective advisors, regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated transaction. Failure by an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, to determine that such bidder is no longer an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder) or that a Bid made by such bidder is not a Qualified Bid.

---
**Glenn Tobias and Shane Campbell at FTI Capital Advisors shall coordinate all requests for additional information and due diligence access on behalf of the Debtors. They can be reached at shane.campbell@fticapitaladvisors.com.**

---

**VII.   Bid Deadline.**

Binding Bids must be submitted in writing to the following parties (the "Bid Notice Parties") so as to be **actually received** no later than 12:00 p.m. (prevailing Eastern Time) on April 5, 2024 (the "Bid Deadline").

(i)     proposed counsel to the Debtors, Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603, Attn: Matthew A. Clemente (mclemente@sidley.com), Maegan Quejada (mquejada@sidley.com), and Michael A. Sabino (msabino@sidley.com);

(ii)    proposed co-counsel to the Debtors, Fox Rothschild LLP, 49 Market Street, Morristown, New Jersey 07960 Attn: Joseph J. DiPasquale (jdipasquale@foxrothschild.com), Mark E. Hall (mhall@foxrothschild.com), and Michael R. Herz (mherz@foxrothschild.com);

(iii)   the Debtors' proposed investment banker, FTI Capital Advisors LLC, 1166 Avenue of the Americas, 15th Floor, New York, New York 10036, Attn: Glenn Tobias (glenn.tobias@fticapitaladvisors.com) and Shane Campbell

(shane.campbell@fticapitaladvisors.com) and Dheeraj Garg (dheeraj.garg@fticapitaladvisors.com); and

(iv)    counsel to the DIP Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Marc R. Leduc (marc.leduc@morganlewis.com), Shah M. Nizami (shah.nizami@morganlewis.com), and Jennifer Feldsher (jennifer.feldsher@morganlewis.com).

The Debtors may extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, in consultation with the Consultation Parties, for all or certain Acceptable Bidders.

## VIII.    Evaluation of Qualified Bids.

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' business judgment, and in consultation with the Consultation Parties,[1] the highest or otherwise best Qualified Bid or combination of Qualified Bids for any Assets (the "Starting Bid"). The Debtors shall promptly provide to the Consultation Parties copies of all Bids received by the Debtors, including the Starting Bid, but in no event later than the next business day following receipt; *provided* that the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors, in consultation with the Consultation Parties, deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; and (d) the tax consequences of such Qualified Bid. Prior to commencing the Auction, the Debtors shall notify the Stalking Horse Bidder, and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable Assets. At such time, the Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder, the Consultation Parties, and each Qualified Bidder.

## IX.    Stalking Horse Bid Protections.

Pursuant to the Bidding Procedures Order, the Stalking Horse Bidder, is entitled to (a) a break-up fee of three and a half percent (3.5%) of $37,500,000 and (b) be reimbursed, subject to a cap of $600,000, for the reasonable and documented out of pocket fees and expenses (for the

---

[1]    The term "Consultation Parties" shall mean the Secured Parties and any official committee of unsecured creditors appointed, if any, in these cases; *provided*, *however*, that to the extent any Secured Party submits a Bid for any Assets, such Secured Party shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for the Assets included in the Secured Party's Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in these Bidding Procedures.

avoidance of doubt, such Expense Reimbursement shall be paid in accordance with the Bidding Procedures Order) (the "Stalking Horse Bid Protections"). Any such Stalking Horse Bid Protections are authorized pursuant to the Bidding Procedures Order. For the avoidance of doubt, except for the Stalking Horse Bidder, and as otherwise set forth herein, no other party submitting an offer or Bid or a Qualified Bid shall be entitled to any expense reimbursement, break-up fee, termination fee, or similar fee or payment.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder, shall be entitled to any Expense Reimbursement, Break-Up Fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for Expense Reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

