| | |
|---|---|
| **SIDLEY AUSTIN LLP**<br>Matthew A. Clemente (admitted *pro hac vice*)<br>One South Dearborn<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br>mclemente@sidley.com<br><br>Maegan Quejada (admitted *pro hac vice*)<br>1000 Louisiana Street, Suite 5900<br>Houston, Texas 77002<br>Telephone: (713) 495-4500<br>Facsimile: (713) 495-7799<br>mquejada@sidley.com<br><br>Michael A. Sabino (admitted *pro hac vice*)<br>787 Seventh Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>Facsimile: (212) 839-5599<br>msabino@sidley.com<br><br>*Proposed Co-Counsel to the Debtors and Debtors in Possession* | **FOX ROTHSCHILD LLP**<br>Joseph J. DiPasquale, Esq.<br>Mark E. Hall, Esq.<br>Michael R. Herz, Esq.<br>49 Market Street<br>Morristown, New Jersey 07960<br>Telephone: (973) 992-4800<br>Facsimile: (973) 992-9125<br>jdipasquale@foxrothschild.com<br>mhall@foxrothschild.com<br>mherz@foxrothschild.com<br><br>*Proposed Co-Counsel to the Debtors and Debtors in Possession* |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BOWFLEX INC., *et al.*,[1]<br><br>     Debtors. | Chapter 11<br><br>Case No. 24-12364 (ABA)<br><br>(Jointly Administered) |

**DECLARATION OF ROBERT A. DEL GENIO REGARDING CIRCUMSTANCES
LEADING TO THE FILING OF THESE CHAPTER 11 CASES**

  I, Robert A. Del Genio, hereby declare under penalty of perjury:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: BowFlex Inc. (2667) and BowFlex New Jersey LLC (3679). The Debtors' service address is 17750 S.E. 6th Way, Vancouver, Washington 98683. These chapter 11 cases were filed on March 4, 2024 (the "Petition Date").

1.  I am a Senior Managing Director and the co-leader of the New York Metro Region for Corporate Finance and Restructuring at FTI Consulting, Inc. ("FTI Consulting"), which has its principal office located at 1166 Avenue of the Americas 15th Floor, New York, New York 10036. I am a resident of FTI Consulting's New York City office. Since January 2023, FTI Consulting has been serving as financial advisor to the above-captioned debtors and debtors in possession (the "Debtors" and together with their non-debtor wholly owned subsidiaries, the "Company"), which is an engagement I lead. I submit this declaration ("Declaration") in response to a request from the United States Trustee for the District of New Jersey (the "U.S. Trustee") to provide additional information relating to the circumstances leading up to the Debtors' filing of these bankruptcy cases (these "Chapter 11 Cases") in the District of New Jersey.

2.  Based on my work with the Debtors, I am generally familiar with the Debtors' businesses, financial condition, day-to-day operations, and books and records. Except as otherwise noted herein, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from my review of the Debtors' business records and from the Debtors' employees and retained advisors (including members of my team that report to me) in the ordinary course of my responsibilities.

3.  I am over the age of eighteen, and the Debtors have authorized me to submit this Declaration on their behalf. I am not being specifically compensated for this testimony other than through payments received by FTI Consulting, as a proposed professional to be retained by the Debtors. If called upon to testify, I could and would testify competently as to the facts set forth in this Declaration.

## I. Professional Background and Qualifications

4.  I joined FTI Consulting in 2017 when it acquired CDG Group, a financial advisory firm I co-founded. Before that, I was a corporate finance partner and a national director at

Ernst & Young. I have more than forty years of experience in restructuring and mergers and acquisitions and have advised companies, lenders, creditors, corporate boards, and equity sponsors across a diverse range of industries both domestically and internationally. I hold a Bachelor of Business Administration with high honors from the University of Notre Dame and a Master of Management from the Kellogg Graduate School of Management at Northwestern University. I am a Certified Public Accountant (inactive status), Certified Turnaround Professional and a fellow in the American College of Bankruptcy.