## X.    No Qualified Bids.

If no Qualified Bids other than the Bid submitted by the Stalking Horse Bidder (the "Stalking Horse Bid"), are received for the Assets included in the Stalking Horse Bid by the Bid Deadline, then the Debtors, in consultation with the Consultation Parties, may cancel the Auction with respect to such Assets. If the Stalking Horse Bid is the only Qualified Bid received by the Bid Deadline, the Debtors may decide, in their reasonable business judgment, after consultation with the Consultation Parties, to designate the Stalking Horse Bid as the Successful Bid (as defined below) as to the applicable Assets and pursue entry of an order approving a Sale Transaction with respect to such Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement. The Debtors shall promptly file notice of any cancellation of the Auction and/or designation of the Stalking Horse Bid, where applicable, as the Successful Bid with the Court.

## XI.    Auction.

Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Asset or portion of Assets by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder in their reasonable business judgment, in consultation with the Consultation Parties, with respect to such Assets or portion of Assets. If the Debtors do not receive a Qualified Bid for any particular Asset by the Bid Deadline, the Debtors will not conduct the Auction with respect to such Asset. If one or more Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline with respect to the applicable Assets, then the Debtors shall conduct the Auction with respect to such Assets in accordance with the Auction Procedures (as defined below).

The Auction shall commence on April 8, 2024, at 10:00 a.m. (prevailing Eastern Time), or such later time or other place as the Debtors determine in consultation with the Consultation Parties.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

    a.      the Auction will be conducted openly;

b.      except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction;

c.      the Qualified Bidders, including the Stalking Horse Bidder, must appear in person or through duly-authorized representatives at the Auction;

d.      bidding shall begin with the Starting Bid;

e.      subsequent Bids (each, an "Overbid") may only be made at the Auction and shall be at least (i) a $500,000 increase in cash, cash equivalents, or other such consideration that the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, deem equivalent (including the right of a Secured Creditor to credit bid any remaining amount of its secured claims) over the previous Bid *plus* (ii) solely with respect to the first Overbid, the aggregate amount of Stalking Horse Bid Protections (including, for the avoidance of doubt, any Break-Up Fees and/or Expense Reimbursements) under such Stalking Horse Agreement (a "Minimum Overbid"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid. The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, announce increases or reductions to the Minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, deem equivalent (including the right of a Secured Creditor to credit bid any remaining amount of its secured claims) that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid;

f.      at the commencement of the Auction, the Debtors, in consultation with the Consultation Parties, may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s);

g.      each Qualified Bidder will be permitted a reasonable time to respond to previous Bids at the Auction, as determined by the Debtors in consultation with the Consultation Parties;

h.      during the course of the Auction, the Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous Bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view, in consultation with the Consultation Parties, the highest or otherwise best bid(s) for the applicable Assets;

i.      the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

13

j.    each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction. For the avoidance of doubt, (a) this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent;

k.    each Qualified Bidder will be required to confirm that its Bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction);

l.    the Court and the Debtors will not consider Bids made after the Auction has been closed;

m.    the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction, or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders;

n.    the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

o.    the Debtors reserve the right, in their reasonable business judgment, and in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (a) facilitate discussions between the Debtors and Qualified Bidders, (b) allow Qualified Bidders to consider how they wish to proceed, and (c) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, and in consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

p.    notwithstanding anything herein to the contrary, the Debtors may, in consultation with the Consultation Parties, at any time choose to adjourn the Auction by announcement at the Auction. The Debtors shall promptly file notice of such adjournment with the Court.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, in consultation with counsel).

Any Auction rules adopted by the Debtors will not modify any of the terms of the Stalking Horse Agreement or the rights of the Stalking Horse Bidder without the consent of the Stalking Horse Bidder and the DIP Agent.