5. I have advised companies, lenders, and investors both in and outside of chapter 11 in a variety of complex restructuring engagements. I acted as the financial advisor to GNC Holdings Inc., Catalina Marketing Corporation, Frontier Communications Corporation, ESSAR Steel, Algoma Steel Inc., Audacy, Inc., AgileThought, Reichhold Holdings US, Inc., Milacron, Inc., Caraustar Industries, Inc., MicroAge, Inc., OSG Group, CST Industries, Dan River, Inc., Wheeling-Pittsburgh Steel Corp., Waypoint, US Internetworking, Factory Card Outlet, Malden Mills, and Metal Forming Technologies during their chapter 11 cases. I also served as the Strategic Planning Officer of RHI Entertainment, Inc., the Chief Restructuring Officer of The Weinstein Company Holdings LLC during its chapter 11 proceedings, the Chief Restructuring Officer of CHC Group Ltd. during its chapter 11 proceedings, the Chief Restructuring Officer of PHI, Inc. during its chapter 11 proceedings, the Chief Restructuring Officer of Voyager Aviation Holdings, Inc. and the Co-Chief Restructuring Officer of F&W Media and Western Global Airlines during its chapter 11 proceedings. I also served as the Chief Strategic Officer of Production Resources Group. I currently serve on the board of directors of Panavision, Inc. after having served as an interim Chief Executive Officer. I have previously served on the boards of Washington Group International, Inc., CHC Group Ltd., Lazare Kaplan International, Inc., and Buffets, Inc. As

relevant to my testimony today, my decades of restructuring experience includes liquidity review and cash forecasting, working capital management, chapter 11 planning and administration, and assisting companies with first day and other matters necessary to avoid any unnecessary disruption of their businesses and to protect value as companies transition into their roles as chapter 11 debtors in possession.[2]

## II. FTI Retention

6. The Company hired FTI Consulting in January 2023 to serve as financial advisor and assist with liquidity management and other related financial advisory services.

7. In late 2023, the Company engaged FTI Capital Advisors, LLC ("FTICA" and, together with FTI Consulting, "FTI") as investment banker for an in-court sale process. FTICA contacted or received inbound interest from parties regarding a potential transaction. FTI Consulting also expanded its scope of work for the Company during this time to further evaluate contingency planning efforts.

## III. The Company's Reach

8. The Company is a leading marketer, developer and manufacturer of health and fitness products sold under several marquee fitness brands, including Nautilus, BowFlex, Schwinn, and JRNY. These product offerings are distributed through diversified direct and retail sales channels, both domestically and internationally, and have made the Company a global leader in innovative home and connected fitness solutions.

9. The Company is headquartered in Vancouver, Washington, and, as of the Petition Date, employs approximately 330 individuals across 27 states (approximately 130 of which work remotely), as well as 70 individuals internationally (including individuals employed by non-Debtor

---

[2] Further information on my professional background is available on FTI Consulting's website at: https://www.fticonsulting.com/experts/robert-del-genio.

4

affiliates). Through its operations based in Canada, China, Switzerland, the Netherlands, and the United Kingdom, the Company provides products to thousands of customers in over 70 countries, with the mission of empowering healthier living through individualized connected fitness experiences. All of the Company's products are produced by third-party manufacturers, primarily located in Asia and, generally, have a lead time of two to three months, which requires active management and strategic planning with respect to forecasting and meeting both domestic and international consumer demand. In the United States, the Company operates distribution facilities in Ohio and California and contracts with third-party warehouses and logistics providers to fulfill orders.

10. The Company has customers across all 50 U.S. states and Washington D.C. Specifically in New Jersey, the Debtors have identified over 40,500 individual, direct customers, representing approximately 5.3% of all of the customers of the Company's US operations. Sales to customers in New Jersey represent approximately 3% of the Company's sales in the past year, which is the 11th highest state.

11. As demonstrated by the Debtors' consolidated list of creditors holding the largest unsecured claims (see Dkt. No. 1 at 10), approximately one third (1/3) of the Debtors' largest creditors are located internationally. The remainder of the top 30 unsecured creditors are located across the United States in approximately ten states: New York, Massachusetts, Illinois, Indiana, Texas, Minnesota, Oregon, Colorado, Washington, and California. The administrative agent for the Debtors' prepetition term loan facility and the DIP Facility, SLR, is based in Boston, Massachusetts and the DIP credit agreement is governed by the law of the State of New York. BowFlex Inc.'s registered equityholders and nominees are geographically dispersed as well. They are located in 18 states in the U.S., Canada, and Uruguay.