Except as otherwise determined by the Debtors, in consultation with the Consultation Parties, only (i) the Debtors, (ii) the Consultation Parties, (iii) the Office of the United States Trustee, (iv) any statutory committee appointed in these Chapter 11 Cases, (v) any other Qualified Bidders, (vi) those parties in interest who provide notice to Debtors' counsel that is received at least five (5) days prior to the Auction, and (vii) the respective representatives and professionals of the foregoing parties shall be entitled to attend the Auction.

## XII.    Acceptance of the Successful Bid.

The Auction shall continue until (i) there is only one Qualified Bid or a combination of Qualified Bids that the Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, and in consultation with the Consultation Parties, is the highest or otherwise best Bid to purchase the applicable Assets (each, a "Successful Bid"), and (ii) the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, the Auction will be closed.  Notwithstanding anything to the contrary herein, unless the DIP Agent consents, the Debtors shall not select a Successful Bid unless such bid, when taken together with all other Successful Bids, if any, provides for payment in full of all DIP Obligations (as defined in the DIP Order) and any outstanding Prepetition Term Loan Obligations (as defined in the DIP Order) in accordance with the Milestones set forth in the DIP Credit Agreement (as defined in the DIP Order).

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors, in consultation with the Consultation Parties, may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration, which includes but is not limited to, assumed liabilities (administrative liabilities, cure payments), and the amount of Executory Contracts and leased locations being assumed; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; and (d) the tax consequences of such Qualified Bid; and (e) any other consideration that may impact the Debtors' stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the Assets contemplated for the purchase pursuant to such Successful Bid. Upon the conclusion of the Auction, the Debtors shall promptly file notice of the Successful Bid and the Successful Bidder with the Court. Following conclusion of the Auction and selection of a

Successful Bidder, the Debtors shall present the results of the Auction at a hearing (the "<u>Sale Hearing</u>") and shall seek Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid (the order approving such entry, the "<u>Definitive Purchase Agreement Order</u>"). For the avoidance of doubt, the Definitive Purchase Agreement Order shall deem the Debtors' selection of the Successful Bid final and, subject to the designation of the Back-Up Bid, the Debtors shall not solicit and /or accept any further Bids or offers to submit a Bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that the Debtors determined in good faith, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Within one (1) business day of the selection of the Successful Bidder, such Successful Bidder (including both the Stalking Horse Bidder, and Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement. Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII.  Designation of Back-Up Bidder.

The Back-Up Bid to purchase any applicable Assets (the "<u>Back-Up Bidder</u>") will be determined by the Debtors at the conclusion of the Auction, in consultation with the Consultation Parties, and will be announced at that time to all the Qualified Bidders participating in the Auction; *provided* that, notwithstanding anything herein to the contrary, the Secured Parties shall not be deemed to be Back-Up Bidders and any Successful Bid by any Secured Party shall not be a Back-Up Bid unless such Secured Party so agrees in writing. Following consultation with the Consultation Parties, the Debtors' selection of a Back-Up Bid shall be deemed final and the Debtors shall not accept any further Bids or offers to submit a Bid after such selection. The Debtors will be authorized, but not required, to consummate the Sale Transaction with the Backup Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not.

If for any reason a Successful Bidder fails to consummate the purchase of such Assets within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid for such Assets, and the Back-Up Bidder shall be deemed a Successful Bidder for such Assets and shall be required to consummate any Sale Transaction with the Debtors as soon as is reasonably practicable without further order of the Court, upon 24 hours advance notice filed with the Court.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) forty-five (45) days after completion of the Auction, (ii) consummation of a Sale Transaction with one or more Successful Bidders at an Auction, and (iii) the release of such Back-Up Bid by the Debtors

in writing (the "Back-Up Termination Date"). The Debtors shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Termination Date.