**IV.   BowFlex New Jersey LLC**

12. Debtor BowFlex New Jersey LLC was formed on February 9, 2024. It is a New Jersey limited liability company with its domicile in New Jersey. Its registered agent is Cogency Global Inc., whose registered office is located at 316 Berrhill Drive, Williamstown, New Jersey. I understand that Cogency Global Inc. provides similar services to many other companies similar to the Debtors. Debtor BowFlex New Jersey LLC opened a bank account at Provident Bank on February 22, 2024, which is used to hold the adequate assurance deposit for the Debtors' utility providers, as authorized by this Court.

**V.   The Importance of a Stalking Horse Bidder**

13. As a condition to providing the Debtors postpetition financing (the "DIP Facility" and the lenders related thereto, the "DIP Lenders"), Crystal Financial LLC d/b/a SLR Credit Solutions ("SLR"), who is the administrative agent for both the Debtors' prepetition term loan facility and the Debtors' DIP Facility, required that the Debtors obtain a stalking horse bidder for their postpetition sale process. Without access to the prepetition lenders' cash collateral and the funds available under the DIP Facility, the Debtors would not be able to finance these Chapter 11 Cases. Moreover, the prepetition lenders would have had the ability to exercise remedies against the Debtors and their non-Debtor foreign affiliates.

14. Furthermore, having a stalking horse bidder in place at filing is critical to maximizing the value of the Debtors' estates. A stalking horse bid provides a floor amount to be received by the estates. Additionally, it allows the Debtors to provide a positive message to employees, vendors and customers. Finally, it allows for a more orderly process, which, given the Debtors' liquidity situation, is critical. In short, having a stalking horse bidder is highly beneficial to the Debtors' estates.

15.   During the month of January, as the Debtors were dealing with tightening liquidity and increased pressure from the lenders ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████.

16.   Faced with ████████████████████████████████████████ ████████████ the clear requirements from the lender regarding the continued access to cash and the provision of DIP financing, and the value maximizing benefits of securing a stalking horse bid, the board of Debtor BowFlex Inc. (the "Board") and management, in consultation with FTI Consulting and Sidley Austin LLP, concluded that it was in the best interests of the Company and made the value maximizing decision to establish Debtor BowFlex New Jersey LLC ████████ ████████████████████████████████████████████. The Board authorized the formation of Debtor BowFlex New Jersey LLC on February 8, 2024 and directed the advisors to retain New Jersey counsel and prepare for a New Jersey bankruptcy filing. The Debtors' limited liquidity prohibited parallel filing preparations for more than one district.

17.   ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████

18. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

19. ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

## VI. Sale Timeline and Liquidity

20. The DIP Lenders have imposed tight milestones in connection with the sale process. The DIP Lenders have required that the auction be no later than 35 days after the Petition Date, the sale order be entered no later than 42 days after the Petition Date, and payoff of the DIP Facility be no later than 49 days after the Petition Date. The potential delay associated with a change of venue creates the risk that the Debtors will be unable to meet the milestones, which would result in a default under the DIP Facility. A default under the DIP Facility would likely be catastrophic to the sale process and these Chapter 11 Cases. Additionally, the Debtors' liquidity is very tight. The additional administrative costs associated with a dispute over venue and, if

ordered by the Bankruptcy Court, a venue transfer, has the potential to imperil the administrative solvency of these Chapter 11 Cases, with these increased costs likely to be borne by the unsecured creditors.

### VII. Conclusion

21. Based on the facts set forth above, the decision to file chapter 11 bankruptcy in New Jersey was in the best interests of the Debtors' estates because it preserved maximum optionality for the Debtors to secure a stalking horse bid, thereby maximizing the value of the Debtors estates. The delay, uncertainty, and additional costs resulting from a transfer of venue (or a dispute over such transfer) has the possibility of imperiling the sale process and therefore damaging the value of the Debtors' estates to the detriment of the economic parties in interest. Finally, the Debtors' prepetition lenders and DIP Lenders have consented to their chosen venue.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: March 21, 2024

/s/ *Robert A. Del Genio*
Robert A. Del Genio
Senior Managing Director
FTI Consulting, Inc.