## XIV.    Approval of the Sale Transaction.

A hearing to consider approval of each Sale Transaction (the "Sale Hearing"), is currently scheduled to take place on April 15, 2024, at 1 p.m. (prevailing Eastern Time), before the Honorable Judge Altenburg, at the United States Bankruptcy Court for the District of New Jersey, Mitchell H. Cohen U.S. Courthouse, 400 Cooper Street, 4th Floor, Camden, N.J. 08101, Courtroom 4B, or conducted consistent with the procedures established pursuant to the Court's standing orders regarding remote hearings in bankruptcy cases.

At the Sale Hearing certain findings will be sought from the Court regarding the Auction, including, among other things, that: (1) the Auction was conducted, and the Successful Bidder was selected, in accordance with the Bidding Procedures; (2) the Auction was fair in substance and procedure; (3) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures; and (4) consummation of any Sale Transaction as contemplated by the Successful Bid in the Auction will provide the highest or otherwise best offer for the applicable Assets and is in the best interests of the Debtors and their estates. Any order or orders approving any Successful Bid (the "Sale Order") shall be satisfactory in form and in substance to the DIP Agent. **The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice to creditors or other parties in interest prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder).**

Objections to the Sale Transaction(s), and entry of the Sale Order must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (iii) be filed with the Court and served so as to by **actually received** by the Debtors, the Consultation Parties, the Bid Notice Parties, and the foregoing parties' respective counsel by April 11, 2024, at 5:00 p.m. (prevailing Eastern Time).[1]

## XV.    Return of Good Faith Deposit.

The Good Faith Deposit(s) of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit(s) of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably

---

[1]    To the extent the Debtors, in consultation with the Consultation Parties, reasonably determine in their business judgment to pursue a Sale Transaction pursuant to a Plan, a separate deadline to object to such Sale Transaction shall be set by order of the Court.

forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposits of any unsuccessful Qualified Bidders (except for any Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five business days after consummation of the applicable Sale Transaction or upon the permanent withdrawal of the applicable proposed Sale Transaction.

The Good Faith Deposit(s) of any Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days of the Back-Up Termination Date.

The return of any Good Faith Deposits of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' Plan or purchase agreement, as applicable. All such deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court.

## XVI.   Reservation of Rights.

The Debtors, in consultation with the Consultation Parties, reserve their rights to modify these Bidding Procedures in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction, additional customary terms and conditions on the sale of the applicable Assets, including, without limitation: (1) extending the deadlines set forth in the Bidding Procedures; (2) adjourning the Auction without further notice; (3) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (4) canceling the Auction; (5) rejecting any or all Bids or Qualified Bids; and (6) adjusting the applicable Minimum Overbid increment; *provided*, *however*, that (a) the Debtors may not amend these Bidding Procedures, the Bidding Procedures Order or the bidding process to reduce or otherwise modify their obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court and (b) without the prior written consent of the Secured Parties, the Debtors shall not adopt new rules, procedures or deadlines or otherwise modify these Bidding Procedures or the Bidding Procedures Order in a manner that (i) makes it materially more burdensome to be a Qualified Bidder or a Qualified Bid or (ii) alters or limits the rights of, or imposes additional burdens on, the Secured Parties, including by (x) requiring the Secured Parties, to include a deposit as part of a Credit Bid or (y) removing, limiting, or imposing additional conditions on, the rights of such parties to Credit Bid and/or to be deemed an Acceptable Bidder and/or Qualified Bidder (and their Bids deemed Qualified Bids). In addition, the Debtors will not extend the date of the Auction or the Sale Hearing in a manner that breaches or is likely to breach a DIP Milestone without the consent of the DIP Agent. All such modifications and additional rules will be communicated in advance to each of the Consultation Parties and the U.S. Trustee, Acceptable Bidders and Qualified Bidders; *provided*, *further*, that, to the extent such modifications occur at the Auction, disclosure of such modifications shall be limited to those in attendance at the Auction. If any of the Secured Parties, the U.S. Trustee or any official committee of unsecured creditors appointed in these cases determines in good faith that any modification to these Bidding Procedures or the Bidding Procedures Order, or any adoption of new rules,

18

procedures or deadlines, would not be consistent with this paragraph or these Bidding Procedures or the Bidding Procedures Order, such Lender, U.S. Trustee, or Committee may file an objection with the Bankruptcy Court, and no such modification or adoption shall become effective until such objection is resolved. The Debtors shall provide advance notice in writing of any such modification to the Consultation Parties and the U.S. Trustee and any Qualified Bidder, including any Stalking Horse Bidder.

All parties expressly reserve all of their rights (and do not waive any such rights) to seek Court relief with regard to the Auction, the Bidding Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

Each reference in these Bidding Procedures and the Bidding Procedures Order to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith. All Consultation Parties will be permitted to seek relief from the Bankruptcy Court on an expedited basis if they disagree with any actions or decisions made by the Debtors as part of these Bidding Procedures. The rights of all Consultation Parties with respect to the outcome of the Auction are reserved.

## XVII.  Consent to Jurisdiction.

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to the Sale any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## XVIII. Fiduciary Out.

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any action related to any sale transaction or with respect to these Bidding Procedures, to the extent such Debtor, board of director, board of managers, or such similar governing body reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

## **Schedule 1**

**Auction Notice**

**SIDLEY AUSTIN LLP**
Matthew A. Clemente (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
mclemente@sidley.com

Maegan Quejada (*pro hac vice* pending)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile (713) 495-7799
mquejada@sidley.com

Michael A. Sabino (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
msabino@sidley.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**FOX ROTHSCHILD LLP**
Joseph J. DiPasquale, Esq.
Mark E. Hall, Esq.
Michael R. Herz, Esq.
49 Market Street
Morristown, New Jersey 07960
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
jdipasquale@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

*Proposed Co-Counsel to the Debtors and
Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| BOWFLEX INC., *et al.*,[1] | Case No. 24-12364 (ABA) |
| Debtors. | (Jointly Administered) |

## NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that on March 8, 2024, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *(I)(A) Approving the Auction and Bidding*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: BowFlex Inc. (2667) and BowFlex New Jersey LLC (3679). The Debtors' service address is 17750 S.E. 6th Way, Vancouver, Washington 98683.

*Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines and an Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing the Debtors to Enter Intro the Stalking Horse Agreement, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief* [Docket No. 79] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of substantially all or a portion of the Assets consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order. **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing Bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Assets **on April 8, 2024, at 10:00 a.m. (prevailing Eastern Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, those parties in interest who provide notice to Debtors' counsel that is received at least five (5) days prior to the Auction, and any other parties as the Debtors may determine to include in their reasonable discretion, in consultation with the Consultation Parties, in each case, along with their representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction at a hearing scheduled to commence on or before **April 15, 2024, at 1 p.m. (prevailing Eastern Time)** (the "Sale Hearing") before the Honorable Judge Altenburg, at the United States Bankruptcy Court for the District of New Jersey, Mitchell H. Cohen U.S. Courthouse, 400 Cooper Street, 4th Floor, Camden, N.J. 08101, Courtroom 4B, or conducted consistent with the procedures established pursuant to the Court's standing orders regarding remote hearings in bankruptcy cases.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of the Sale and each Sale Transaction must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific

---

[2] Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order

grounds therefor; and (d) be filed with the Court and served so as to be **_actually received_ on or before April 11, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline")[3] by the following parties: (i) the Debtors, BowFlex Inc., 17750 S.E. 6th Way, Vancouver, Washington 98683, Attn: Alan Chan; (ii) proposed counsel to the Debtors, Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603, Attn: Matthew A. Clemente (mclemente@sidley.com), Maegan Quejada (mquejada@sidley.com), and Michael A. Sabino (msabino@sidley.com); (iii)  proposed co-counsel to the Debtors, Fox Rothschild LLP, 49 Market Street, Morristown, New Jersey 07960 Attn: Joseph J. DiPasquale (jdipasquale@foxrothschild.com), Mark E. Hall (mhall@foxrothschild.com), and Michael R. Herz (mherz@foxrothschild.com); (iv) counsel to the DIP Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Marc R. Leduc (marc.leduc@morganlewis.com), Shah M. Nizami (shah.nizami@morganlewis.com), and Jennifer Feldsher (jennifer.feldsher@morganlewis.com); (v) Office of the United States Trustee for Region 3, District of New Jersey, Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Richard L. Schepacarter and Jeffrey Sponder; (vi) counsel to any official committee of unsecured creditors appointed in these cases; and (vii) counsel to the Stalking Horse Bidder, (a) Buchalter LLC, 18400 Von Karman Avenue, Ste. 800, Irvine, California 92612, Attn: Caroline Djang (cdjang@buchalter.com) (b) Gibbons P.C., One Gateway Center, Newark, NJ 07102-5310, Attn: Robert K. Malone (rmalone@gibbonslaw.com) and Kyle P. McEvilly (KMcEvilly@gibbonslaw.com).

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR A SALE TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Dated: March 8, 2024

---

[3]    To the extent the Debtors, in consultation with the Consultation Parties, reasonably determine to pursue a Sale pursuant to a Plan, a separate hearing to consider such Sale shall be set.

*/s/ [Draft]*

**FOX ROTHSCHILD LLP**
Joseph J. DiPasquale, Esq.
Mark E. Hall, Esq.
Michael R. Herz, Esq.
49 Market Street
Morristown, NJ 07960
Telephone: (973) 992-4800
Facsimile: (973) 992-9125

jdipasquale@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

**SIDLEY AUSTIN LLP**
Matthew A. Clemente (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
mclemente@sidley.com

*and*

Maegan Quejada (*pro hac vice* pending)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
mquejada@sidley.com

*and*

Michael A. Sabino (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
msabino@sidley.com

*Proposed Counsel for the Debtors and Debtors in Possession*

## <u>Schedule 2</u>

**Stalking Horse Agreement**

## Exhibit 2

**Auction Notice**

**SIDLEY AUSTIN LLP**

Matthew A. Clemente (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
mclemente@sidley.com

Maegan Quejada (*pro hac vice* pending)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile (713) 495-7799
mquejada@sidley.com

Michael A. Sabino (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
msabino@sidley.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**FOX ROTHSCHILD LLP**

Joseph J. DiPasquale, Esq.
Mark E. Hall, Esq.
Michael R. Herz, Esq.
49 Market Street
Morristown, New Jersey 07960
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
jdipasquale@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

*Proposed Co-Counsel to the Debtors and
Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BOWFLEX INC., *et al.*,[1] | Case No. 24-12364 (ABA) |
| Debtors. | (Jointly Administered) |

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: BowFlex Inc. (2667) and BowFlex New Jersey LLC (3679). The Debtors' service address is 17750 S.E. 6th Way, Vancouver, Washington 98683.

1

## NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that on March 8, 2024, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *(I)(A) Approving the Auction and Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines and an Auction, (D) Approving the Form and Manner of Notice Thereof, (E) Authorizing the Debtors to Enter Intro the Stalking Horse Agreement, and (II)(A) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (B) Authorizing the Assumption and Assignment of Assumed Contracts, (C) Authorizing the Sale of Assets and (D) Granting Related Relief* [Docket No. 79] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of substantially all or a portion of the Assets consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order. **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing Bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Assets **on April 8, 2024, at 10:00 a.m. (prevailing Eastern Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, those parties in interest who provide notice to Debtors' counsel that is received at least five (5) days prior to the Auction, and any other parties as the Debtors may determine to include in their reasonable discretion, in consultation with the Consultation Parties, in each case, along with their representatives and advisors, shall be entitled to attend the Auction, and only Qualified Bidders will be entitled to make Overbids at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction at a hearing scheduled to commence on or before **April 15, 2024, at 1 p.m. (prevailing Eastern Time)** (the "Sale Hearing") before the Honorable Judge Altenburg, at the United States Bankruptcy Court for the District of New Jersey, Mitchell H. Cohen U.S. Courthouse, 400 Cooper Street, 4th Floor, Camden, N.J. 08101, Courtroom 4B, or conducted consistent with the procedures established pursuant to the Court's standing orders regarding remote hearings in bankruptcy cases.

---

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to consummation or approval of the Sale and each Sale Transaction must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** **on or before April 11, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline")[3] by the following parties: (i) the Debtors, BowFlex Inc., 17750 S.E. 6th Way, Vancouver, Washington 98683, Attn: Alan Chan; (ii) proposed counsel to the Debtors, Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603, Attn: Matthew A. Clemente (mclemente@sidley.com), Maegan Quejada (mquejada@sidley.com), and Michael A. Sabino (msabino@sidley.com); (iii) proposed co-counsel to the Debtors, Fox Rothschild LLP, 49 Market Street, Morristown, New Jersey 07960 Attn: Joseph J. DiPasquale (jdipasquale@foxrothschild.com), Mark E. Hall (mhall@foxrothschild.com), and Michael R. Herz (mherz@foxrothschild.com); (iv) counsel to the DIP Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Marc R. Leduc (marc.leduc@morganlewis.com), Shah M. Nizami (shah.nizami@morganlewis.com), and Jennifer Feldsher (jennifer.feldsher@morganlewis.com); (v) Office of the United States Trustee for Region 3, District of New Jersey, Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Richard L. Schepacarter and Jeffrey Sponder; (vi) counsel to any official committee of unsecured creditors appointed in these cases; and (vii) counsel to the Stalking Horse Bidder, (a) Buchalter LLC, 18400 Von Karman Avenue, Ste. 800, Irvine, California 92612, Attn: Caroline Djang (cdjang@buchalter.com) (b) Gibbons P.C., One Gateway Center, Newark, NJ 07102-5310, Attn: Robert K. Malone (rmalone@gibbonslaw.com) and Kyle P. McEvilly (KMcEvilly@gibbonslaw.com).

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR A SALE TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Dated: March 8, 2024

---

[3]    To the extent the Debtors, in consultation with the Consultation Parties, reasonably determine to pursue a Sale pursuant to a Plan, a separate hearing to consider such Sale shall be set.

/s/ [Draft]
_____

**FOX ROTHSCHILD LLP**
Joseph J. DiPasquale, Esq.
Mark E. Hall, Esq.
Michael R. Herz, Esq.
49 Market Street
Morristown, NJ 07960
Telephone: (973) 992-4800
Facsimile: (973) 992-9125

jdipasquale@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

**SIDLEY AUSTIN LLP**
Matthew A. Clemente (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
mclemente@sidley.com

*and*

Maegan Quejada (*pro hac vice* pending)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
mquejada@sidley.com

*and*

Michael A. Sabino (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
msabino@sidley.com

*Proposed Counsel for the Debtors and Debtors in Possession*

1

## <u>Exhibit 3</u>

**Contract Assumption Notice**

**SIDLEY AUSTIN LLP**
Matthew A. Clemente (*pro hac vice* pending)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
mclemente@sidley.com

Maegan Quejada (*pro hac vice* pending)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile (713) 495-7799
mquejada@sidley.com

Michael A. Sabino (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
msabino@sidley.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

**FOX ROTHSCHILD LLP**
Joseph J. DiPasquale, Esq.
Mark E. Hall, Esq.
Michael R. Herz, Esq.
49 Market Street
Morristown, New Jersey 07960
Telephone: (973) 992-4800
Facsimile: (973) 992-9125
jdipasquale@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

*Proposed Co-Counsel to the Debtors and
Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOWFLEX INC., *et al.*,[1] | Case No. 24-12364 (ABA) |
| Debtors. | (Jointly Administered) |

### NOTICE TO CONTRACT PARTIES TO POTENTIALLY
### ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: BowFlex Inc. (2667) and BowFlex New Jersey LLC (3679). The Debtors' service address is 17750 S.E. 6th Way, Vancouver, Washington 98683.

> EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on March 8, 2024, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 79] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder the contract or agreement listed on **Exhibit A** to which you are a counterparty, upon approval of the Sale Transaction. The Debtors have conducted a review of their books and records and have determined that the Cure Payments for unpaid monetary obligations under such Executory Contract or Unexpired Lease is as set forth on **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Payments, object to a proposed assignment to the Successful Bidder of any Executory Contract or Unexpired Lease, or dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments, state the correct Cure Payments alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) (A) for objections to the proposed Cure Payments set forth in this notice, be filed with the Court and served and **actually received no later than [●], at 5:00 p.m. (prevailing Eastern Time)** (the "Cure Objection Deadline") and (B) for objections based on the ability of the Successful Bidder to provide adequate assurance of future performance, be filed with the Court and served and **actually received no later than April 11, 2024, at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"), in each case, served on and received by the following parties: (i) the Debtors, BowFlex Inc., 17750 S.E. 6th Way, Vancouver, Washington 98683, Attn: Alan Chan; (ii) proposed counsel to the Debtors, Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603, Attn: Matthew A. Clemente (mclemente@sidley.com), Maegan Quejada (mquejada@sidley.com), and Michael A. Sabino (msabino@sidley.com); (iii) proposed co-counsel to the Debtors, Fox Rothschild LLP, 49 Market Street, Morristown, New Jersey 07960 Attn: Joseph J. DiPasquale (jdipasquale@foxrothschild.com), Mark E. Hall (mhall@foxrothschild.com), and Michael R. Herz (mherz@foxrothschild.com); (iv) counsel to the DIP Agent, Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, New York 10178, Attn: Marc R. Leduc (marc.leduc@morganlewis.com), Shah M. Nizami (shah.nizami@morganlewis.com), and

---

[2] Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

Jennifer Feldsher (jennifer.feldsher@morganlewis.com); (v) Office of the United States Trustee for Region 3, District of New Jersey, Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Richard L. Schepacarter and Jeffrey Sponder; (vi) counsel to any official committee of unsecured creditors appointed in these cases; and (vii) counsel to the Stalking Horse Bidder, (a) Buchalter LLC, 18400 Von Karman Avenue, Ste. 800, Irvine, California 92612, Attn: Caroline Djang (cdjang@buchalter.com) (b) Gibbons P.C., One Gateway Center, Newark, NJ 07102-5310, Attn: Robert K. Malone (rmalone@gibbonslaw.com) and Kyle P. McEvilly (KMcEvilly@gibbonslaw.com).

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Payments, (b) the proposed assignment and assumption of any Executory Contract or Unexpired Lease, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the deadlines set forth above, then (i) you will be deemed to have stipulated that the Cure Payments as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Payments are due under the Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease or related Cure Payments in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Executory Contract or Unexpired Lease on the Contract Assumption Notice or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved. Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

Dated: [●], 2024

3

**FOX ROTHSCHILD LLP**
Joseph DiPasquale, Esq.
Mark E. Hall, Esq.
Michael R. Herz, Esq.
49 Market Street
Morristown, New Jersey 07960
Telephone: (973) 992-4800
Email: jdipasquale@foxrothschild.com
       mhall@foxrothschild.com
       mherz@foxrothschild.com

**SIDLEY AUSTIN LLP**
Matthew A. Clemente (*pro hac vice* pending)
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Email:     mclemente@sidley.com

Maegan Quejada (*pro hac vice* pending)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
mquejada@sidley.com

Michael A. Sabino (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
msabino@sidley.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*

4