Caption in Compliance with D.N.J. LBR 9004-1(b)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In Re:

BOWFLEX INC., *et al.*,[1]

Debtors.

**Order Filed on April 15, 2024**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

Chapter 11

Case No. 24-12364 (ABA)

(Jointly Administered)

**ORDER (I) APPROVING THE SALE OF THE ACQUIRED
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO
ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE
ASSET PURCHASE AGREEMENT, AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twenty-nine (29), is **ORDERED.**

**DATED: April 15, 2024**

Honorable Andrew B. Altenburg, Jr.
United States Bankruptcy Court

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: BowFlex Inc. (2667) and BowFlex New Jersey LLC (3679). The Debtors' service address is 17750 S.E. 6th Way, Vancouver, Washington 98683.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**SIDLEY AUSTIN LLP**
Matthew A. Clemente (admitted *pro hac vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
mclemente@sidley.com

Maegan Quejada (admitted *pro hac vice*)
1000 Louisiana Street, Suite 5900
Houston, Texas 77002
Telephone: (713) 495-4500
Facsimile: (713) 495-7799
mquejada@sidley.com

Michael A. Sabino (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
msabino@sidley.com

**FOX ROTHSCHILD LLP**
Joseph J. DiPasquale, Esq.
Mark E. Hall, Esq.
Michael R. Herz, Esq.
49 Market Street
Morristown, NJ 07960
Telephone: (973) 992-4800
Facsimile:  (973) 992-9125
jdipasquale@foxrothschild.com
mhall@foxrothschild.com
mherz@foxrothschild.com

*Proposed Co-Counsel to the Debtors and
     Debtors in Possession*

(Page | 3)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

Upon the motion (the "Motion") [Docket No. 35], of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules") for, among other things, entry of an order (this "Sale Order"): (a) authorizing the Debtors' entry into, and approving, the Asset Purchase Agreement, dated as of March 4, 2024, by and among Debtor BowFlex Inc., its non-debtor affiliate and Johnson Health Tech Retail, Inc., a Wisconsin corporation (the "Purchaser"), and the other parties signatory thereto, attached hereto as **Exhibit A** (together with all schedules, exhibits, and ancillary documents related thereto, in each case, as may be amended, modified or supplemented from time to time in accordance with the terms thereof, collectively, the "APA"),[2] (b) authorizing and approving the sale of the Acquired Assets (the "Sale") free and clear of all liens, claims, liabilities, rights, encumbrances, and other interests (other than Assumed Liabilities); and (c) granting related relief (collectively, the "Transaction"); and the Court having entered the *Amended Order (I) Approving the Auction and Bidding Procedures, (II) Approving the Debtors' Entry Into the Stalking Horse Agreement and Stalking Horse Bid Protections, (III) Scheduling Bid Deadline and an Auction, (IV) Approving the Form and Manner of Notice Thereof and (V) Granting Related Relief* [Docket No. 131] (the "Bidding Procedures Order") (x) approving, among other things,

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA (as defined below) or the Final DIP Order (as defined below), as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

certain bidding procedures (the "Bidding Procedures"), the proposed form of notice of the Sale Hearing (as defined below) and the Stalking Horse Bid Protections (as defined in the Bidding Procedures Order); and the Debtors having determined that the Purchaser has submitted the highest or otherwise best bid for the Acquired Assets and determined that the Purchaser is the Successful Bidder (as defined in the Bidding Procedures); and upon adequate and sufficient notice of the Motion, the APA, and all other related transactions contemplated thereunder and in this Sale Order, and it appearing that no other or further notice need be provided; and all interested parties having been heard or having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and the hearing to approve the Sale (the "Sale Hearing") having been held on April 15, 2024; and the Court having reviewed and considered the Motion, all relief sought therein and related thereto and any objections thereto; and upon the full record in support of the relief requested by the Debtors in the Motion, including the Campbell Declaration; and the Court having jurisdiction over this matter; and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and upon the full record of these chapter 11 cases and all other pleadings and proceedings, including the Motion; and after

(Page | 5)
Debtors:          BOWFLEX INC., *et al*.
Case No.          24-12364 (ABA)
Caption of Order: Order (I) Approving the Sale of the Acquired Assets Free and Clear of all
                  Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter
                  into and Perform their Obligations under the Asset Purchase Agreement,
                  and (III) Granting Related Relief

due deliberation thereon, and good and sufficient cause appearing therefor, **THE COURT**

**HEREBY FINDS THAT**:[3]

I.      **Jurisdiction, Final Order, and Statutory Predicates.**

        A.      The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408

and 1409.

        B.      The statutory predicates for the relief requested in the Motion are sections 105(a),

363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and

9014 and Local Rule 9013-1.

        C.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under

Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the

implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set

forth herein.

II.     **Notice of the APA, Transaction, Sale Hearing and Bidding Procedures Order.**

        D.      As evidenced by the affidavits of service and publication previously filed with the

Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely,

---

[3]   The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law
      for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent
      any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are
      findings of fact, they are adopted as such.

(Page | 6)

| Debtors: | BOWFLEX INC., *et al.* |
|---|---|
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the APA, this Sale Order and the Transaction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008 and 9014, and the Local Rules. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the APA, this Sale Order and the Transaction as required by the Bidding Procedures Order. The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the APA, this Sale Order or the Transaction is, or shall be, required. The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

E.      A reasonable opportunity to object and be heard with respect to the Transaction, the Motion and the relief requested therein and provided in this Sale Order has been afforded to all interested persons and entities, including the Bid Notice Parties (as defined in the Bidding Procedures Order).

F.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order. The Debtors and their professionals have adequately and appropriately marketed the Acquired Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties. Based upon the record of these proceedings, creditors, other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Acquired Assets.

(Page | 7)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

G.      The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Acquired Assets. The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures.

### III.      Good Faith of the Purchaser.

H.      The APA was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the APA or the Transaction to be avoided, or for any costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

I.      The Purchaser is consummating the Transaction in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code). The Purchaser has proceeded in good faith in all respects in connection with the Transaction. The Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

### IV.      Highest or Otherwise Best Offer.

J.      The Debtors' marketing process with respect to the Acquired Assets, including the Debtors' prepetition marketing process with respect to the Acquired Assets, afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets. The APA, including the form and total consideration to be realized by the Debtors under the APA, (i) constitutes the highest and best offer for the Acquired Assets;

(Page | 8)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

(ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

## V.   Sound Business Purpose.

K.      The Debtors  have demonstrated good, sufficient, and sound business purposes and justification for consummation of the Transaction pursuant to the APA and all other agreements, instruments, certificates, and other documents to be entered into or delivered by any party in connection with the Transaction, including, without limitation, any assumption and assignment agreements entered into in connection therewith (collectively, the "Transaction Documents"), outside of the ordinary course of business and in accordance with the requirements of section 363(b) of the Bankruptcy Code. Consummation of the Transaction prior to and not as part of a chapter 11 plan is (i) justified under the circumstances, (ii) an appropriate exercise of the Debtors' business judgment, and (iii) in the best interests of the Debtors, their estates, and their creditors.

L.      The Debtors' decision to enter into the Stalking Horse APA with the Purchaser was a due and proper exercise of the Debtors' business judgment and was authorized pursuant to the Bidding Procedures Order. The Bid Protections contained in the Stalking Horse APA (i) were necessary to preserve the value of the Debtors' estates by inducing the Purchaser to enter into the Stalking Horse APA and (ii) are in compliance with the Bid Procedures and authorized by the Bidding Procedures Order.

(Page | 9)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

M.      Approval of the Motion and the APA and the consummation of the Transaction is in the best interests of the Debtors' chapter 11 estates, their creditors, and other parties in interest. Thus, there is good cause for the Court to approve the Transaction.

## VI.    Fair Purchase Price.

N.      The consideration provided by the Purchaser pursuant to the APA (i) is fair and adequate; (ii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and similar laws); and (iii) will provide an equal or greater recovery for the Debtors' creditors than would be provided by any other reasonably practicable available alternative. The terms of the APA, the Transaction Documents, and the Transaction are fair and reasonable under the circumstances of the Debtors' chapter 11 cases, and the Debtors' determination to proceed with such Transaction constitutes a valid and sound exercise of the Debtors' business judgment.

## VII.   No Merger.

O.      Neither the Purchaser nor its subsidiaries, parents, affiliates, designees, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives or attorneys (collectively, the "Purchaser Parties"), is a mere continuation of the Debtors or their estates and there is no continuity of enterprise or common identity between any Purchaser Party, on the one hand, and the Debtors, on the other hand. No Purchaser Party is holding itself out to the public as a continuation of the Debtors or their estates. None of the Purchaser Parties is a successor to the Debtors or their estates by reason of

(Page | 10)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

any theory of law or equity, and the Transaction does not amount to a consolidation, merger, or *de facto* merger of any Purchaser Party with or into any of the Debtors.

## VIII.  Validity of Transfer.

P.      The APA was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. None of the Debtors or the Purchaser is entering into the transactions contemplated by the APA fraudulently for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims.

Q.      The Sellers are the sole and lawful owners of the Acquired Assets. The Debtors' Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of each of the Acquired Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Sellers to the Acquired Assets free and clear of (a) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising at any time prior to the Closing Date (collectively, the "Liens"), (b) all debts arising under, relating to, or in connection with any act of the Sellers or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds

(Page | 11)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter-ego, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Sellers' or the Purchaser's interests in the Acquired Assets, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (b), the "Claims"), and (c) all other Encumbrances (as defined in the APA) or interests (collectively, as set forth in clauses (a) through (c), the "Claims, Encumbrances and Interests") relating to, accruing or arising any time prior to entry of this Sale Order, except the Assumed Liabilities and Permitted Liens under the APA or as otherwise expressly provided in this Sale Order.

R.     Subject to the entry of this Sale Order, each Debtor: (a) has full requisite corporate or other organizational power and authority to execute, deliver, and perform its obligations under the APA and all other documents contemplated thereby, and (b) has taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of its obligations under the APA and to consummate the Transaction,

(Page | 12)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

including as required by their respective organizational documents, and, upon execution thereof, the APA and the related documents were or will be duly and validly executed and delivered by such Debtor and enforceable against such Debtor in accordance with their terms and, assuming due authorization, execution, and delivery thereof by the other parties thereto, constituted or will constitute a valid and binding obligation of such Debtor. No government, regulatory, or other consents or approvals, other than those expressly provided for in the APA, were required for the execution, delivery, and performance by the Debtors of the APA or the consummation of the Transaction contemplated thereby. No consents or approvals of the Debtors, other than those expressly provided for in the APA or this Sale Order, are required for the Debtors to consummate the Transaction.

S.      The sale, conveyance, assignment and transfer of any personally identifiable information pursuant to the terms of the APA and this Sale Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Transaction is permitted pursuant to section 363(b)(1)(A) of the Bankruptcy Code. Accordingly, appointment of a consumer privacy ombudsman in accordance with section 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Transaction.

T.      Crystal Financial LLC d/b/a SLR Credit Solutions. ("SLR"), in its capacity as DIP Agent as defined in the *Final Order (A) Authorizing Debtors to Obtain Postpetition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c) and 364(d); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362;*

(Page | 13)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

*(C) Authorizing Debtors to Enter into Agreements with Crystal Financial LLC d/b/a SLR Credit Solutions; and (D) Authorizing Debtors to Use Cash Collateral* [Docket No. 172] (the "Final DIP Order"), has consented to the sale of the Acquired Assets to the Purchaser pursuant to the APA, subject to the terms and conditions of the Final DIP Order and this Sale Order, including, but not limited to, Paragraph 14 of this Sale Order.

**IX.     Section 363(f) is Satisfied.**

U.     Except as otherwise provided in this Sale Order, the conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of any Claims, Encumbrances and Interests, other than Assumed Liabilities and Permitted Liens in accordance with the terms and conditions of this Sale Order.

V.     The Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, if (i) the sale and/or transfer of the Acquired Assets to the Purchaser were not free and clear of all Claims, Encumbrances and Interests (other than Assumed Liabilities and Permitted Liens), or (ii) the Purchaser would, or in the future could, be liable for any such Claims, Encumbrances and Interests (other than the Assumed Liabilities and Permitted Liens).

W.     The Debtors may transfer or sell the Acquired Assets free and clear of all Claims, Encumbrances and Interests, other than Assumed Liabilities and Permitted Liens, because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. All holders of Claims, Encumbrances and Interests (except to the extent that such Claims, Encumbrances and Interests are Permitted Liens) are adequately protected by either

(Page | 14)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

(x) having their Claims, Encumbrances and Interests, if any, in each instance against the Debtors, their estates, or any of the Acquired Assets, attach to the net cash proceeds of the Purchase Price ultimately attributable to the Acquired Assets in which such creditor alleges a Claims, Encumbrances and Interests, in the same order of priority, with the same validity, force, and effect that such Claims, Encumbrances and Interests had prior to the Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto, or (y) fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

**X.     Assigned Contracts**

X.     The Debtors also gave due and proper notice of the potential assumption and assignment of each executory contract or unexpired lease available to be assumed by the Debtors and assigned to Purchaser to each non-debtor party under each such executory contract or unexpired lease as reflected on the notices of potential assumption assignment of the Assigned Contracts served on each contract or lease counterparty and filed on March 15, 2024 and March 29, 2024 [Dkt Nos. 119 and 182] (collectively, the "Assumption and Assignment Notice"). Such notice being good, sufficient, and appropriate under the particular circumstances, and the counterparties to the Assigned Contracts are hereby deemed to consent to the relief granted herein, unless otherwise provided in this Sale Order.

Y.     The assumption and assignment of the Assigned Contracts pursuant to the Assumption and Assignment Notice, the terms of this Sale Order, and the APA is integral to the transactions contemplated by the APA. Such assumption and assignment is in the best interests of

(Page | 15)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

the Debtors, their estates, their creditors, and all other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

Z.      Pursuant to the terms of the APA and this Sale Order, on or before the Closing Date, as applicable pursuant to the terms of this Sale Order, the Debtors or the Purchaser, as applicable, shall have, except as otherwise provided in the APA, or this Sale Order, or as otherwise expressly agreed to between the Debtors or the Purchaser, as applicable:  (a)  cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (b) provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (c) provided adequate assurance of future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

## XI.    Personally Identifiable Information.

AA.    The Debtors have provided a privacy policy to consumers governing the disclosure of "personally identifiable information" (as defined in Bankruptcy Code section 101(41A)) to unaffiliated third parties. The Debtors have proposed to sell certain assets, which may require the disclosure to third parties of personally identifiable information. The Debtors' disclosure of personally identifiable information pursuant to the Transaction is consistent with the privacy

(Page | 16)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

policy and notices delivered by the Debtors to customers. For these reasons, no consumer privacy ombudsman has been appointed under section 363(b)(1) of the Bankruptcy Code.

## XII.    Compelling Circumstances for an Immediate Sale.

BB.    Good and sufficient reasons for approval of the APA and the Transaction have been articulated. The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest. The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the APA, and (b) compelling circumstances for the Transaction outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Transaction with the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the Transaction will provide the means for the Debtors to maximize distributions to creditors.

CC.    The legal and factual bases set forth in the Motion and the Campbell Declaration filed in support thereof and presented at the Sale Hearing establish just cause for the relief granted herein.

## THE COURT HEREBY ORDERS THAT:

## I.    General Provisions.

1.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact

(Page | 17)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al.* |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.      The Motion is granted as provided herein, and entry into and performance under, and in respect of, the APA and the consummation of the transactions contemplated thereby.

3.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code to the relief granted herein.

4.      Notice of the Motion and Sale Hearing was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, and the Bidding Procedures Order.

**II.     Approval of the APA.**

5.      The APA, all other ancillary documents, and all of the terms and conditions thereof, are hereby approved pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

6.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, subject to the rights of the DIP Secured Parties set forth in Paragraph 14 of this Sale Order, the Debtors are authorized, empowered and directed to take any and all actions necessary and appropriate to (a) perform, consummate, implement and close the Transaction pursuant to and in accordance with the terms

(Page | 18)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

and conditions of, and as contemplated in, the APA and this Sale Order, and (b) execute and deliver, perform under, consummate, implement, and fully close the APA, together with all additional instruments and documents that may be necessary or desirable to implement the APA and the Transaction.

7.      The Debtors and the Purchaser are hereby authorized and directed to take any and all actions as may be necessary or desirable to implement the Transaction, and any actions taken by the Debtors and/or the Purchaser necessary or desirable to implement the Transaction prior to the date of this Sale Order, or otherwise contemplated by the APA, are hereby approved and ratified.

8.      This Sale Order and the terms and provisions of the APA shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of and holders of equity interests in any Debtor, any holders of Claims, Encumbrances and Interests (whether known or unknown) in, against, or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchaser, designees, successors and assigns of the Purchaser, the Acquired Assets, and any trustees, examiners, or receivers, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. The APA shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their equity holders, or any trustees, examiners, or receivers. Any trustee appointed in these cases (including a Chapter 7 trustee, if applicable) shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Sale Order. This Sale Order and the

(Page | 19)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

APA shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing (including the Purchaser's designees).

### III.    Transfer of the Acquired Assets.

9.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, subject to the rights of the DIP Secured Parties set forth in Paragraph 14 of this Sale Order, the Debtors are authorized and directed to transfer the Acquired Assets to the Purchaser in accordance with the terms of the APA and such transfer shall constitute a legal, valid, binding, and effective sale and shall vest the Purchaser with title to the Acquired Assets.  Subject to the rights of the DIP Secured Parties set forth in Paragraph 14 of this Sale Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, other than the Assumed Liabilities and Permitted Liens, the Acquired Assets shall be sold free and clear of all Claims, Encumbrances and Interests of any kind or nature whatsoever, with all such Claims, Encumbrances and Interests (as applicable) to attach to the cash proceeds of the Purchase Price ultimately attributable to the property against or in which such Claims, Encumbrances and Interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Claims, Encumbrances and Interests had prior to the Transaction, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

10.    The Debtors are hereby authorized and directed to take any and all actions necessary to consummate the APA, including any actions that otherwise would require further approval by shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals.

(Page | 20)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

11.     The sale of the Acquired Assets to the Purchaser pursuant to the APA and the consummation of the transactions contemplated thereby do not require any consents or filings other than as specifically provided for in the APA. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA. A certified copy of this Sale Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the Claims, Encumbrances and Interests, and any other encumbrances of record, except the Assumed Liabilities and Permitted Liens.

12.     Subject to the rights of the DIP Secured Parties set forth in Paragraph 14 of this Sale Order, if any person or entity that has filed statements or other documents or agreements evidencing Claims, Encumbrances and Interests on or in all or any portion of the Acquired Assets (other than statements or documents with respect to Permitted Liens) shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Encumbrances and Interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors and the Purchaser are hereby authorized, on behalf of the Debtors and the Debtors' creditors, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets. The Debtors and the Purchaser are each authorized to file a copy of this Sale Order, which, upon filing, shall be conclusive evidence of the release and termination of all such Claims, Encumbrances and Interests,

(Page | 21)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

subject to the rights of the DIP Secured Parties set forth in Paragraph 14 of this Sale Order. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the Sale and assignment of the Acquired Assets free and clear of all Claims, Encumbrances and Interests shall be self-executing and neither the Debtors nor the Purchaser (or its designee) shall be required to execute or file releases, termination statement, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

13.     As of Closing, this Sale Order (a) shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Acquired Assets to the Purchaser pursuant to the APA and (b) is and shall be effective as a determination that all Claims, Encumbrances and Interests (other than Assumed Liabilities and Permitted Liens) existing as to the Acquired Assets have been and hereby are adjudged to be unconditionally released, discharged and terminated, with all such Liens, Encumbrances and Interests attaching automatically to the cash proceeds of the Purchase Price as set forth in Paragraph 9 above. This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to

(Page | 22)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, including the Transaction. The Acquired Assets are sold free and clear of any reclamation rights.

14. Upon the Closing, notwithstanding anything to the contrary in this Sale Order or the APA, the Purchaser shall deliver the Purchase Price to the Sellers, and the Sellers, in accordance with the terms of the Final DIP Order and the DIP Loan Documents, shall promptly pay to the DIP Agent, on behalf of itself and the other DIP Secured Parties, the proceeds of the APA that comprise the Purchase Price for application against the DIP Obligations until the DIP Obligations are paid in full in accordance with the Final DIP Order and the DIP Loan Documents. Notwithstanding anything herein to the contrary, until the payment in full, in cash, of the DIP Obligations (including the indefeasible payment in full of the Revolving DIP Obligations), all liens and security interests of the Secured Parties granted under the DIP Loan Documents, the Prepetition Term Loan Documents and the Final DIP Order against the Acquired Assets shall remain valid and enforceable and shall not be deemed altered by this Sale Order. Following the closing of the Sale and payment of the DIP Obligations as set forth in this paragraph 14, all such liens and security interests shall attach to and be enforceable against the proceeds of the Sale, shall continue in the same order of priority and with the same extent, validity, force and effect that the liens and security interests had prior to consummation of the Transactions, and shall not be deemed altered by this Sale Order until all DIP Obligations and, in the event of a successful Challenge, any resulting Prepetition Term Loan Obligations are indefeasibly paid in full in accordance with the

(Page | 23)
Debtors:          BOWFLEX INC., *et al*.
Case No.          24-12364 (ABA)
Caption of Order: Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief

Final DIP Order, the DIP Loan Documents and the Prepetition Term Loan Documents and no longer subject to a Challenge ("Lien Release Conditions").  For the avoidance of doubt, payment of the DIP Obligations as set forth herein shall not impair any rights of the Committee to commence a Challenge subject to the terms of the Final DIP Order, and any liens and security interests of the DIP Secured Parties and the Prepetition Secured Parties shall continue until the Lien Release Conditions have been satisfied.  Nothing in this Sale Order shall alter or impair any liens or security interests of the Secured Parties on assets that are not the Acquired Assets.

IV.     **Prohibition of Actions Against the Purchaser.**

15.     All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed to or by the Purchaser pursuant to the APA are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date. Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities, including, without limitation, the Debtors, creditors, employees, former employees, shareholders, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, litigation claimants, and their respective successors and assigns, are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to the Purchaser (or its designee) in accordance with the terms of the APA and this Sale Order and are hereby forever barred, estopped and permanently enjoined from asserting such claims against any Purchaser Party or its property (including the Acquired Assets).

(Page | 24)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

16.    To the maximum extent permitted by law, in accordance with the APA, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Acquired Assets and the Sale. To the extent the Purchaser cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall be in effect while the Purchaser, with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Purchaser.

17.    Notwithstanding anything in this Sale Order, subject to section 525(a) of the Bankruptcy Code, no governmental unit (as defined in Bankruptcy Code § 101(27)) or any representative thereof may revoke, suspend any right, license, trademark or other permission relating to the use of the Acquired Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases, the conduct of the Sale, or the consummation of the Transaction contemplated by the APA.

18.    The consideration provided by the Purchaser to the Debtors pursuant to the APA for the Acquired Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

19.    No Purchaser Party shall be deemed, as a result of any action taken in connection with the APA, the consummation of the Transaction or the transfer, operation or use of the Acquired Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors

(Page | 25)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

(other than solely with respect to any Assumed Liabilities after the Closing), (b) have *de facto* or otherwise merged with or into the Debtors or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors, in each case for any purpose or under any applicable law.

20.     Except as expressly provided in the APA with respect to the Purchaser, no Purchaser Party shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective business or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

21.     The transactions contemplated by the APA are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction, unless such authorization and such Transaction are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

22.     The APA and the Transaction Documents may be modified, amended, or supplemented by the Debtors and the Purchaser, with the consent of the DIP Agent subject to the

(Page | 26)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

terms and conditions of the DIP Loan Documents, in a writing signed by such parties, and in accordance with the terms thereof, without further order of this Court; provided, that (i) any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates, and (ii) has been agreed to between the Debtors and the Purchaser (with such consent not to be unreasonably withheld). The Debtors shall provide five (5) days' notice of any such modification, amendment, or supplement, including, for the avoidance of doubt, all material modifications, amendments, or supplements to counsel for the Committee.  Any material modification, amendment, or supplement to the APA and the Transaction Documents adversely affecting the Debtors' estates must be approved by order of this Court following a motion on notice to all interested parties.

23.    Nothing contained in any chapter 11 plan confirmed in the Debtors' chapter 11 cases or any subsequent order of this Court, including, without limitation, any order confirming any such chapter 11 plan, any order authorizing the sale of assets of the Debtors pursuant to any section of the Bankruptcy Code, and any order approving wind-down or dismissal of any Debtor's chapter 11 case or any subsequent chapter 7 case shall change, supersede, abrogate, nullify, restrict, or conflict with the provisions of the APA, the Transaction Documents, or this Sale Order, or in any way prevent or interfere with the consummation or performance of the Transaction.

24.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding any provision in the Bankruptcy Rules or Local Rules to the contrary, for cause shown, pursuant to Bankruptcy Rule 6004(h), this Sale Order shall not be stayed, shall be effective

(Page | 27)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

immediately upon entry, and the Debtors and the Purchaser are authorized to close the Transaction immediately upon entry of this Sale Order.

25.     The failure to specifically include any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in their entirety; *provided* that this Sale Order shall govern if there is any inconsistency between such agreements (including all ancillary documents executed in connection therewith), as applicable, and this Sale Order.

26.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted to the extent necessary to (i) allow the Purchaser to deliver any notice provided for in the APA and the Transaction Documents, and (ii) allow the Purchaser to take any and all actions permitted under the APA and the Transaction Documents in accordance with the terms and conditions thereof. The automatic stay imposed by section 362 of the Bankruptcy Code shall be modified solely to the extent necessary to implement the preceding sentence, and this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

27.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transaction, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Acquired Assets to the Purchaser; (b) interpret, implement, and enforce the provisions of

(Page | 28)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

this Sale Order; and (c) protect the Purchaser against any Claims, Encumbrances and Interests with respect to the Sellers or the Acquired Assets of any kind or nature whatsoever (other than the Permitted Liens as set forth in this Sale Order) subject to the rights of the DIP Secured Parties set forth in Paragraph 14 of this Sale Order.

28.     **Provision Regarding Amazon**.   Nothing in the sale order extinguishes Amazon.com Services LLC's ("Amazon") setoff rights, rights of recoupment, and other defenses to payment that Amazon may have with respect to any accounts receivable or purchase orders being sold by the Debtors to the Purchaser or otherwise.  The sale shall not be free and clear of, and shall not impair in any respect, any setoff or recoupment rights or other affirmative defenses to payment (including without limitation all return and credit rights) held by Amazon (a) with respect to any agreements being assigned pursuant to the terms of this Sale Order; and (b) on any purchase orders or accounts receivable, whether or not such accounts receivable, contracts or purchase orders are being assumed and assigned by the Debtors to the Purchaser.

29.     **Provision Regarding Granite**.  Notwithstanding anything to the contrary herein, this Sale Order does not authorize the assumption and assignment of the lease agreement between the Debtors and Granite (5415 Centerpoint) LLC relating to the leased premises located in Obetz, Ohio (the "Granite Lease").  For the avoidance of doubt, notwithstanding anything to the contrary herein, the Debtors' right to seek authority to assume and assign the Granite Lease under separate motion is not affected by this Sale Order.

30.     **Provision Regarding Chubb**.  Notwithstanding anything to the contrary in this Sale Order, the Bidding Procedures Order, the Assumption and Assignment Notice, the APA or

(Page | 29)

| | |
|---|---|
| Debtors: | BOWFLEX INC., *et al*. |
| Case No. | 24-12364 (ABA) |
| Caption of Order: | Order (I) Approving the Sale of the Acquired Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations under the Asset Purchase Agreement, and (III) Granting Related Relief |

any document related to any of the foregoing, (i) nothing shall permit or otherwise effect a sale, an assignment or any other transfer of any insurance policies that have been issued by ACE American Insurance Company, Federal Insurance Company, ACE Property & Casualty Insurance Company, Chubb Custom Insurance Company, Illinois Union Insurance Company, and/or any of their U.S.-based affiliates and predecessors (collectively, the "Chubb Companies") to or that provide coverage to any of the Debtors (or their predecessors) at any time and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts") and/or any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts; (ii) the Chubb Insurance Contracts and/or any rights, proceeds, benefits, claims, interests, rights to payments and/or recoveries under such Chubb Insurance Contracts (a) are not and shall not be deemed to be either Assigned Contracts nor a portion of any of the Assets sold, assigned or otherwise transferred as a part of the Sale, and (b) shall be deemed to be Excluded Assets; (iii) nothing shall alter or modify the terms and conditions of the Chubb Insurance Contracts; *provided, however*, that to the extent any claim with respect to the Acquired Assets arises that may be covered by the Chubb Insurance Contracts, and subject to applicable non-bankruptcy law, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Purchaser any such insurance proceeds (each, a "Proceed Turnover"); *provided further* that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

**<u>Exhibit A</u>**
**APA**

(See attached.)

**Execution Version**

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**BOWFLEX INC.**

**NAUTILUS FITNESS CANADA, INC.**

**AND**

**JOHNSON HEALTH TECH RETAIL, INC.**

**Dated as of March 4, 2024**

4887-6126-3006

**ASSET PURCHASE AGREEMENT**

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is dated as of March 4, 2024, and entered into by and among BowFlex Inc., a Washington corporation (the "US Seller"), Nautilus Fitness Canada, Inc., a Canadian corporation (the "Canadian Seller" or a "Foreign Seller" and, together with the US Seller, each a "Seller" and collectively, "Sellers"), and Johnson Health Tech Retail, Inc., a Wisconsin corporation ("Purchaser").

A.     Sellers are a global leader in innovative home fitness solutions, including exercise bikes, other cardio equipment, strength training products, and a digital fitness platform (the "Business").

B.     The US Seller plans to file a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") (the resulting case, the "Bankruptcy Case").

C.     Subject to the terms and conditions of this Agreement, following entry of the Sale Order finding Purchaser as the prevailing bidder at the Auction, Sellers desire to sell, transfer, and assign to Purchaser the Acquired Assets and the Assumed Liabilities, pursuant to the terms and conditions of this Agreement.

D.     Sellers and Purchaser have agreed that (i) the sale, transfer and assignment of Acquired Assets and Assumed Liabilities from the US Seller to Purchaser shall be effected pursuant to sections 105, 363 and 365 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules for the Bankruptcy Court, and (ii) the sale, transfer and assignment of Acquired Assets and Assumed Liabilities from the Foreign Seller shall be effected out-of-court and not pursuant to the Bankruptcy Code or any foreign bankruptcy, insolvency, or other proceeding.

**NOW, THEREFORE**, in consideration of the foregoing premises, the representations, warranties, covenants and agreements contained herein, and certain other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**ARTICLE I
DEFINITIONS**

1.1     **Definitions**.

As used herein, the following terms shall have the following meanings:

"Accounts Receivable" shall mean all accounts receivable of Sellers and other receivables of Sellers (whether or not billed) in the United States and Canada.

"Acquired Assets" means each Seller's United States and foreign assets as specified on Schedule A hereto.

1

"Acquisition" has the meaning assigned to that term in the Preamble.

"Adjusted Accounts Receivable" means Accounts Receivable MINUS Accounts Receivable over 150 days past due.

"Agreement" has the meaning assigned to that term in the Preamble.

"Alternative Transaction(s)" shall mean a Third-Party Sale or a Restructuring Transaction.

"Ancillary Agreements" means any certificate, agreement, document or other instrument to be executed and delivered in connection with this Agreement.

"Assigned Contracts" has the meaning assigned to that term in Section 2.1.

"Assumed Liabilities" has the meaning assigned to that term in Section 2.3.

"Assumed Trade Payables" means bona fide trade payables of Seller arising after the date of the Bankruptcy Petition and incurred in the ordinary course of business consistent with past practices through the Closing in respect of goods received or to be received after the date of the Bankruptcy Petition and services rendered or to be rendered after the date of the Bankruptcy Petition.

"Auction" has the meaning assigned to that term in Section 6.4(a).

"Back-up Bidder" has the meaning assigned to that term in Section 6.4(d).

"Bankruptcy Case" has the meaning assigned to that term in the Preamble.

"Bankruptcy Code" has the meaning assigned to that term in the Preamble.

"Bankruptcy Court" has the meaning assigned to that term in the Preamble.

"Bankruptcy Petition" shall mean the voluntary bankruptcy petition expected to be filed by Seller with the Bankruptcy Court initiating the Bankruptcy Case.

"Bidding Procedures Order" has the meaning assigned to that term in Section 6.2.

"Bidding Protections Trigger" has the meaning assigned to that term in Section 6.5(a).

"BowFlex Privacy Policy" means the Privacy Policy of BowFlex Inc., its brands and wholly owned subsidiaries, last updated November 1, 2023.

"Break-Up Fee" has the meaning assigned to that term in Section 6.5(b).

"Business" has the meaning assigned to that term in the Preamble.

"Business Day" means any day on which commercial banking institutions are open for business in Wilmington, Delaware and Taichung, Taiwan.

"Closing" has the meaning assigned to that term in Section 3.1.

"Closing AR Adjustment Amount" means (in the event that actual Adjusted Accounts Receivable at Closing is less than the Accounts Receivable Forecast) the difference between (i) Adjusted Accounts Receivable Forecast (as set forth in Schedule 1.1 attached hereto), and (ii) the actual Adjusted Accounts Receivable as of the Closing Date.

"Closing Cash" means $37.5 million.

"Closing Date" has the meaning assigned to that term in Section 3.1.

"Closing Inventory Adjustment Amount" means (in the event the book value of Inventory at Closing is less than the Closing Inventory Forecast) 80% of the difference between (i) the book value of Inventory at Closing and (ii) the Closing Inventory Forecast.

"Closing Inventory Forecast" means the closing inventory forecast provided by Seller to the Purchaser as of the date hereof and attached as Schedule 1.1 hereof.

"Confidentiality Agreement" has the meaning assigned to that term in Section 8.16.

"Contracts" means all agreements, contracts, leases, consensual obligations, promises or undertakings, whether written or oral, other than Employee Benefit Plans.

"Cure Amounts" means all amounts, costs and expenses required by the Bankruptcy Court to cure all defaults under the Assigned Contracts so that they may be assumed and assigned to Purchaser pursuant to Sections 363 and 365 of the Bankruptcy Code, subject to any negotiated adjustments agreed to by the applicable Assigned Contract counterparty.

"Customer Information" means all customer lists, client lists, and other customer or client data collected pursuant to the BowFlex Privacy Policy (excluding any such information with respect to customers or clients who have elected to opt-out pursuant to the BowFlex Privacy Policy, applicable law or Order of the Bankruptcy Court); *provided*, that such customer or client data shall be limited to such customers' or clients' name, email address, physical address, gender and date of birth.

"Debtor" shall mean Seller collectively.

"Deposit" has the meaning assigned to that term in Section 2.6.

"DIP Obligations" has the meaning assigned to that term in the DIP Order.

"DIP Order" means the means an interim or final order of the Bankruptcy Court approving the US Seller's post-petition debtor-in-possession credit facility.

3

"D&O Claims" means all rights, claims, and causes of action against any director, officer, equity holder, or employee of Seller, and all rights, claims, and causes of action under director and officer, fiduciary, and employment practices and similar insurance policies maintained by Seller.

"Employee Benefit Plans" shall mean (i) all "employee benefit plans" (as defined in Section 3(3) of ERISA), including any employee pension benefit plans; (ii) all employment, consulting, non-competition, employee non-solicitation, employee loan or other compensation agreements, (iii) all collective bargaining agreements, and (iv) all bonus or other incentive compensation, equity or equity-based compensation, stock purchase, deferred compensation, change in control, severance, leave of absence, vacation, salary continuation, medical, life insurance or other death benefit, educational assistance, training, service award, Section 125 cafeteria, dependent care, pension, welfare benefit or other material employee or fringe benefit plans, policies, agreements or arrangements, whether written or unwritten, qualified or unqualified, funded or unfunded and all underlying insurance policies, trusts and other funding vehicles, in each case currently maintained by or as to which Seller has or could reasonably be expected to have any obligation or liability, contingent or otherwise, thereunder for current or former employees, directors or individual consultants of Seller.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time, and regulations and formal guidance issued thereunder.

"Escrow Agent" has the meaning assigned to that term in Section 2.6.

"Escrow Agreement" has the meaning assigned to that term in Section 2.6.

"Estate" shall mean the estate of Debtor created by Section 541 of the Bankruptcy Code upon the filing of the Bankruptcy Petition and in connection with the Bankruptcy Case.

"Estate Causes of Action" shall mean any avoidance or recovery action that belongs to or could have been raised by the Debtor or the debtor-in-possession or its Estate under Article 5 of the Bankruptcy Code; and any and all causes of action, defenses, and counterclaims accruing to the Debtor or that is property of its Estate, based upon facts, circumstances and transactions that occurred prior to the Closing Date, except for (i) causes of action that relate to an Assigned Contract, (ii) causes of action relating to the operation of the Acquired Assets, and (ii) causes of action, defenses and counterclaims arising from breaches of warranty relating to the Acquired Assets.

"Excluded Assets" has the meaning assigned to that term in Section 2.2.

"Executory Contracts and Unexpired Leases" has the meaning assigned to that term in Section 2.1.

"Expense Reimbursement" has the meaning assigned to that term in Section 6.5(a).

"GAAP" means generally accepted accounting principles, consistently applied.

"Governmental Authorization" means any consent, franchise, license, registration, permit, order or approval issued, granted, given or otherwise made available by or under the authority of any Governmental Body or pursuant to any Law, including, as the context may require, any declarations or filings with, or expiration of waiting periods imposed by, any such Governmental Body.

"Governmental Body" means any (i) nation, state, county, city, town, borough, village, district or other jurisdiction, (ii) federal, state, local, municipal, foreign or other government, (iii) governmental or quasi-governmental body of any nature (including any agency, branch, department, board, commission, court, tribunal or other entity exercising governmental or quasi-governmental powers), (iv) multinational organization or body, (v) body exercising, or entitled or purporting to exercise, any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power, or (vi) official of any of the foregoing.

"Intellectual Property" means all trademarks, trade names, corporate names, company names, business names, product or brand names, service marks, patents, copyrights (including but not limited to moral rights), and any applications for or registrations of any of the foregoing, works of authorship, know-how, logos, proprietary information, protocols, schematics, specifications, software, software code (in any form, including source code and executable or object code), subroutines, techniques, user interfaces, URLs, domain names, web sites, works of authorship and other forms of technology (whether or not embodied in any tangible form and including all tangible embodiments of the foregoing, such as instruction manuals, laboratory notebooks, prototypes, samples, studies and summaries) inventions, trade secrets and any other intellectual property or intangible property that are used in the Business (on a worldwide basis without any geographical restrictions) as presently conducted and any rights relating to any of the foregoing.

"Inventory" means all supplies, goods, materials, work in process, inventory and stock in trade owned by Sellers exclusively for use or sale in the ordinary course of Business, but specifically excluding (1) goods which belong to sublessees, licensees or concessionaires of Seller, and (2) goods held by Sellers on memo, on consignment, or as bailee.

"IP Maintenance Capital" means unpaid costs for patent, trademark, copyright and domain name prosecution, renewals and maintenance that were due prior to Closing, which Seller shall report to Purchaser no less than twenty-four (24) hours prior to Closing.

"Law" means any applicable federal, state, provincial, local, municipal, foreign, international, multinational or other constitution, law, ordinance, principle of common law, code, regulation, statute or treaty.

"Liability" means any and all obligations, liabilities, debts and commitments, whether known or unknown, asserted or unasserted, fixed, absolute or contingent, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, due or to become due, whenever or however arising (including, without limitation, whether arising out of any contract or tort based on negligence, strict liability, or otherwise) and whether or not the same would be required by GAAP to be reflected as a liability in financial statements or disclosed in the notes thereto.

"Lien" means any mortgage, deed of trust, lien, pledge, charge, title defect, security interest, pledge, leasehold interest or other legal or equitable encumbrance of any kind.

"Permitted Liens" means (i) Liens arising out of operating leases with third parties to the extent related to an Acquired Asset, and (ii) those Liens set forth on Schedule 1.2.

"Person" means any individual, corporation, partnership, joint venture, trust, association, limited liability company, unincorporated organization, other entity, or governmental body or subdivision, agency, commission or authority thereof.

"Post-Closing Tax Period" means all taxable years or other taxable periods beginning on or after the Closing Date and, with respect to any taxable year or other taxable period beginning before and ending on or after the Closing Date, the portion of such taxable year or period beginning on the Closing Date.

"Pre-Closing Taxes" means all Taxes (other than Transfer Taxes) attributable to the operation of the Business or ownership or operation of the Acquired Assets with respect to any Pre-Closing Tax Period, which shall be calculated in accordance with Section 6.9(c) in the case of any taxable year or other taxable period beginning before and ending on or after the Closing Date

"Pre-Closing Tax Period" means (a) all taxable years or other taxable periods that end before the Closing Date and, (b) with respect to any taxable year or other taxable period beginning before and ending on or after the Closing Date, the portion of such taxable year or period ending on and including the day before the Closing Date.

"Pro Rata Expenses" means up to $10,000.00 in expenses and costs, consisting of any rent or other occupancy expenses (including utility expenses) or prepaid expenses with respect to any Assigned Contract, in each case, incurred by Seller for the period of the month in which the Closing Date occurs beginning on the first of such month and ending on the Closing Date (for the avoidance of doubt, such proration to be calculated based on the number of days in the month up to, and including the Closing Date, or if such expenses cannot be calculated by day, such other reasonable method as agreed upon by Seller and Purchaser acting in good faith); *provided*, *however*, that in the event Purchaser adds any Assigned Contracts after the date of this Agreement, then the cap amount would be adjusted as mutually agreed by Seller and Purchaser.  Seller shall deliver to Purchaser a summary of such Pro Rata Expenses (together with reasonable supporting documentation) on or prior to the Closing Date, and Purchaser shall reimburse Seller for such documented expenses within three (3) Business Days of the Closing Date.

"Purchase Price" has the meaning assigned to that term in Section 2.5.

"Purchaser" has the meaning assigned to that term in the Preamble.

"Purchaser Releasing Party" has the meaning assigned to that term in Section 8.12(b).

"Related Claims" has the meaning assigned to that term in Section 8.8

6

"Restructuring Transaction" means a stand-alone Chapter 11 plan of reorganization under which Seller's secured lenders receive substantially all equity and debt in the reorganized Seller.

"Sale Order" has the meaning assigned to that term in Section 6.3(a).

"Seller" has the meaning assigned to that term in the Preamble.

"Seller Releasing Party" has the meaning assigned to that term in Section 8.12(a).

"Successful Bidder" has the meaning assigned to that term in the Bidding Procedures Order.

"Tax" or "Taxes" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, custom duties, capital stock, franchise, profits, withholding, social security (or similar excises), unemployment, disability, ad valorem, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not, by any governmental authority responsible for imposition of any such tax (domestic or foreign).

"Third Party" means a Person other than Purchaser or an Affiliate of Purchaser.

"Third-Party Sale" means a sale of all or substantially all of the Acquired Assets to a Third Party; provided, however, that a Restructuring Transaction shall not constitute a Third-Party Sale.

"Transactions" has the meaning assigned to that term in Section 2.4.

"Transfer Taxes" has the meaning assigned to that term in Section 6.9(a).

"Transferred Employees" has the meaning assigned to that term in Section 6.8(a).

"Trustee" means any trustee or fiduciary appointed to act on behalf of the Debtor or as successor to the Debtor.

"US Accounts Receivable" is set forth in Schedule 1.1 hereto.

**ARTICLE II**
**SALE AND PURCHASE OF ASSETS**

2.1   **Sale and Purchase of Assets**.  On the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Purchaser shall purchase from Seller, and Seller shall sell, assign, transfer, convey and deliver to Purchaser, all of Seller's right, title and interest in the Acquired Assets, to the maximum extent transferable under applicable Law, the Bankruptcy Code or otherwise, as those assets, properties, rights, interests, benefits and privileges exist on the

Closing Date, free and clear of any Lien. Without limiting the foregoing, the Acquired Assets shall include all of Seller's right, title and interest in:

(a) all Contracts, agreements, licenses, leases, warranties, commitments, and purchase and sale orders with respect to personal property, Intellectual Property, real property or otherwise (collectively, "Executory Contracts and Unexpired Leases"), solely to the extent that such Executory Contracts and Unexpired Leases are listed on Schedule 2.1 as designated by Purchaser to be assumed and assigned on the Closing Date in accordance with the Bidding Procedures Order and provided further that Purchaser shall have provided adequate assurance of future performance under Section 365(b)(1)(C) of the Bankruptcy Code with respect to any designated contract (collectively, "Assigned Contracts"), together with the right to receive income in respect of such Assigned Contracts on and after the Closing Date, and any causes of action which may be brought by Seller relating to past or current breaches of the Assigned Contracts; and

(b) the IP Maintenance Capital.

The sale, assignment, transfer, conveyance, and delivery of Acquired Assets and Assumed Liabilities from the US Seller to Purchaser shall be effected pursuant to sections 105, 363 and 365 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules for the Bankruptcy Court, and the sale, assignment, transfer, conveyance, and delivery of Acquired Assets and Assumed Liabilities from the Foreign Seller shall be effected out-of-court and not pursuant to the Bankruptcy Code or any foreign bankruptcy, insolvency, or other proceeding.

2.2 **Excluded Assets**. Notwithstanding the provisions of Section 2.1 or any other provision of this Agreement, the Acquired Assets do not include, and Seller shall not transfer to Purchaser any of the following assets, properties, rights, interests, benefits and privileges (collectively, the "Excluded Assets"):

(a) all cash, bank deposits, securities and cash equivalents, including for this purpose, all cash and cash equivalents if credited to Seller's bank accounts prior to or on the Closing Date, other than the IP Maintenance Capital;

(b) all Executory Contracts and Unexpired Leases and the rights associated therewith other than Assigned Contracts;

(c) all corporate minute books and records of internal corporate proceedings, stock transfer ledgers, blank stock certificates, corporate seals, tax and accounting records, work papers and other records relating to the organization or maintenance of the legal existence of Seller;

(d) any books, records or other information related solely and exclusively to the Excluded Assets;

(e) all records that Seller is required by law to retain;

8

(f)      all refunds or credits or deposits of Taxes receivable by Sellers with respect to any Pre-Closing Tax Period, including without limitation any refunds, credits or deposits of Taxes arising as a result of Sellers' operation of the Business or ownership, operation, utilization or maintenance of the Acquired Assets prior to the Closing Date;

(g)      all Estate Causes of Action;

(h)      D&O Claims;

(i)      all equity interests, or interests convertible into or exchangeable for equity interests, held by Seller (including with respect to subsidiaries);

(j)      all claims, cause(s) of action and benefits related to any and all employment agreement(s), Employee Benefit Plans and any arrangement(s) in respect of the foregoing of whatever nature, and including cash and equity;

(k)      all assets related to any Employee Benefit Plan; and

(l)      all assets, properties and rights identified on Schedule 2.2(l).

Notwithstanding anything to the contrary in Section 2.2 above, Purchaser shall have the right, on reasonable request, to obtain copies of any books, records, documents and information reasonably necessary for the acquisition, operation and disposition of the Acquired Assets.

2.3      **Assumed Liabilities**.  Upon the terms and subject to the conditions set forth herein, at the Closing, Purchaser shall assume and shall timely perform and discharge in accordance with their respective terms, solely:  (a) all Liabilities and Cure Amounts with respect to the Assigned Contracts, (b) all Liabilities (including for any Tax) that arise on and after the Closing Date with respect to Purchaser's ownership or operation of the Acquired Assets on and after the Closing Date, and (c) the Pro Rata Expenses (collectively "Assumed Liabilities").

2.4      **Excluded Liabilities**.  Purchaser, by its execution and delivery of this Agreement and the Ancillary Agreements and its performance of the transactions contemplated by this Agreement and the Ancillary Agreements (the "Transactions"), shall not assume or otherwise be responsible for any Liability other than the Assumed Liabilities.  For clarification, the following Liabilities shall be excluded, without limitation:  (a) all post-petition accounts payable and accrued post-petition expenses of Seller for work done in the ordinary course of Business (excluding any expenses incurred with respect to the administration of the Bankruptcy Case) which would qualify as administrative priority expenses under Section 503(b) of the Bankruptcy Code, (b) all Liabilities with respect to Employee Benefit Plans, (c) all Liabilities for wages, compensation, bonuses, deferred compensation, overtime, profit sharing benefits workers' compensation, 401(k) matching, sick pay, vacation, personal days and severance benefits for Transferred Employees for periods of service occurring prior to the Closing Date, (d) all Liabilities with respect to Assumed Trade Payables, and (e) all third party litigation expenses, settlement costs and attorneys' fees of the Seller that arise from or related to its shareholders, employees, suppliers, customers, other bidder(s) and/or government authorities.

9

2.5     **Purchase Price**.  The aggregate consideration for the sale and transfer of the Acquired Assets (the "Purchase Price") shall be (a) the Closing Cash, and (b) the assumption by Purchaser of the Assumed Liabilities including payment of the Cure Amounts and the Pro Rata Expenses (which such Pro Rata Expenses may be owed to a Seller).  At the Closing, Purchaser shall deliver the Closing Cash MINUS the (i) Deposit, the (ii) Closing AR Adjustment Amount, if any, the (iii) Closing Inventory Adjustment Amount, if any, and (iv) the Sellers' Transfer Tax Reimbursement, if any, to Seller by wire transfer of immediately available funds to accounts designated in writing by Seller.

2.6     **Deposit**.  On the date of this Agreement, Purchaser (or its affiliate) shall deposit with an escrow agent satisfactory to Purchaser (the "Escrow Agent") $3,750,000 Dollars, representing ten percent (10%) of the Closing Cash (the "Deposit"), by wire transfer which shall be held in escrow pursuant to the Bidding Procedures Order.  Purchaser shall enter into an escrow agreement in such form and substance as shall be reasonably agreed upon by Seller, Purchaser and the Escrow Agent.  The Deposit shall be credited against the Closing Cash at the Closing if Purchaser is the Successful Bidder for the Acquired Assets.  If this Agreement is terminated, then the Deposit shall be forfeited to Seller as liquidated damages, or returned to Purchaser, as applicable, as provided in Article VII.

2.7     **Non-Transferrable Acquired Assets**.  Notwithstanding any other provision of this Agreement to the contrary, this Agreement shall not constitute an agreement to assign any Acquired Asset or any right thereunder if an attempted assignment, without the consent of a Third Party, would constitute a breach or in any way adversely affect the rights of Purchaser or Seller thereunder.  If such consent is not obtained or such assignment is not attainable pursuant to an Order of the Bankruptcy Court, then such Acquired Assets shall not be transferred hereunder, and the Closing shall proceed with respect to the remaining Acquired Assets.

**ARTICLE III**
**CLOSING; CONDITIONS TO CLOSING**

3.1     **Closing**.  Subject to the terms and conditions of this Agreement, the closing (the "Closing") of the sale and purchase of the Acquired Assets and the assumption of the Assumed Liabilities is expected to take place on or before 49 days after the filing of the Bankruptcy Petition (unless otherwise agreed by Seller and Purchaser), at a location to be specified by Seller.  The time and date upon which the Closing occurs is referred to herein as the "Closing Date."  All transactions at the Closing shall be deemed to take place simultaneously and none shall be deemed to have taken place until all shall have taken place.

3.2     **Court Approval Required**.  Purchaser and Seller acknowledge and agree that the Bankruptcy Court's entry of the Sale Order shall be required in order to consummate the Transactions, and that the requirement that the Sale Order be entered is a condition that cannot be waived by any party.

3.3     **Conditions to Obligations of Purchaser**.  The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to the satisfaction, at or

10

before the Closing, of each of the following conditions, any of which conditions may, except for the condition set forth in Section 3.2, be waived by Purchaser in its sole discretion:

(a)    <u>Representations and Warranties</u>.   The representations and warranties of Seller set forth in Article IV of this Agreement shall be true and correct in all material respects on the date hereof and on and as of the Closing Date, as though made on and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date).

(b)    <u>Agreements and Covenants</u>.   Seller shall have performed and complied with each material agreement, covenant and obligation required to be performed or complied with by Seller under this Agreement at or before the Closing in all material respects.

(c)    <u>Deliveries at Closing</u>.   Purchaser shall have received from Seller duly executed assignments, patent assignments, general trademark assignments, lease assignments, bills of sale or certificates of title, dated as of the Closing Date, in form and substance reasonably satisfactory to Purchaser, whereby Seller will transfer to Purchaser free and clear of any Lien (except Permitted Liens and Assumed Liabilities) all of Seller's right, title and interest in and to the Acquired Assets.

(d)    <u>Consents</u>.  All material consents, authorizations, or approvals required to be obtained from any Governmental Authority set forth on <u>Schedule 4.3</u> shall have been obtained and be in full force.

3.4    **Conditions to Obligations of Seller**.  The obligation of Seller to consummate the Transactions is subject to the satisfaction, at or before the Closing, of each of the following conditions, any of which conditions may, except for the condition set forth in Section 3.2, be waived by Seller in its sole discretion:

(a)    <u>Representations and Warranties</u>.   The representations and warranties of Purchaser set forth in Article V of this Agreement shall be true and correct in all material respects on the date hereof and on and as of the Closing Date, as though made on and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date).

(b)    <u>Agreements and Covenants</u>.   Purchaser shall have performed and complied with each agreement, covenant and obligation required to be performed or complied with by it under this Agreement at or before the Closing in all material respects.

(c)    <u>Receipt of Purchase Price</u>.  Seller shall have received (i) the Purchase Price (less the Deposit) from Purchaser and (ii) the Deposit from the Escrow Agent.

(d)    <u>Orders</u>.  The Bankruptcy Court shall have entered the Sale Order.

(e)    <u>Deliveries at Closing</u>. Seller shall have received from Purchaser all fully executed instruments or documents as Seller may reasonably request to effect the transfer of the

Acquired Assets and assumption of the Assumed Liabilities and to otherwise consummate the Transactions.

(f)    Consents.  All consents, authorizations, or approvals required to be obtained from any Governmental Authority set forth on Schedule 4.3 shall have been obtained and be in full force.

3.5    **Delivery of Possession of Assets**.  Right to possession of all Acquired Assets shall transfer to Purchaser at the Closing.  Purchaser shall bear all risk of loss with respect to the Acquired Assets from and after the Closing.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Sellers, and each of them, represent and warrant to Purchaser, jointly and severally, that the statements contained in this Article IV are true and correct as of the date hereof and will be true and correct in all material respects on the Closing Date.

4.1    **Organization, Good Standing and Power**.  Such Seller and each of its subsidiaries is validly existing and in good standing under the laws of the jurisdiction of its formation.  Subject to the applicable provisions of the Bankruptcy Code, such Seller and each of its subsidiaries has the power to own its properties and carry on its business as now being conducted and is qualified or licensed to do business in each jurisdiction in which the nature of its business or the ownership or leasing of its properties makes such qualification or licensing necessary.

4.2    **Authority Relative to this Agreement; Execution and Binding Effect**.  Such Seller and each of its subsidiaries has full power and authority to execute and deliver this Agreement and the Ancillary Agreements and, subject to receipt of any necessary Bankruptcy Court approval in accordance with the Bankruptcy Code, to consummate the Transactions.  The execution and delivery of this Agreement and the Ancillary Agreements and the consummation of the Transactions have been duly and validly approved and adopted by the board of directors or managers, as applicable, of such Seller (and in the case of Canadian Seller only, a resolution of the shareholder) and each of its subsidiaries, and, except for Bankruptcy Court approval or as set forth on Schedule 4.3, no other proceedings or approvals on the part of such Seller or its subsidiaries are necessary to approve this Agreement and the Ancillary Agreements and to consummate the Transactions.  This Agreement has been duly and validly executed and delivered by each such Seller. Assuming due authorization, execution and delivery by Purchaser, this Agreement constitutes, and each of the Ancillary Agreements at the Closing will constitute, the valid and binding obligation of Sellers, enforceable against each Seller in accordance with their terms, except as such enforcement may be limited by (a) the effect of bankruptcy, insolvency, reorganization, receivership, conservatorship, arrangement, moratorium or other laws affecting or relating to the rights of creditors generally, or (b) the rules governing the availability of specific performance, injunctive relief or other equitable remedies and general principles of equity, regardless of whether considered in a proceeding in equity or at law.

12

4.3 **Governmental and Other Consents**. Except for the receipt of any necessary Bankruptcy Court approval in accordance with the Bankruptcy Code and as set forth on Schedule 4.3, no consent, notice, authorization or approval of, or exemption by, or filing with or notifications to any Governmental Authority or any other Person, whether pursuant to contract or otherwise, is required in connection with the execution and delivery by such Seller of this Agreement and the Ancillary Agreements and the consummation of the Transactions.

4.4 **Assets**. Such Seller has good and valid title to the Acquired Assets being sold by them. Upon the terms and subject to the conditions contained in this Agreement and subject to requisite Bankruptcy Court approvals and the terms of the Sale Order, at the Closing, each Seller shall transfer and deliver to Purchaser good and valid title to the Acquired Assets held by them, free and clear of all Liens. Other than as set forth on Schedule 4.4, none of US Seller's subsidiaries (with the exception of the Canadian Seller) own any of the Acquired Assets or any Intellectual Property.

4.5 **IP Litigation**. Other than as set forth on Schedule 4.5, there are no pending and threatened claims in respect of or challenges (including oppositions) to the validity of any Intellectual Property of the Seller.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller that the statements contained in this Article V are true and correct as of the date hereof and will be true and correct in all material respects on the Closing Date.

5.1 **Organization, Good Standing and Power**. Purchaser is validly existing and in good standing under the laws of the state of its formation. Purchaser has the power to own its properties and carry on its business as now being conducted and is qualified or licensed to do business in each jurisdiction in which the nature of its business or the ownership or leasing of its properties makes such qualification or licensing necessary.

5.2 **Authority Relative to this Agreement; Execution and Binding Effect**. Purchaser has full power and authority to execute and deliver this Agreement and the Ancillary Agreements and to consummate the Transactions. The execution and delivery of this Agreement and the Ancillary Agreements and the consummation of the Transactions have been duly and validly approved and adopted by all necessary action of Purchaser and no other proceedings or approvals (shareholder, member or otherwise) on the part of Purchaser are necessary to approve this Agreement and the Ancillary Agreements and to consummate the Transactions. This Agreement has been duly and validly executed and delivered by Purchaser. Assuming due authorization, execution and delivery by Seller, this Agreement constitutes, and each of the Ancillary Agreements at the Closing will constitute, the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with their terms.

13

5.3 **Governmental and Other Consents**. No consent, notice, authorization or approval of, or exemption by, or filing with or notifications to any Governmental Authority or any other Person, whether pursuant to contract or otherwise, is required in connection with the execution and delivery by Purchaser of this Agreement and the Ancillary Agreements and the consummation of the Transactions.

5.4 **Financial Ability**. Purchaser and its affiliates have cash available that is sufficient to enable it to pay the Deposit and the Purchase Price and all other amounts otherwise payable to consummate the Transactions pursuant to and in accordance with this Agreement.

**ARTICLE VI**
**COVENANTS**

6.1 **Operation of Business**. Subject to the requirements of, and the obligations imposed upon, US Seller as debtor-in-possession and pursuant to the Bankruptcy Code and except as otherwise contemplated by this Agreement or the Bidding Procedures Order or as required to comply with the debtor-in-possession financing obtained by Seller and except for any usual and customary disruptions that may occur as a result of the filing of the Bankruptcy Case, Sellers shall operate the Business in the ordinary course; and consistent with such operation, shall use commercially reasonable efforts to maintain the goodwill associated with the Business, prevent the impairment and degradation of the value of the Acquired Assets, and maintain relationships with the employees, customers and suppliers of the Business.

6.2 **Bidding Procedures and Orders**. The purchase and sale of the Acquired Assets from the US Seller will be subject to competitive bidding in accordance with the terms of the order approving the sale and bidding procedures entered by the Bankruptcy Court (the "Bidding Procedures Order").

6.3 **Sale Order**.

(a) Prior to the Closing, and subject to the provisions of this Agreement, Purchaser and US Seller shall use their commercially reasonable efforts to obtain entry of an order or orders by the Bankruptcy Court pursuant to Sections 363 and 365 of the Bankruptcy Code (the "Sale Order"), which shall approve of this Agreement and the transactions described herein, and which shall be (1) in form and substance reasonably acceptable to the Purchaser and (2) contain the following provisions in terms reasonably acceptable to the parties (it being understood that certain of such provisions may be contained in either the findings of fact or conclusions of law to be made by the Bankruptcy Court as part of the Sale Order):

(i) that US Seller may sell, transfer and assign the Acquired Assets and assume and assign the Assigned Contracts to Purchaser pursuant to this Agreement and Bankruptcy Code, as applicable;

(ii) the transfers of the Acquired Assets by US Seller to Purchaser (A) vest or will vest Purchaser with all right, title and interest of US Seller in and to the Acquired Assets, free and clear of all Liens (except for the Assumed Liabilities and Permitted Liens), and

14

(B) constitute transfers for reasonably equivalent value and fair consideration under the Bankruptcy Code;

(iii)  the transactions contemplated by this Agreement are undertaken by Purchaser and US Seller at arm's length, without collusion and in good faith within the meaning of Section 363(m) of the Bankruptcy Code, and the Purchaser and US Seller is entitled to the protections of Section 363(m) of the Bankruptcy Code;

(iv)  a determination that selling the Acquired Assets free and clear of all Liens is in the best interest of the US Seller's Estate.

(b)  If the Sale Order or any other orders of the Bankruptcy Court relating to this Agreement shall be appealed by any person (or a petition for certiorari or motion for rehearing or reargument shall be filed with respect thereto), each party hereto agrees to use commercially reasonable efforts to obtain an expedited resolution of such appeal; provided, however, that nothing herein shall preclude the parties hereto from consummating the Transactions if the Sale Order shall have been entered and has not been stayed in which event Purchaser shall be able to assert the benefits of Section 363(m) of the Bankruptcy Code.

6.4  **Overbid Procedures; Adequate Assurance**.

(a)  US Seller and Purchaser acknowledge that this Agreement and the sale of the Acquired Assets by the US Seller is subject to Bankruptcy Court approval. Purchaser and US Seller acknowledge that the US Seller must take reasonable steps to demonstrate that it has sought to obtain the highest or otherwise best price for the Acquired Assets, including giving notice thereof to the creditors of the US Seller and other interested parties, providing information about the Business to prospective bidders, entertaining higher and better offers from such prospective bidders, and, in the event that additional qualified prospective bidders desire to bid for the Acquired Assets, conducting an auction (the "Auction") for purposes of determining the highest or otherwise best price for the Acquired Assets. US Seller further acknowledges that "best price" may not necessarily equal the "highest price."

(b)  The bidding procedures to be employed with respect to this Agreement and any Auction shall be those set forth in the Bidding Procedures Order.  Purchaser agrees to be bound by and accept the terms and conditions of the Bidding Procedures Order as approved by the Bankruptcy Court.  Purchaser agrees and acknowledges that the US Seller may continue soliciting inquiries, proposals or offers for the Acquired Assets in connection with any alternative transaction pursuant to the terms of the Bidding Procedures Order, and agrees and acknowledges that the bidding procedures contained in the Bidding Procedures Order may be supplemented by other customary procedures not inconsistent with the matters otherwise set forth therein and the terms of this Agreement, subject to advance notice to Purchaser to the extent practicable.  For clarification, the US Seller and Purchaser agree that, subject to the Bidding Procedures Order, Purchaser shall have the right to participate in the Auction, and to change the terms and conditions of its bid in any and all overbid procedures.

(c)      If an Auction is conducted, and Purchaser is not the prevailing bidder at the Auction but is the next highest bidder at the Auction, Purchaser shall serve as a back-up bidder (the "Back-Up Bidder") and keep Purchaser's bid to consummate the Transactions on the terms and conditions set forth in this Agreement (as the same may be improved upon in the Auction) open and irrevocable, notwithstanding any right of Purchaser to otherwise terminate this Agreement pursuant to Article VII. Following the Sale Hearing, if the prevailing bidder in the Auction fails to consummate the Third-Party Sale as a result of a breach or failure to perform on the part of such prevailing bidder and the purchase agreement with such prevailing bidder is terminated, the Back-Up Bidder (as the next highest bidder at the Auction) will be deemed to have the new prevailing bid, and the US Seller will be authorized, without further order of the Bankruptcy Court, to consummate the Transactions on the terms and conditions set forth in this Agreement (as the same may be improved upon in the Auction) with the Back-Up Bidder so long as Purchaser has not previously terminated this Agreement in accordance with its terms.

(d)      Purchaser shall provide adequate assurance as required under the Bankruptcy Code of the future performance by Purchaser of each Assigned Contract. Purchaser agrees that it will, and will cause its Affiliates to, promptly take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Assigned Contracts, including furnishing affidavits, non-confidential financial information and other reasonable documentation or information for filing with the Bankruptcy Court and making Purchaser's Representatives available to testify as to such adequate assurance before the Bankruptcy Court.

(e)      The US Seller and Purchaser agree, and relevant Bankruptcy Court filings shall reflect the fact that the provisions of this Agreement, including this Section and Section 6.5, are reasonable, were a material inducement to Purchaser to enter into this Agreement and are designed to achieve the highest and best price for the Acquired Assets.

(f)      Nothing in this Agreement, including this Section, shall require any director or officer of either Seller to violate their fiduciary duties to such Seller. No action or inaction on the part of any director or officer of either Seller that such director or officer reasonably believes is required by their fiduciary duties to such Seller shall be limited or precluded by this Agreement; provided, however, that no such action or inaction shall prevent Purchaser from exercising any termination rights it may have hereunder as a result of such action or inaction.

6.5      **Expense Reimbursement; Break-Up Fee**. Sellers acknowledge that Purchaser made a substantial investment of management time and incurred substantial out-of-pocket expenses in connection with negotiation and execution of the Agreement, its due diligence of the Business, the Acquired Assets and the Assumed Liabilities in Purchaser's effort to consummate the Transactions contemplated hereby, and Purchaser's efforts have substantially benefitted Sellers and will benefit the Sellers and the bankruptcy estate of the US Seller through the submission of the offer that is reflected in this Agreement and that will serve as the minimum bid as to which other potential bidders may rely, thus increasing the likelihood that the price at which the Acquired Assets are sold would be maximized. In consideration thereof, and as compensation for the value provided to Sellers sand the Estate of the US Seller, the Sellers agree to the following:

16

(a)    If (i) an Auction takes place and Purchaser is not identified as the Successful Bidder, (ii) at the time the Successful Bidder is identified, Purchaser is not in material breach of this Agreement (or, in the event that Purchaser is identified as the Back-Up Bidder, Purchaser is not in material breach of this Agreement at the time the Expense Reimbursement would otherwise be payable), (iii) Purchaser has not terminated this Agreement (other than in accordance with Section 7.1(d)), and (iv) any Alternative Transaction is consummated (collectively, the "Bid Protections Trigger"), then, Purchaser will be entitled to receive from Sellers, subject to an Order of the Bankruptcy Court authorizing such payment by the US Seller, an amount in cash equal to the reasonable and documented out-of-pocket expenses incurred by Purchaser in connection with its negotiation and consummation of the Transactions, which amount shall not exceed six hundred thousand dollars ($600,000) in the aggregate (the "Expense Reimbursement").

(b)    In addition to any payments that may be due pursuant to Subsection (a) above, in the event of the occurrence of the Bid Protections Trigger, the Sellers shall also, and subject to an Order of the Bankruptcy Court authorizing such payment by the US Seller, pay to Purchaser a fee in an amount equal to three and a half percent (3.5%) of the Purchase Price (the "Break-Up Fee").

(c)    If the Expense Reimbursement and the Break-Up Fee become payable pursuant to subsections (a) and (b) above, such Expense Reimbursement and payment of the Break-Up Fee shall be made by wire transfer of immediately available funds to an account designated by Purchaser, and such payment shall be made on the closing date of any Alternative Transaction. The claim of Purchaser in respect of the Expense Reimbursement and the Break-Up Fee (which shall not require further Bankruptcy Court approval) shall survive termination of this Agreement and shall constitute a super-priority administrative expense claim, senior to all other administrative expense claims of Seller, as administrative expenses under Sections 503 and 507(b) of the Bankruptcy Code in the Bankruptcy Case (except those administrative expenses granted to the lenders under the Debtors' post-petition debtor in possession financing facility and the adequate protection claims of the lenders under the pre-petition credit facilities).

(d)    For the avoidance of doubt, (i) no Expense Reimbursement or Break-Up Fee shall be payable, and Purchaser shall not seek payment of any Expense Reimbursement or Break-Up Fee, prior to consummation of a Third-Party Sale and (iii) in no event shall Seller be obligated to pay the Expense Reimbursement or Break-Up Fee on more than one occasion.

(e)    the US Seller shall file and seek entry of orders by the Bankruptcy Court approving the Expense Reimbursement and the Break-Up Fee as set forth herein.

(f)    Each of the Parties acknowledges and agrees that: (i) the agreements contained in this Section are an integral part of the Transactions and this Agreement; (ii) the Break-Up Fee is not a penalty, but rather liquidated damages in a reasonable amount that will reasonably compensate Purchaser in the circumstances in which such Break-Up Fee is payable for the efforts and resources expended and opportunities foregone by Purchaser while negotiating and pursuing the Transactions and this Agreement and in reasonable reliance on this Agreement and on the reasonable expectation of the consummation of the transactions contemplated hereby, which amount would otherwise be impossible to calculate with precision; and (iii) the Break-Up Fee and

17

Expense Reimbursement shall be Purchaser's sole recourse in connection with this Agreement and the Ancillary Agreements in the event this Agreement is terminated prior to the Closing.

6.6 **Access to Facilities, Personnel, and Information**.

(a) Prior to the Closing, Sellers shall permit representatives of Purchaser to have reasonable access during regular business hours and upon reasonable notice, and in a manner so as not to interfere with the normal business operations of Sellers, to all premises, property, books, records (including Tax records), Contracts, and documents of or pertaining to the Business (provided that any representatives of Purchaser shall be subject to the confidentiality obligations under the Confidentiality Agreement or otherwise agree in writing to be bound by the terms of such Confidentiality Agreement applicable to Purchaser thereunder) and Acquired Assets. If requested, Purchaser shall be permitted to conduct a physical inspection of Inventory within 10 business days of the Closing.

(b) From the Closing Date through and including the seventh (7th) anniversary of the Closing Date, Purchaser shall grant Sellers, the Trustee, and their respective representatives reasonable access to the books and records transferred to Purchaser pursuant to this Agreement during regular business hours and upon reasonable notice for the purpose of allowing Sellers or its successors, the Trustee or their respective representatives to perform the duties necessary for the liquidation of the Debtor's Estate, in the case of the US Seller, or of the remaining assets of the Foreign Seller, in the case of the Foreign Seller. To the extent reasonably required by Sellers, Purchaser shall make one or more of the Transferred Employees available to each Seller to assist in such Seller's wind-down of its Estate or the Foreign Seller, as applicable, provided that such access does not unreasonably interfere with the conduct of the Business by Purchaser.

6.7 **Further Assurances**. Purchaser and Sellers shall use commercially reasonable efforts to take such further actions and execute such other documents as may be reasonably required to fulfill the conditions to Closing and, after Closing, to fully effect the transactions contemplated by this Agreement and the Ancillary Agreements and further secure to each party the rights intended to be conferred hereby and thereby; provided, however, that nothing in this Section shall prohibit Sellers or their Affiliates from ceasing operations or winding up its affairs following the Closing. Purchaser shall use commercially reasonable efforts to cooperate with Sellers and provide US Seller with information reasonably sufficient to enable Seller to demonstrate adequate assurance of future performance (as required by Section 365 of the Bankruptcy Code) as to Purchaser.

6.8 **Employee Matters**.

(a) Purchaser reserves the right to make offers of employment with or to provide consulting services to Purchaser or an affiliate of Purchaser to certain employees of Seller, effective only as of the Closing, and subject to Purchaser's right to interview such Seller employees and require successful completion of customary employee background checks and drug testing prior to offering employment to any such employee (such employees who are hired or retained by Purchaser or an affiliate, the "Transferred Employees"). Within two (2) Business Days following entry of the Sale Order finding Purchaser as the prevailing bidder at the Auction, Purchaser shall

18

begin interviews with Seller employees for the purpose of determining whether to offer such Seller employees post-Closing employment or the opportunity to provide post-Closing consulting services. Seller shall terminate the employment of all Transferred Employees as of immediately prior to the Closing and reasonably assist Purchaser in effecting the change of employment or service of the Transferred Employees as of the Closing in an orderly fashion.  Purchaser's obligations under this Agreement are not conditioned upon any particular employees agreeing to employment with or to provide consulting services to Purchaser.  All claims and liabilities, of whatever nature, arising from any relationship between the Seller (and its affiliates), on the one hand, and any of the Transferred Employees, on the other hand, including any unpaid compensation and several obligations, shall be the sole responsibility of the Seller.  The parties acknowledge that Seller may choose to send WARN Act notices to some or all of the employees of the Seller and its subsidiaries, at any time deemed appropriate by the Seller.

(b)     Nothing in this Agreement shall constitute any commitment, Contract or understanding (expressed or implied) of any obligation on the part of Purchaser to a post-Closing employment relationship of any fixed term or duration or upon any terms or conditions other than those that Purchaser may establish pursuant to individual offers of employment. Nothing in this Agreement shall be deemed to prevent or restrict in any way the right of Purchaser to terminate, reassign, promote or demote any of the Transferred Employees after the Closing or to change adversely or favorably the title, powers, duties, responsibilities, functions, locations, salaries, future benefits, other compensation or terms or conditions of Purchaser's employment of such employees.

(c)     If any of the arrangements described in this Section are determined by any Governmental Body to be prohibited by applicable Law, Purchaser and Seller shall modify such arrangements to as closely as possible reflect their expressed intent and retain the allocation of economic benefits and burdens to the parties contemplated herein in a manner that is not prohibited by applicable Law.

(d)     Notwithstanding anything in this Section to the contrary, nothing contained herein, whether express or implied, shall be treated as an amendment or other modification of any Employee Benefit Plan or employee benefit plan maintained by Purchaser or any of its affiliates, or shall limit the right of Purchaser to amend, terminate or otherwise modify any Employee Benefit Plan or employee benefit plan maintained by Purchaser or any of its affiliates following the Closing Date. If (i) a party other than the parties hereto makes a claim or takes other action to enforce any provision in this Agreement as an amendment to any Employee Benefit Plan or employee benefit plan maintained by Purchaser or any of its affiliates, and (ii) such provision is deemed to be an amendment to such Employee Benefit Plan or employee benefit plan maintained by Purchaser or any of its affiliates even though not explicitly designated as such in this Agreement, then, solely with respect to the Employee Benefit Plan or employee benefit plan maintained by Purchaser or any of its affiliates at issue, such provision shall lapse retroactively and shall have no amendatory effect with respect thereto.

6.9    **Tax Matters.**

(a)    All sales, use, transfer, stamp, conveyance, value added or other similar Taxes, duties, excises or governmental charges imposed by any Tax authority, domestic or foreign, and all recording or filing fees, notarial fees and other similar costs of Closing ("Transfer Taxes") will be borne by Purchaser and the Purchase Price is exclusive of Transfer Taxes. All unpaid Pre-Closing Taxes shall be borne by the Seller. If any Seller is required by Law to collect any Transfer Taxes from Purchaser, Purchaser shall pay such Transfer Taxes to the applicable Seller concurrent with the payment of any amount payable pursuant to this Agreement. The applicable Seller shall remit all Transfer Taxes to the relevant Governmental Body in accordance with applicable Law. If Purchaser is required to collect any Transfer Taxes from either Seller or such Seller has not paid any Transfer Taxes it is obligated to pay, such Seller shall pay such Transfer Taxes to the Purchaser concurrent with the payment of any amount payable pursuant to this Agreement, or Purchaser may deduct such Transfer Taxes from the Closing Cash (the "Sellers' Transfer Tax Reimbursement").

(b)    Purchaser and Seller shall negotiate in good faith, on or prior to the Closing Date, an allocation of the Purchase Price among the Acquired Assets. Purchaser and Seller shall each file all Tax returns (and IRS Form 8594, if applicable) on the basis of such agreed upon allocation, as it may be amended, and no party shall thereafter take a Tax return position inconsistent with such allocation unless such inconsistent position shall arise out of or through an audit or other inquiry or examination by the Internal Revenue Service or other Governmental Body responsible for Taxes.

(c)    For purposes of this Agreement, with respect to Taxes attributable to any taxable year or other taxable period beginning before and ending on or after the Closing Date, (i) Taxes imposed on a periodic basis in respect of the Acquired Assets (such as property taxes) shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period pro rata on the basis of the number of days in such period, and (ii) Taxes (other than periodic Taxes) in respect of the Acquired Assets for the Pre-Closing Tax Period shall be computed as if such taxable period ended as of the end of day before the Closing Date.

(d)    If applicable, Canadian Seller and Purchaser shall, as soon as possible after the Closing Date, jointly execute an election in prescribed form under section 22 of the Income Tax Act (Canada) with respect to the sale of the Accounts Receivable and shall designate therein the portion of the Purchase Price allocated to the Accounts Receivable from Canadian Seller in the allocation provided for in Section 6.9(b) as consideration paid by Purchaser for such Accounts Receivable. Canadian Seller and Purchaser shall each file such election (and any documentation necessary or desirable to give effect thereto) forthwith after the execution thereof (and, in any event, with their respective Tax returns for the taxation year in which the Closing Date occurs).

6.10    **Limited Use of Intellectual Property.** Following the Closing, for a period of 90 days, Seller shall have a limited license to use trademarks and trade names included as part of the Acquired Assets solely and reasonably in connection with transitioning the Business to Purchaser and winding down the remaining business of Seller, subject to the prior review and approval of Purchaser, which approval shall not be unreasonably withheld, conditioned, or delayed.

20

6.11   **Funding Process.**  On the Business Day following the approval of the Bankruptcy Petition by the Bankruptcy Court, Purchaser shall, or shall cause its parent company or other affiliate, as applicable, to initiate the process to transfer funds sufficient to pay the Purchase Price at Closing, including obtaining requisite corporate, banking, and regulatory approvals, and shall fund such account as soon as feasible.

**ARTICLE VII**
**TERMINATION; EFFECT OF TERMINATION**

7.1   **Termination**.  This Agreement may, by notice given prior to or at the Closing, be terminated:

(a)   by mutual consent of Purchaser and Seller;

(b)   by Seller or Purchaser in the event the Closing has not occurred on or before 49 days after filing of the Bankruptcy Petition;

(c)   by Seller if, incident to the Bidding Procedures Order, Seller accepts and closes on a competing bid for the purchase of all or part of the Acquired Assets;

(d)   by Purchaser if (i) the US Seller consummates a sale of all or part of the Acquired Assets to a Third Party other than Purchaser, or (ii) the US Seller's Bankruptcy Case is dismissed or converted to one under Chapter 7 of the Bankruptcy Code; or

(e)   by the non-breaching party upon a material breach of any provision of this Agreement; provided that such breach has not been waived by the non-breaching party and has continued after notice to the breaching party by the non-breaching party, without cure for a period of three (3) Business Days (provided that the non-breaching party shall have an immediate right to terminate if the breaching party has willfully breached any provision of this Agreement, which such breach is not cured).

7.2   **Effect of Termination**.  If this Agreement is terminated pursuant to Section 7.1, (a) Purchaser shall have no Liability or obligations under this Agreement except for the forfeiture of the Deposit on the terms and conditions set forth in Section 7.3, and (b) Seller shall have no Liabilities under this Agreement; provided, however, that the obligations in Sections 8.2 shall survive.

7.3   **Deposit**.  If Seller terminates this Agreement pursuant to Section 7.1(b) (solely due to Purchaser's inability or refusal to pay the Closing Cash) or 7.1(e), then the Deposit shall be forfeited to Seller.  If this Agreement is terminated pursuant to Section 7.1(a), (b), (c) or for any other reason (other than a duly noticed and uncured breach of Purchaser's obligations under this Agreement), the Deposit shall be returned to Purchaser.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1    **"As Is", "Where Is", and "With all Faults" Transaction.**  PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED IN ARTICLE IV, SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE ACQUIRED ASSETS INCLUDING (A) FINANCIAL PROJECTIONS, REVENUES, PROFITS OR INCOME TO BE DERIVED OR COSTS OR EXPENSES TO BE INCURRED IN CONNECTION WITH THE ACQUIRED ASSETS, (B) THE PHYSICAL CONDITION OF ANY ACQUIRED ASSETS, (C) THE ENVIRONMENTAL CONDITION OR OTHER MATTERS RELATING TO THE PHYSICAL CONDITION OF THE REAL PROPERTY, (D) THE ZONING OF THE REAL PROPERTY, (E) THE VALUE OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF, (F) THE TRANSFERABILITY OF THE ACQUIRED ASSETS, (G) THE TERMS, AMOUNT, VALIDITY OR ENFORCEABILITY OF ANY ASSUMED LIABILITIES, (H) TITLE TO ANY OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF, (I) THE MERCHANTABILITY OR FITNESS OF THE ACQUIRED ASSETS OR ANY PORTION THEREOF FOR ANY PARTICULAR PURPOSE, OR (J) ANY OTHER MATTER OR THING RELATING TO THE ACQUIRED ASSETS OR ANY PORTION THEREOF.  PURCHASER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF ALL ACQUIRED ASSETS AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE ACQUIRED ASSETS AS PURCHASER DEEMS NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE ACQUIRED ASSETS, EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN SECTION IV, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS.  ACCORDINGLY, PURCHASER WILL ACCEPT THE ACQUIRED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

8.2    **Transaction Expenses**.  Except as expressly provided for herein, each party shall pay all fees, costs and expenses incurred by it with respect to this Agreement, whether or not the transactions contemplated by this Agreement are consummated.

8.3    **Certain Interpretive Matters and Definitions**.  Unless the context requires, (a) references to the plural include the singular and references to the singular include the plural, (b) references to any gender includes the other gender, (c) the words "include," "includes" and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation", (d) the terms "hereof", "herein", "hereunder", "hereto" and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement, (e) all references to financial or accounting terms shall be defined in accordance with GAAP, and (f) all references to Sections, Articles, Exhibits or Schedules are to Sections, Articles, Exhibits or Schedules of or to this Agreement.

8.4    **Survival; Termination of Representations and Warranties**.  The representations and warranties of the parties set forth in this Agreement shall terminate and be of no further force

or effect after the Closing.  The Parties hereto agree that the covenants contained in this Agreement to be performed at or after the Closing shall survive the Closing hereunder for such period expressly set forth in this Agreement, or if not expressly set forth for a period no greater than three (3) months after the Closing Date.

8.5    **Amendment**.  This Agreement may be amended or modified in whole or in part at any time by an agreement in writing among the parties.

8.6    **Waiver**.  The waiver by a party of a breach of any covenant, agreement, condition or undertaking contained herein shall be made only by a written waiver in each case.  No waiver of any breach of any covenant, agreement, condition or undertaking contained herein shall operate as a waiver of any prior or subsequent breach of the same covenant, agreement, condition or undertaking or as a waiver of any breach of any other covenant, agreement, condition or undertaking.

8.7    **Notices**.  All notices, requests and other communications hereunder will be deemed to have been duly given if delivered personally, by an established overnight delivery company, or by certified or registered mail, postage prepaid, return receipt requested, as follows:

If to Seller:

BowFlex Inc.
17750 S.E. 6th Way
Vancouver, Washington 98683
Attention: Alan Chan

with a copy to:

Holland & Hart
555 17th Street, Suite 3200
Denver, CO 80202
Attn:  Amy Bowler

and a further copy to:

Sidley Austin LLP
1 S Dearborn St,
Chicago, IL 60603
Attn:  Matthew A. Clemente

If to Purchaser:

Johnson Health Tech Retail, Inc.
c/o Johnson Health Tech Co. Ltd.
No. 999, Sec. 2, Dongda Rd., Zhongyi Vil., Daya Dist.
Taichung City, Taiwan ROC 428314

Attention:  Jason Lo, CEO

with a copy to:

LCS & Partners
5F No. 8 Sinyi Road Section 5
Taipei City, Taiwan ROC 110
Attn.:  Victor I. Chang, Esq.
Email:  victorchang@lcs.com.tw

and a further copy to:

Buchalter
8400 Von Karman Avenue, Suite 800
Irvine, California 92612-0514
Attn.:  Lee C. Cheng, Esq.
Email:  lcheng@buchalter.com

or to such other address as may hereafter be designated by a party by the giving of notice in accordance with this Section 8.7.  All notices, requests or other communications shall be deemed given when actually delivered if delivered personally or by an established overnight delivery company or upon actual receipt if delivered by certified or registered mail, postage prepaid, return receipt requested.

8.8     **Jurisdiction**.  The parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or the implementation or breach hereof ("Related Claims"). Without limiting any party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to interpret and/or enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any Related Document, any breach or default hereunder or thereunder, or the Transactions, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 8.7. The parties hereto hereby irrevocably and unconditionally waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any Related Claims brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

8.9     **Governing Law**.  To the extent not governed by the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

8.10    **Waiver of Jury Trial**. EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT,

24

THE RELATED DOCUMENTS OR ANY RELATED CLAIMS IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY EXPRESSLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING OR RELATED CLAIM BROUGHT BY OR AGAINST IT, DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE RELATED DOCUMENTS OR ANY RELATED CLAIMS.

8.11   **Damages**.   NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NO PARTY SHALL BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, EXEMPLARY, SPECIAL, INDIRECT OR PUNITIVE DAMAGES (INCLUDING LOST PROFITS, LOSS OF PRODUCTION OR OTHER DAMAGES ATTRIBUTABLE TO BUSINESS INTERRUPTION) ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT.

8.12   **General Release**.

(a)     Effective as of the Closing, the Seller, on behalf of itself, its Affiliates and each of their respective successors and assigns (each of the foregoing, a "Seller Releasing Party"), hereby fully, irrevocably and unconditionally releases and forever discharges Purchaser and its respective past and present directors, managers, officers, employees, agents, stockholders, members, representatives and Affiliates from and against, and covenants that it will not (directly or indirectly) assert any claim or proceeding of any kind before any Governmental Authority based upon, any and all claims, Actions, causes of action, suits, rights, debts, agreements, Losses and demands whatsoever and all consequences thereof, known or unknown, actual or potential, suspected or unsuspected, fixed or contingent, both in law and in equity, whether existing as of the Closing or arising thereafter, that a Seller Releasing Party has or may have, now or in the future, arising out of, relating to, or resulting from any act or omission, error, negligence, breach of contract, tort, violation of law, matter or cause whatsoever from the beginning of time to the Closing Date.  The foregoing sentence shall not be deemed to be a release or waiver by a Seller Releasing Party of any action it may have under this Agreement or any of the Ancillary Agreements.

(b)     Effective as of the Closing, Purchaser, on behalf of itself, its Affiliates and each of their respective successors and assigns (each of the foregoing, a "Purchaser Releasing Party"), hereby fully, irrevocably and unconditionally releases and forever discharges the Seller, the Seller's Affiliates and its and their respective past and present directors, managers, officers, agents, stockholders, members, representatives and Affiliates from and against, and covenants that it will not (directly or indirectly) assert any claim or proceeding of any kind before any Governmental Authority based upon, all claims, Actions, causes of action, suits, rights, debts, agreements, Losses and demands whatsoever and all consequences thereof, known or unknown, actual or potential, suspected or unsuspected, fixed or contingent, both in law and in equity, whether existing as of the Closing or arising thereafter, that a Purchaser Releasing Party has or may have, now or in the future, arising out of, relating to, or resulting from any act or omission, error, negligence, breach of contract, tort, violation of law, matter or cause whatsoever from the beginning of time to the Closing Date. The foregoing sentence shall not be deemed to be a release

25

or waiver by a Purchaser Releasing Party of any action it may have under this Agreement or any of the Ancillary Agreements.

8.13    **Time is of the Essence**.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

8.14    **Severability**.  If any provision of this Agreement shall be held invalid, illegal or unenforceable, in whole or in part, the validity, legality, and enforceability of the remaining part of such provision, and the validity, legality and enforceability of all other provisions hereof or thereof, shall not be affected thereby.

8.15    **Titles and Headings**.  Titles and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

8.16    **Assignment; Successors and Assigns**.  This Agreement and the rights, duties and obligations hereunder may not be assigned by any party without the prior written consent of the other party, and any attempted assignment without consent shall be void.  Subject to this Section 8.14, this Agreement and the provisions hereof shall be binding upon each of the parties, their successors and permitted assigns.

8.17    **No Third-Party Rights**.  The parties do not intend to confer any benefit hereunder on any Person other than the parties hereto.

8.18    **Confidentiality Agreement.**  The parties acknowledge that the Confidentiality Agreement currently in effect between Purchaser and Seller (the "Confidentiality Agreement") shall remain in full force and effect during the term specified therein.

8.19    **Entire Agreement**.  This Agreement, the Ancillary Agreements and the Confidentiality Agreement constitute the entire agreement between the parties regarding the subject matter hereof and no extrinsic evidence whatsoever may be introduced in any proceeding involving this Agreement, the Ancillary Agreements or the Confidentiality Agreement.

8.20    **Execution of this Agreement**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by electronic transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes.  Signatures of the parties transmitted by electronic transmission shall be deemed to be their original signatures for all purposes.

*(Signatures appear on following page)*

26

IN WITNESS WHEREOF, the parties have caused their duly authorized officers to execute this Agreement as of the day and year first written above.

**SELLERS:**

**BowFlex Inc.**

By: *Jim Barr*
6B31B74D756E44C...

Name: Jim Barr
Title: Chief Executive Officer

**Nautilus Fitness Canada, Inc.**

By: *Aina Konold*
DE2F429FB2CB4CF...

Name: Aina Konold
Title: Chief Financial Officer

[SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT]

**PURCHASER:**
**Johnson Health Tech Retail, Inc.**

By: _____

Name:___Jason Lo_____

Title:___CEO_____

[SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT]

## SCHEDULE A

## ACQUIRED ASSETS

(a)     The Accounts Receivable (including any credit card receivables) of the Sellers, including without limitation as described on Schedule 1.1;

(b)     The Assigned Contracts as listed hereafter, including without limitation:

(i)     All Contracts relating to and for which there are Accounts Receivable, subject to confirmation of the magnitude of the Cure Amounts for each; and

(ii)     other contracts to discuss and to be listed on Schedule 2.1, subject to confirmation of magnitude of Cure Amounts for each and ongoing costs under such contracts.

(c)     All Inventory in the United States and Canada, including without limitation all prepaid inventory (shipped and unshipped) that is related to the Business in the United States and Canada (the "Acquired Inventory") and as described on Schedule 1.1;

(d)     Membership interests and/or equity in Pacific Direct, LLC ("PD") held by US Seller under the Limited Liability Company Agreement, dated as of September 20, 2001 and as amended, by and between PD, US Seller and Schwinn Acquisition, LLC ("Schwinn"), and Trademark License Agreement, dated as of September 20, 2011 and as amended, by and between PD, US Seller, and Schwinn;

(e)     All causes of action of Seller relating to the Acquired Assets or arising under express or implied warranties from suppliers or other third parties with respect to the Acquired Assets, except for Estate Causes of Action;

(f)     All books and records of Seller relating to the Acquired Assets, including production records, accounting records, Tax records, financial records, property records, mailing lists, and customer and vendor lists, provided that Seller may obtain, at its own expense, copies of any or all such books and records before their transfer to Purchaser;

(g)     All Intellectual Property related to the Business and owned directly or indirectly by the Sellers, including, without limitation, the Intellectual Property listed on Schedule 4.5 attached hereto.

(h)     All Governmental Authorizations related to the Acquired Assets and all pending applications therefor or renewals thereof, in each case to the extent transferable to Purchaser and excluding Governmental Authorizations or pending applications therefor required for the continued operation of an Excluded Asset; and

(i)     All Customer Information related to the Acquired Assets.

Purchaser reserves the right to supplement and add to this list of Acquired Assets should it determine that Sellers or their subsidiaries or corporate affiliates own additional assets related to

the Acquired Assets until two Business Days prior to the Auction date; provided, however, that Purchaser may add Assigned Contracts so long as the U.S. Seller can provide adequate notice to contract counterparties as required in the Bidding Procedures Order.

**SCHEDULES**

**TO**

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**BOWFLEX INC.**

**NAUTILUS FITNESS CANADA, INC.**

**AND**

**JOHNSON HEALTH TECH RETAIL, INC.**

Dated as of March 4, 2024

This document constitutes the Schedules (the "*Schedules*") referred to in that certain Asset Purchase Agreement (the "*Agreement*"), made and entered into as of March 4, 2024, by and among BowFlex Inc., a Washington corporation (the "*US Seller*"), Nautilus Fitness Canada, Inc., a Canadian corporation (the "*Canadian Seller*" or a "*Foreign Seller*" and, together with the US Seller, each a "*Seller*" and collectively, "*Sellers*"), and Johnson Health Tech Retail, Inc., a Wisconsin corporation ("*Purchaser*").. Any capitalized terms used herein but not otherwise defined shall be defined as set forth in the Agreement. Headings used herein are for convenience of reference only and shall not affect in any way the construction or interpretation of any of the provisions of the Agreement or of the disclosures in these Schedules. These Schedules are delivered pursuant to, and subject to the terms and conditions of the Agreement. These Schedules qualify (a) the correspondingly numbered representation, warranty, or covenant if specified therein and (b) such other representations, warranties, or covenants where its relevance as an exception to (or disclosure for purposes of) such other representation, warranty, or covenant is reasonably apparent on its face.

Except as expressly provided in the Agreement, no reference to or disclosure of any item or other matter in these Schedules shall be construed as an admission or indication that such item or other matter is material (nor shall it establish a standard of materiality for any purpose whatsoever) or that such item or other matter is required to be referred to or disclosed in these Schedules. Matters reflected in these Schedules are not necessarily limited to matters required by the Agreement to be reflected herein. Such additional matters are set forth for informational purposes and do not necessarily include other matters of a similar nature. References in these Schedules to any document are not intended to summarize or describe such document, but rather are for convenience only and reference should be made to such document for a full explanation thereof.

<u>Schedule 1.1</u>

**Closing Adjusted Accounts Receivable Forecast; Closing Inventory Forecast**

The Adjusted Accounts Receivable Forecast at Closing is $15,526,000.

The Inventory Forecast at Closing is $35,435,000.

**Bowflex, Inc.**
**Schedule 1.1**

| $ in 000s | Target Close Forecast |
|---|---|
| Week Ending –> | 04/19/24 |
| **Accounts Receivable** | |
| US Wholesale AR | 16,791 |
| US Credit Card AR | 516 |
| **US Accounts Receivable** | **17,307** |
| Canada Wholesale AR | 1,260 |
| Canada Credit Card AR | 93 |
| **Canada Accounts Receivable** | **1,353** |
| **Total Accounts Receivable** | **18,660** |
| Accounts Receivable over 150 days past due | (3,134) |
| **Total Closing Adjusted Accounts Receivable Forecast** | **15,526** |
| | |
| **Book Value of Inventory** | |
| US Finished Goods Inventory | 30,814 |
| US In-Transit Finished Goods Inventory | - |
| US On-the-Water Inventory | - |
| US Parts Inventory | 3,590 |
| Canada Finished Goods Inventory | 954 |
| Canada In-Transit Finished Goods Inventory | 21 |
| Canada On-the-Water Inventory | 50 |
| Canada Parts Inventory | 6 |
| **Total Closing Inventory Forecast** | **35,435** |

**Schedule 1.2**

**Permitted Liens**

Liens in connection with the following agreements:

| Contract Name | Date | Seller Party | Counter Party |
|---|---|---|---|
| Credit Agreement | November 30, 2022 | Seller | Crystal Financial LLC D/B/A SLR Credit Solution |
| Amendment to Credit Agreement | April 25, 2023 | Seller | Crystal Financial LLC D/B/A SLR Credit Solution |
| Amendment No. 2 to Credit Agreement | July 28, 2023 | Seller | Crystal Financial LLC D/B/A SLR Credit Solution |

### Schedule 2.1

### Assigned Contracts

| No. | Counterparty | Agreement | Date |
|---|---|---|---|
| 1 | DISH Technologies L.L.C. and Sling TV L.L.C. | Mutual NDA (7/21/23) | 7/21/2023 |
| 2 | Feed Media Inc. | Standard Terms and Conditions, Feed.fm Digital Music Statement of Work | 9/14/2023 |
| 3 | J6 Sports, LLC dba Play It Again Sports | Retail Terms and Conditions of Sale (6/1/23) | 6/1/2023 |
| 4 | True Fitness Technology, Inc. | Rower Technology License Agreement | 10/14/2020 |
| 5 | Chengdu Vanton Technology Co. Ltd. | Binding Memorandum of Understanding (5/18/21), Master Services Agreement (6/19/19), Console Components Pricing Agreement (6/1/20), Price Adjustment Agreement (10/1/23) | 6/19/2019 |
| 6 | Lee K Ali | Product Services Agreement | 5/28/2022 |
| 7 | Amazon EU SARL | Vendor Terms and Conditions (Sweden) (1/1/22), Vendor Terms and Conditions (Italy) (11/1/19), Vendor Terms and Conditions (UK) (11/18/19) | 11/1/2019 |
| 8 | Don Flores | Confidentiality and Nondisclosure Agreement | 6/21/2023 |
| 9 | Orbit Health & Fitness Solutions Pty Limited | International Terms and Conditions of Sale | 4/17/2023 |
| 10 | Core Health & Fitness (dba Stairmaster) | Technology Transfer and License Agreement | 12/5/2009 |
| 11 | Core Health & Fitness LLC (Schwinn) | License Agreement, Amendment 1 (1/1/15), Amendment 2 (1/1/16), Amendment 3 (1/1/17), Amendment 4 (1/1/18) | 10/19/2011 |
| 12 | Graham Jones | Video Production Services Agreement, SOW 1 (9/19/22), SOW 2 (11/30/22), Am.. 1 to SOW 2 (3/14/23), Am. 2 to SOW2 (9/14/23), SOW 3 (3/14/23), SOW 4 (9/14/23) | 9/19/2022 |
| 13 | Harman International Industries, Inc. (Redbend) | Mutual NDA | 7/24/2018 |
| 14 | Ian Snaith | Video Production Agreement, and SOW 1 | 6/7/2022 |

| No. | Counterparty | Agreement | Date |
|---|---|---|---|
| 15 | John Lindala | Consulting Agreement,<br>Master Services Agreement SOW (6/7/22),<br>Mutual NDA (10/9/20) | 10/11/2021 |
| 16 | Joshua Blount | Service Agreement and SOW,<br>SOW (1/25/24) | 3/14/2022 |
| 17 | Land America Health & Fitness Co. LTD. (China) | Trademark License Agreement, and as amended | 1/29/2015 |
| 18 | Nicole Farhan | Confidentiality and Nondisclosure Agreement (11/2/23) | |
| 19 | Landmark Technology LLC | Patent License Agreement | 5/4/2018 |
| 20 | Nagravision Sarl | Patent License Agreement | 7/1/2023 |
| 21 | Paofit Group Limited | Technology License Agreement | 12/10/2018 |
| 22 | Peloton Interactive, Inc. | Patent Settlement ad License Agreement | 6/28/2018 |
| 23 | Philipp Herrmann | Letter Agreement for Font Licensing | 7/12/2022 |
| 24 | Red Bend Ltd. | License Agreement | 12/11/2019 |
| 25 | Samsung Electronics America, Inc. | Mutual NDA | 11/16/2023 |
| 26 | Schemper Entertainment, Inc. | Spokesperson Agreement,<br>Amendment No. 1 (10/3/23) | 6/1/2023 |
| 27 | Sky Bandit Pictures, LLC | Production Services Agreement | 7/1/2022 |
| 28 | DISH DBS Corporation, Sling TV L.L.C., and<br>DISH Technologies L.L.C.   (DISH) | ABR Patent License and Release Agreement, | 2/20/2024 |
| 29 | Spiraflex, Inc. | License Agreement,<br>First Amendment (4/10/23) | 7/1/2011 |
| 30 | The Ambient Collection | Content License Agreement, Schedule 1, Schedule 2 (1/14/22), Schedule 3 (11/7/22) | 2/11/2021 |
| 31 | VCR100 INC. | Production Services Agreement | 6/5/2023 |
| 32 | Vintage Gold Holdings Limited | Patent License Agreement | 2/28/2023 |
| 33 | Wistron Corporation (US) | Mutual NDA | 10/14/2021 |
| 34 | Zinc Productions LLC (Janet K Henderson) | Production Services Agreement, SOW (6/24/22),<br>Services Agreement (3/17/22) | 6/30/2023 |
| 35 | Pacific Direct, LLC | Limited Liability Company Agreement, and as amended | 9/20/2001 |
| 36 | Pacific Direct, LLC | Trademark License Agreements, and as amended | 9/20/2001 |

**Schedule 2.2(l)**

**Other Excluded Assets**

None.

## Schedule 4.3

### Consents

*List remains subject to further review and revision.*

| Contract Name | Date | Counter Party |
|---|---|---|
| Exchange Retail Purchase Order Terms and Condition | June 13, 2023 | Army & Air Force Exchange Service |
| Master Services Agreement | July 24, 2020 | Boomi, LP |
| Renewal Order Form | July 24, 2023 | Boomi, LP |
| Purchase Order | October 26, 2023 | CDW Direct, LLC |
| Purchase Order | December 15, 2023 | CDW Direct, LLC |
| Purchase Order | October 26, 2022 | CDW Direct, LLC |
| Terms and Conditions – Quotes, Purchases, and Agreements | February 1, 2023 | CompuNet |
| Amendment to Agreement | May 3, 2023 | Corporate Renaissance Group |
| Emperform SAAS Contract Agreement Employee Performance Management Software | July 15, 2022 | Corporate Renaissance Group |
| Agreement | February 1, 2016 | Flo Partners, Inc. |
| Google Workspace Business Standard | December 7, 2022 | Google Workspace |
| Terms and Conditions | February 14, 2023 | Jamf Software, LLC |
| MCX Terms and Conditions | September 1, 2023 | Marine Corps Exchange |
| AVC Patent Portfolio License | June 2, 2021 | MPEG LA |
| Trading Partner Agreement | November 8, 2023 | NEXCOM |
| Oracle Cloud Services Agreement | May 19, 2019 | Oracle America, Inc. |
| Oracle Renewal | June 1, 2023 | Oracle America, Inc. |
| Order Form | June 1, 2018 | Patsnap (UK) Ltd. |
| Order Form | June 1, 2023 | Patsnap (UK) Ltd. |
| Order Form & Terms of Service | January 13, 2023 | Rewind Software, Inc. |
| Master Services Agreement | August 17, 2021 | Protiviti Inc. |
| Statement of Work | November 8, 2023 | Protiviti Inc. |

| Contract Name | Date | Counter Party |
|---|---|---|
| Service Agreement | October 12, 2023 | Transworld Systems, Inc. (Rocket Receivables) |
| Rower Technology License Agreement | October 14, 2020 | True Fitness Technology, Inc. |
| General Terms and Conditions for Resellers | September 26, 2023 | Samsung SDS America, Inc. |
| Master Service Agreement | February 1, 2016 | Strongpoint (FLO Partners, Inc.) |
| Services Agreement No. 003 & Master Client Agreement | November 17, 2022 | Syndigo, LLC |
| First Amendment to Services Agreement No. 003 | July 1, 2023 | Syndigo, LLC |
| Order Form & TestRail Cloud Terms of Service | December 1, 2023 | TestRail (Gurock Software GmbH) |
| Master Software and Services Agreement & Order Form | September 15, 2023 | UiPath, Inc. |

## Schedule 4.4

### Assets

Ownership of the Intellectual Property related to the motion tracking portion of the JRNY software and a trademark are owned by Nautilus Switzerland AG, a corporation (*Aktiengesellschaft*) organized under the Laws of Switzerland ("**Nautilus Switzerland**"). Purchaser will need to acquire/transfer the Intellectual Property rights for the motion tracking portions of JRNY from Nautilus Switzerland.

**Schedule 4.5**

**Intellectual Property**

<u>IP Litigation</u>

1. BowFlex Inc. vs. Mojco, Inc.  (Litigation) – Bowflex has asserted patent and trademark infringement by Mojco.

2. Tzumi Electronics, LLC (Threatened Litigation) – BowFlex Inc. is asserting patent and trademark rights against Tzumi.

3.   JaxJox (Threatened Litigation) -  JaxJox has asserted BowFlex's 840 kettlebell infringes its patents, and BowFlex has asserted JaxJox's dumbbells infringe its patents.

Schedule 4.5

**Registered and Pending Patents (Bowflex Inc.)**

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Dual Direction Pulley | 10635072 | Aug 6, 2003 | | Issued | 7223213 | May 29, 2007 | | |
| United States | Adjustable Dumbbell System | 10456977 | Jun 5, 2003 | | Issued | 7261678 | Aug 28, 2007 | | |
| Europe | Exercise Device with Treadles | 047157219 | Feb 27, 2004 | | Issued | 1606025 | Apr 6, 2016 | | |
| Germany | Exercise Device with Treadles | 047157219 | Feb 27, 2004 | | Issued | 1606025 | Apr 6, 2016 | | |
| United Kingdom | Exercise Device with Treadles | 047157219 | Feb 27, 2004 | | Issued | 1606025 | Apr 6, 2016 | | |
| Taiwan | Exercise Device with Treadles | 93105244 | Feb 27, 2004 | | Issued | I304347 | Dec 21, 2008 | | |
| Taiwan | Exercise Device with Treadles | 96112226 | Feb 27, 2004 | | Issued | I304348 | Dec 21, 2008 | | |
| Taiwan | Exercise Device with Treadles | 96115304 | Feb 27, 2004 | | Issued | I304352 | Dec 21, 2008 | | |
| United States | Exercise Device with Treadles | 12494580 | Jun 30, 2009 | | Issued | 8113994B2 | Feb 14, 2012 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Exercise Device with Treadles | 14570085 | Dec 15, 2014 | | Issued | 9440107 | Sep 13, 2016 | | |
| Europe | Dual Deck Exercise Device | 141737569 | Feb 27, 2004 | | Issued | 2815792 | Oct 18, 2017 | | |
| Germany | Dual Deck Exercise Device | 141737569 | Feb 27, 2004 | Jun 24, 2014 | Issued | 2815792 | Oct 18, 2017 | | |
| United Kingdom | Dual Deck Exercise Device | 141737569 | Feb 27, 2004 | Jun 24, 2014 | Issued | 2815792 | Oct 18, 2017 | | |
| Netherlands | Dual Deck Exercise Device | 141737569 | Feb 27, 2004 | Jun 24, 2014 | Issued | 2815792 | Oct 18, 2017 | | |
| Taiwan | Dual Deck Exercise Device | 095106783 | Feb 27, 2004 | Mar 1, 2006 | Issued | I355952 | Jan 11, 2012 | | |
| United States | Dual Deck Exercise Device | 13619902 | Sep 14, 2012 | | Issued | 8696524 | Apr 15, 2014 | | |
| United States | Dual Deck Exercise Device | 14282605 | May 20, 2014 | | Issued | 9352187 | May 31, 2016 | | |
| China | Variable Stride Exercise Device (Both - Primarily Front Drive) | 2004800237064 | Jun 23, 2004 | | Issued | ZL200480023706.4 | Nov 10, 2010 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | Releasable Connection Mechanism for Variable Stride Exercise Devices | 2005800280406 | Jun 22, 2005 | | Issued | ZL200580028040.6 | Dec 21, 2011 | | |
| Europe | Variable Stride Exercise Device (Both - Primarily Front Drive) | 047563341 | Jun 23, 2004 | | Issued | 1648570 | Apr 22, 2015 | | |
| Europe | Releasable Connection Mechanism for Variable Stride Exercise Devices | 057625261 | Jun 22, 2005 | | Issued | 1768754 | Jul 22, 2015 | | |
| Germany | Variable Stride Exercise Device (Both - Primarily Front Drive) | 047563341 | Jun 23, 2004 | | Issued | 60 2004 047 060.0 | Apr 22, 2015 | | |
| Germany | Releasable Connection Mechanism for Variable Stride Exercise Devices | 057625261 | Jun 22, 2005 | | Issued | 602005047041.7 | Jul 22, 2015 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United Kingdom | Variable Stride Exercise Device (Both - Primarily Front Drive) | 047563341 | Jun 23, 2004 | | Issued | 1648570 | Apr 22, 2015 | | |
| United Kingdom | Releasable Connection Mechanism for Variable Stride Exercise Devices | 057625261 | Jun 22, 2005 | | Issued | 1768754 | Jul 22, 2015 | | |
| Taiwan | Variable Stride Exercise Device (Both - Primarily Front Drive) | 093118038 | Jun 23, 2004 | | Issued | I391161 | Apr 1, 2013 | | |
| Taiwan | Variable Stride Exercise Device (Both - Primarily Front Drive) | 094108779 | Mar 22, 2005 | | Issued | I363642 | May 11, 2012 | | |
| United States | Variable Stride Exercise Device (Both - Primarily Front Drive) | 10875049 | Jun 22, 2004 | | Issued | 7462134 | Dec 9, 2008 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Variable Stride Exercise Device | 11086607 | Mar 21, 2005 | | Issued | 7785235 | Aug 31, 2010 | | |
| United States | Releasable Connection Mechanism for Variable Stride Exercise Devices | 11158887 | Jun 21, 2005 | | Issued | 7736278 | Jun 15, 2010 | | |
| United States | Variable Stride Exercise Device (Both - Primarily Front Drive) | 12194616 | Aug 20, 2008 | | Issued | 7758473 | Jul 20, 2010 | | |
| United States | Releasable Connection Mechanism for Variable Stride Exercise Devices | 12815616 | Jun 15, 2010 | | Issued | 8062187 | Nov 22, 2011 | | |
| United States | Weight Training Machine for Exercising the Upper Chest Muscles | 10011688 | Nov 13, 2001 | | Issued | 7029427 | Apr 18, 2006 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Leg Curl/Leg Extension Exercise Machine | 10186433 | Jul 1, 2002 | | Issued | 7150702 | Dec 19, 2006 | | |
| United States | Inclined Leg Press Weight Training Machine | 10383100 | Mar 6, 2003 | | Issued | 7004891 | Feb 28, 2006 | | |
| United States | Exercise Device with Treadles (Commercial) | 11065891 | Feb 25, 2005 | | Issued | 7645214 | Jan 12, 2010 | | |
| China | Dual Treadmill Exercise Device Having a Single Rear Roller | 2005800133197 | Feb 28, 2005 | | Issued | ZL200580013319.7 | Dec 12, 2012 | | |
| Taiwan | Dual Treadmill Exercise Device Having a Single Rear Roller | 094106054 | Mar 1, 2005 | | Issued | I381864 | Jan 11, 2013 | | |
| United States | Dual Treadmill Exercise Device Having a Single Rear Roller | 11065770 | Feb 25, 2005 | | Issued | 7704191 | Apr 27, 2010 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Combination of Treadmill and Stair Climbing Machine | 047802103 | Aug 4, 2004 | | Issued | 1660197 | Jun 15, 2016 | | |
| Germany | Combination of Treadmill and Stair Climbing Machine | 047802103 | Aug 4, 2004 | | Issued | 602004049449.6 | Jun 15, 2016 | | |
| United Kingdom | Combination of Treadmill and Stair Climbing Machine | 047802103 | Aug 4, 2004 | | Issued | 1660197 | Jun 15, 2016 | | |
| United States | Upper Body Exercise and Flywheel Enhanced Dual Deck Treadmills | 14282492 | May 20, 2014 | | Issued | 9308415 | Apr 12, 2016 | | |
| United States | Exercise Device | 11249119 | Oct 11, 2005 | | Issued | 7815552 | Oct 19, 2010 | | |
| United States | Bar Supports for a Weight Bench | 11204579 | Aug 15, 2005 | | Issued | 7338416 | Mar 4, 2008 | | |
| United States | Treadmill Deck Locking Mechanism | 11205470 | Aug 16, 2005 | | Issued | 7736280 | Jun 15, 2010 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Treadmill Deck Locking Mechanism | 12816196 | Jun 15, 2010 | | Issued | 7914421 | Mar 29, 2011 | | |
| China | Selectable Weight Exercise Machine | 2005800408787 | Oct 4, 2005 | | Issued | ZL200580040878.7 | Jan 26, 2011 | | |
| Europe | Weight Exercise Machine Having Rotatable Weight Selection Index | 058037490 | Oct 4, 2005 | | Issued | 1804928 | Apr 24, 2013 | | |
| Switzerland | Weight Exercise Machine Having Rotatable Weight Selection Index | 058037490 | Oct 4, 2005 | | Issued | 1804928 | Apr 24, 2013 | | |
| Germany | Weight Exercise Machine Having Rotatable Weight Selection Index | 058037490 | Oct 4, 2005 | | Issued | 1804928 | Apr 24, 2013 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Spain | Weight Exercise Machine Having Rotatable Weight Selection Index | 058037490 | Oct 4, 2005 | | Issued | 1804928 | Apr 24, 2013 | | |
| France | Weight Exercise Machine Having Rotatable Weight Selection Index | 058037490 | Oct 4, 2005 | | Issued | 1804928 | Apr 24, 2013 | | |
| United Kingdom | Weight Exercise Machine Having Rotatable Weight Selection Index | 058037490 | Oct 4, 2005 | | Issued | 1804928 | Apr 24, 2013 | | |
| Netherlands | Weight Exercise Machine Having Rotatable Weight Selection Index | 058037490 | Oct 4, 2005 | | Issued | 1804928 | Apr 24, 2013 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Sweden | Weight Exercise Machine Having Rotatable Weight Selection Index | 058037490 | Oct 4, 2005 | | Issued | 1804928 | Apr 24, 2013 | | |
| United States | Exercise Machine Having Rotatable Weight Selection Index | 11242320 | Oct 3, 2005 | | Issued | 7740568 | Jun 22, 2010 | | |
| United States | Exercise Machine having Rotatable Weight Selection Index | 12142904 | Jun 20, 2008 | | Issued | 7662074 | Feb 16, 2010 | | |
| Europe | Exercise Device | 0004033570001 | Sep 14, 2005 | | Issued | | | 000403357-0001 | Sep 14, 2005 |
| Europe | Exercise Device | 0004033570002 | Sep 14, 2005 | | Issued | | | 000403357-0002 | Sep 14, 2005 |
| Europe | Exercise Device | 0004033570003 | Sep 14, 2005 | | Issued | | | 000403357-0003 | Sep 14, 2005 |
| Europe | Exercise Device | 0004033570004 | Sep 14, 2005 | | Issued | | | 000403357-0004 | Sep 14, 2005 |
| Europe | Exercise Device | 0004033570005 | Sep 14, 2005 | | Issued | | | 000403357-0005 | Sep 14, 2005 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United Kingdom | Exercise Device | 0004033570001 | Sep 14, 2005 | | Issued | | | 9000403357-0001 | Sep 14, 2005 |
| United Kingdom | Exercise Device | 0004033570002 | Sep 14, 2005 | | Issued | | | 9000403357-0002 | Sep 14, 2005 |
| United Kingdom | Exercise Device | 0004033570003 | Sep 14, 2005 | | Issued | | | 9000403357-0003 | Sep 14, 2005 |
| United Kingdom | Exercise Device | 0004033570004 | Sep 14, 2005 | | Issued | | | 9000403357-0004 | Sep 14, 2005 |
| United Kingdom | Exercise Device | 0004033570005 | Sep 14, 2005 | | Issued | | | 9000403357-0005 | Sep 14, 2005 |
| Taiwant | Mechanism For Adjusting Seat Height For Exercise Equipment | 096107164 | Mar 2, 2007 | | Issued | I325787 | Jun 11, 2010 | | |
| United States | Mechanism and Method For Adjusting Seat Height For Exercise Equipment | 11378979 | Mar 17, 2006 | | Issued | 7708251 | May 4, 2010 | | |
| United States | Dual Axis Abdominal Exercise Apparatus | 11867538 | Oct 4, 2007 | | Issued | 7658701 | Feb 9, 2010 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Exercise Machine Having Rotatable Weight Selection Index | 11867643 | Oct 4, 2007 | | Issued | 7736283 | Jun 15, 2010 | | |
| United States | Exercise Machine Having Rotatable Weight Selection Index | 12815873 | Jun 15, 2010 | | Issued | 8016729 | Sep 13, 2011 | | |
| United States | Exercise Apparatus | 29297817 | Nov 19, 2007 | | Issued | D585098 | Jan 20, 2009 | | |
| United States | Weight-Training Apparatus Having Selectable Weight Plates | 11044410 | Jan 27, 2005 | | Issued | 7121988 | Oct 17, 2006 | | |
| United Kingdom | Dumbbell (1090) | 4005973 | Jan 23, 2008 | | Issued | | | 4005973 | Jan 23, 2008 |
| United Kingdom | Dumbbell Components | 4005974 | Jan 23, 2008 | | Issued | | | 4005974 | May 2, 2008 |
| United States | Dumbbell | 29302708 | Jan 23, 2008 | | Issued | D610636 | Feb 23, 2010 | | |
| United Kingdom | Dumbbell Base (1090) | 4005970 | Jan 23, 2008 | | Issued | | | 4005970 | Jan 23, 2008 |
| United States | Dumbbell Base | 29302698 | Jan 23, 2008 | | Issued | D584086 | Jan 6, 2009 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United Kingdom | Dumbbell Weight Plate (Typical Plate)(1090) | 4005971 | Jan 23, 2008 | | Issued | | | 4005971 | Jan 23, 2008 |
| United States | Dumbbell Weight Plate | 29302699 | Jan 23, 2008 | | Issued | D603469 | Nov 3, 2009 | | |
| United Kingdom | Dumbbell Weight Plate (Inner Plate)(1090) | 4005972 | Jan 23, 2008 | | Issued | | | 4005972 | Jan 23, 2008 |
| United States | Dumbbell Weight Plate | 29302700 | Jan 23, 2008 | | Issued | D603915 | Nov 10, 2009 | | |
| United States | Dumbbell Weight Plate | 29329039 | Dec 8, 2008 | | Issued | D617854 | Jun 15, 2010 | | |
| Europe | Dumbbell Support Structure | 0011450310001 | Jun 8, 2009 | | Issued | | | 001145031-0001 | Jun 8, 2009 |
| United Kingdom | Dumbbell Support Structure | 0011450310001 | Jun 8, 2009 | | Issued | | | 9001145031-0001 | Jun 8, 2009 |
| United States | Dumbbell Support Structure | 29329044 | Dec 8, 2008 | | Issued | D603002 | Oct 27, 2009 | | |
| United States | Exercise Apparatus | 29331636 | Jan 29, 2009 | | Issued | D624975 | Oct 5, 2010 | | |
| United States | Exercise Bike | 12723492 | Mar 12, 2010 | | Issued | 8585561 | Nov 19, 2013 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Exercise Apparatus | 29344534 | Sep 30, 2009 | | Issued | D630686 | Jan 11, 2011 | | |
| United States | Exercise Bike (aluminum) | 29341238 | Jul 31, 2009 | | Issued | D616050 | May 18, 2010 | | |
| United States | Exercise Bike (Steel) | 29345698 | Oct 21, 2009 | | Issued | D624612 | Sep 28, 2010 | | |
| United States | Calf Extension Weight Training Machine | 11069655 | Mar 1, 2005 | | Issued | 7553263 | Jun 30, 2009 | | |
| United States | Selectable Weight Stack | 13077173 | Mar 31, 2011 | | Issued | 8876674 | Nov 4, 2014 | | |
| United States | Engagement Interface for an Exercise Machine | 13076876 | Mar 31, 2011 | | Issued | 8568279 | Oct 29, 2013 | | |
| United States | Lockout Mechanism for a Weight Stack Exercise Machine | 13077012 | Mar 31, 2011 | | Issued | 8845498 | Sep 30, 2014 | | |
| Australia | Exercise Bike (Airdyne 2 Exercise Bike Full Bike) | 125402013 | Jun 3, 2013 | | Issued | | | 349768 | Jul 12, 2013 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Exercise Bike (Airdyne 2 Exercise Bike Full Bike) | 0022489630001 | Jun 4, 2013 | | Issued | | | 002248963-0001 | Jun 4, 2013 |
| United Kingdom | Exercise Bike (Airdyne 2 Exercise Bike Full Bike) | 0022489630001 | Jun 4, 2013 | | Issued | | | 9002248963-0001 | Jun 4, 2013 |
| United States | Exercise Bike (Airdyne 2 Exercise Bike Full Bike) | 29438869 | Dec 4, 2012 | Sep 30, 2013 | Issued | D699795 | Feb 18, 2014 | | |
| Australis | Airdyne 2 Exercise Bike (Fan Housing) | 125412013 | Jun 3, 2013 | | Issued | | | 349769 | Jul 12, 2013 |
| Europe | Airdyne 2 Exercise Bike (Fan Housing) | 0022489630002 | Jun 4, 2013 | | Issued | | | 002248963-0002 | Jun 4, 2013 |
| United Kingdom | Airdyne 2 Exercise Bike (Fan Housing) | 0022489630002 | Jun 4, 2013 | | Issued | | | 9002248963-0002 | Jun 4, 2013 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Exercise Bike Flywheel Housing (Airdyne 2 Exercise Bike Fan Housing) | 29438881 | Dec 4, 2012 | Sep 30, 2013 | Issued | D699305 | Feb 11, 2014 | | |
| Australia | Exercise Bike (Airdyne 6 Exercise Bike Full Bike) | 125422013 | Jun 3, 2013 | | Issued | | | 349770 | Jul 12, 2013 |
| Europe | Exercise Bike (Airdyne 6 Exercise Bike Full Bike) | 0022489630003 | Jun 4, 2013 | | Issued | | | 002248963-0003 | Jun 4, 2013 |
| United Kingdom | Exercise Bike (Airdyne 6 Exercise Bike Full Bike) | 0022489630003 | Jun 4, 2013 | | Issued | | | 9002248963-0003 | Jun 4, 2013 |
| United States | Exercise Bike (Airdyne 6 Exercise Bike Full Bike) | 29438884 | Dec 4, 2012 | Sep 30, 2013 | Issued | D699796 | Feb 18, 2014 | | |
| Australia | Airdyne 6 Exercise Bike (Fan Housing) | 125432013 | Jun 3, 2013 | | Issued | | | 349785 | Jul 15, 2013 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Airdyne 6 Exercise Bike (Fan Housing) | 0022489630004 | Jun 4, 2013 | | Issued | | | 002248963-0004 | Jun 4, 2013 |
| United Kingdom | Airdyne 6 Exercise Bike (Fan Housing) | 0022489630004 | Jun 4, 2013 | | Issued | | | 9002248963-0004 | Jun 4, 2013 |
| United States | Exercise Bike Flywheel (Airdyne 6 Exercise Bike Fan Housing) | 29438888 | Dec 4, 2012 | Sep 30, 2013 | Issued | D700668 | Mar 4, 2014 | | |
| Germany | Exercise Machine (Max Machine) | 2020140106827 | Mar 18, 2014 | Mar 11, 2016 | Issued | 202014010682 | Apr 13, 2016 | | |
| Europe | Exercise Machine (Max Machine) | 147655815 | Mar 17, 2014 | Sep 17, 2015 | Issued | 2969066 | Oct 4, 2017 | | |
| Europe | Exercise Machine (Max Machine) | 147644827 | Mar 18, 2014 | Sep 17, 2015 | Issued | 2986350 | Feb 28, 2018 | | |
| Europe | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | Sep 29, 2017 | Issued | 3338864 | Oct 14, 2020 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Austria | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| Belgium | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| Switzerland | Exercise Machine (Max Machine) | 147655815 | Mar 17, 2014 | | Issued | 2969066 | Oct 4, 2017 | | |
| Switzerland | Exercise Machine (Max Machine) | 147644827 | Mar 18, 2014 | | Issued | 2986350 | Feb 28, 2018 | | |
| Switzerland | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| Germany | Exercise Machine (Max Machine) | 147655815 | Mar 17, 2014 | | Issued | 2969066 | Oct 4, 2017 | | |
| Germany | Exercise Machine (Max Machine) | 147644827 | Mar 18, 2014 | | Issued | 602014021663.3 | Feb 28, 2018 | | |
| Germany | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Denmakr | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| Spain | Exercise Machine (Max Machine) | 147655815 | Mar 17, 2014 | | Issued | 2969066 | Oct 4, 2017 | | |
| Spain | Exercise Machine (Max Machine) | 147644827 | Mar 18, 2014 | | Issued | 2986350 | Feb 28, 2018 | | |
| Spain | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| France | Exercise Machine (Max Machine) | 147655815 | Mar 17, 2014 | | Issued | 2969066 | Oct 4, 2017 | | |
| France | Exercise Machine (Max Machine) | 147644827 | Mar 18, 2014 | | Issued | 2986350 | Feb 28, 2018 | | |
| France | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| United Kingdom | Exercise Machine (Max Machine) | 147655815 | Mar 17, 2014 | | Issued | 2969066 | Oct 4, 2017 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United Kingdom | Exercise Machine (Max Machine) | 147644827 | Mar 18, 2014 | | Issued | 2986350 | Feb 28, 2018 | | |
| United Kingdom | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| Hong Kong | Exercise Machine (Max Machine) | 161087284 | Jul 20, 2016 | | Issued | 1220658 | Jul 6, 2018 | | |
| Hong Kong | Exercise Machine (Max Machine) | 161093188 | Aug 4, 2016 | Aug 4, 2016 | Issued | 1221430 | Feb 1, 2019 | | |
| Ireland | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| Italy | Exercise Machine (Max Machine) | 147655815 | Mar 17, 2014 | | Issued | 2969066 | Oct 4, 2017 | | |
| Italy | Exercise Machine (Max Machine) | 147644827 | Mar 18, 2014 | | Issued | 502018000015668 | Feb 28, 2018 | | |
| Italy | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Netherlands | Exercise Machine (Max Machine) | 147655815 | Mar 17, 2014 | | Issued | 2969066 | Oct 4, 2017 | | |
| Netherlands | Exercise Machine (Max Machine) | 147644827 | Mar 18, 2014 | | Issued | 2986350 | Feb 28, 2018 | | |
| Netherlands | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| Sweden | Exercise Machine (Max Machine) | 171942196 | Mar 17, 2014 | | Issued | 3338864 | Oct 14, 2020 | | |
| United States | Exercise Machine (Max Machine) | 14218808 | Mar 18, 2014 | | Issued | 9199115 | Dec 1, 2015 | | |
| United States | Exercise Machine (Max Machine) | 14859015 | Sep 18, 2015 | | Issued | 9950209 | Apr 24, 2018 | | |
| United States | Exercise Machine (Max Machine) | 14954144 | Nov 30, 2015 | | Issued | 9987513 | Jun 5, 2018 | | |
| United States | Exercise Machine (Max Machine) | 15960174 | Apr 23, 2018 | | Issued | 10543396 | Jan 28, 2020 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Exercise Machine (Max Machine) | 15970627 | May 3, 2018 | | Issued | 10252101 | Apr 9, 2019 | | |
| United States | Exercise Machine | 16378221 | Apr 8, 2019 | | Issued | 11198033 | Dec 14, 2021 | | |
| United States | Exercise Machine (Max Machine) | 16751989 | Feb 24, 2020 | | Issued | 11324994 | May 10, 2022 | | |
| United States | Exercise Machine | 17736469 | May 4, 2022 | | Published | | | | |
| Austalia | Exercise Machine (Max Machine) | 2014232303 | Mar 17, 2014 | Oct 12, 2015 | Issued | 2014232303 | Jun 8, 2017 | | |
| Canada | Exercise Machine (Max Machine) | 2907352 | Mar 17, 2014 | Sep 14, 2015 | Issued | 2907352 | Nov 13, 2018 | | |
| Canada | Exercise Machine (Max Machine) | 2907435 | Mar 18, 2014 | Sep 14, 2015 | Issued | 2907435 | Jan 16, 2018 | | |
| Canada | Exercise Machine (Max Machine) | 3013141 | Mar 17, 2014 | Aug 1, 2018 | Issued | 3013141 | Sep 21, 2021 | | |
| China | Exercise Machine (Max Machine) | 2014800243590 | Mar 17, 2014 | Oct 29, 2015 | Issued | ZL201480024359.0 | Jan 30, 2018 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | Exercise Machine (Max Machine) | 2014900006694 | Mar 18, 2014 | Nov 11, 2015 | Issued | ZL201490000669.4 | Dec 14, 2016 | | |
| New Zealand | Exercise Machine (Max Machine) | 713154 | Mar 17, 2014 | Oct 13, 2015 | Issued | 713154 | Aug 29, 2017 | | |
| Europe | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | Jan 12, 2017 | Issued | 3154645 | Mar 24, 2021 | | |
| Europe | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 21158425.5 | Oct 3, 2014 | Feb 22, 2021 | Pending | | | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Austria | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |
| Belgium | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |
| Switzerland | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Germany | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |
| Denmark | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |
| Spain | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| France | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |
| United Kingdom | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |
| Ireland | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Italy | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |
| Netherlands | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |
| Sweden | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 148944341 | Oct 3, 2014 | | Issued | 3154645 | Mar 24, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Taiwan | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell) | 104118899 | Jun 11, 2015 | | Issued | I674913 | Oct 21, 2019 | | |
| United States | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 14304853 | Jun 13, 2014 | | Issued | 10518123 | Dec 31, 2019 | | |
| United States | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 16725891 | Dec 23, 2019 | | Issued | 11452902 | Sep 27, 2022 | | |
| United States | Adjustable Dumbbell System | 17934741 | Sep 23, 2022 | | Allowed | | | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Australia | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 2014396794 | Oct 3, 2014 | Dec 19, 2016 | Issued | 2014396794 | Dec 13, 2018 | | |
| Canada | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 2952020 | Oct 3, 2014 | Dec 12, 2016 | Issued | 2952020 | Jan 28, 2020 | | |
| China | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 2014800811283 | Oct 3, 2014 | Feb 10, 2017 | Issued | ZL201480081128.3 | Dec 23, 2019 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Japan | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 2017518029 | Oct 3, 2014 | Dec 13, 2016 | Issued | 6383871 | Aug 10, 2018 | | |
| Mexico | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | MXa2016016474 | Oct 3, 2014 | Dec 13, 2016 | Issued | 388289 | Nov 30, 2021 | | |
| New Zealand | Adjustable Dumbbell System (Selecttech560 Adjustable Dumbbell (Add-on Weight for Selectable Dumbbell)) | 727703 | Oct 3, 2014 | Dec 19, 2016 | Issued | 727703 | Oct 2, 2018 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 147933568 | Oct 3, 2014 | Oct 21, 2016 | Issued | 3119480 | May 19, 2021 | | |
| Germany | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 147933568 | Oct 3, 2014 | | Issued | 3119480 | May 19, 2021 | | |
| Spain | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 147933568 | Oct 3, 2014 | | Issued | 3119480 | May 19, 2021 | | |
| France | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 147933568 | Oct 3, 2014 | | Issued | 3119480 | May 19, 2021 | | |
| United Kingdom | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 147933568 | Oct 3, 2014 | | Issued | 3119480 | May 19, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Italy | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 147933568 | Oct 3, 2014 | | Issued | 3119480 | May 19, 2021 | | |
| Netherlands | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 147933568 | Oct 3, 2014 | | Issued | 3119480 | May 19, 2021 | | |
| Taiwan | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 104118897 | Jun 11, 2015 | | Issued | I653074 | Mar 11, 2019 | | |
| United States | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 14311228 | Jun 20, 2014 | | Issued | 9776032 | Oct 3, 2017 | | |
| United States | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 15266722 | Sep 15, 2016 | | Issued | 10195477 | Feb 5, 2019 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 15722513 | Oct 2, 2017 | | Issued | 10617905 | Apr 14, 2020 | | |
| Australia | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 2014397779 | Oct 3, 2014 | Oct 20, 2016 | Issued | 2014397779 | May 3, 2018 | | |
| Canada | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 2946524 | Oct 3, 2014 | Oct 20, 2016 | Issued | 2946524 | Oct 26, 2021 | | |
| China | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 2014800798522 | Oct 3, 2014 | Dec 14, 2016 | Issued | ZL201480079852.2 | May 10, 2019 | | |
| Japan | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 2017519445 | Oct 3, 2014 | Dec 20, 2016 | Issued | 6343396 | May 25, 2018 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Mexico | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | MXa2016014433 | Oct 3, 2014 | Nov 3, 2016 | Issued | 378453 | Dec 17, 2020 | | |
| New Zealand | Adjustable Dumbbell System Having a Weight Sensor (Titan I) | 725485 | Oct 3, 2014 | Oct 20, 2016 | Issued | 725485 | Jul 31, 2018 | | |
| Australia | Dumbbell Base [560 (2014)] | 164152014 | Dec 11, 2014 | | Issued | | | 359642 | Dec 18, 2014 |
| Canada | Dumbbell Base [560 (2014)] | 159976 | Dec 11, 2014 | | Issued | | | 159,976 | Jul 28, 2015 |
| China | Dumbbell Base [560 (2014)] | 201430520019X | Dec 12, 2014 | | Issued | | | ZL201430520019.X | Aug 19, 2015 |
| Europe | Dumbbell Base [560 (2014)] | 0025965440002 | Dec 12, 2014 | | Issued | | | 002596544-0002 | Dec 12, 2014 |
| United Kingdom | Dumbbell Base [560 (2014)] | 0025965440002 | Dec 12, 2014 | | Issued | | | 9002596544-0002 | Dec 12, 2014 |
| Mexico | Dumbbell Base [560 (2014)] | MXf2014003834 | Dec 11, 2014 | | Issued | | | 45365 | Oct 21, 2015 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Dumbbell Base [560 (2014)] | 29493900 | Jun 13, 2014 | | Issued | D743713 | Nov 24, 2015 | | |
| Australia | Dumbbell (560) | 164212014 | Dec 11, 2014 | | Issued | | | 359599 | Dec 17, 2014 |
| Brazil | Dumbbell (560) | BR302014006304 | Dec 12, 2014 | | Issued | | | BR302014006304-9 | Jul 19, 2016 |
| Canada | Dumbbell (560) | 159975 | Dec 11, 2014 | | Issued | | | 159,975 | Oct 15, 2015 |
| China | Dumbbell (560) | 2014305200768 | Dec 12, 2014 | | Issued | | | ZL201430520076.8 | Aug 19, 2015 |
| Europe | Dumbbell (560) | 0025965440003 | Dec 12, 2014 | | Issued | | | 002596544-0003 | Dec 12, 2014 |
| United Kingdom | Dumbbell (560) | 0025965440003 | Dec 12, 2014 | | Issued | | | 9002596544-0003 | Dec 12, 2014 |
| Hong Kong | Dumbbell (560) | 14023131 | Dec 12, 2014 | | Issued | | | 1402313.1 | Dec 12, 2014 |
| India | Dumbbell (560) | 268143 | Dec 12, 2014 | | Issued | | | 268143 | Jul 31, 2015 |
| Mexico | Dumbbell (560) | MXf2014003833 | Dec 11, 2014 | | Issued | | | 45366 | Oct 21, 2015 |
| New Zealand | Dumbbell (560) | 419654 | Dec 11, 2014 | | Issued | | | 419654 | Jun 13, 2014 |
| United States | Dumbbell (560) | 29493901 | Jun 13, 2014 | | Issued | D737907 | Sep 1, 2015 | | |
| Europe | Dumbbell Stand (560 - Full) | 0025965440001 | Dec 12, 2014 | | Issued | | | 002596544-0001 | Dec 12, 2014 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United Kingdom | Dumbbell Stand (560 - Full) | 0025965440001 | Dec 12, 2014 | | Issued | | | 9002596544-0001 | Dec 12, 2014 |
| United States | Dumbbell Stand (560 - Full) | 29493899 | Jun 13, 2014 | | Issued | D725937 | Apr 7, 2015 | | |
| Australia | Dumbbell Stand (560 - Top and Bottom Supports Only) | 164282014 | Dec 11, 2014 | | Issued | | | 359602 | Dec 17, 2014 |
| Europe | Dumbbell Stand (560 - Top and Bottom Supports Only) | 0025965440004 | Dec 12, 2014 | | Issued | | | 002596544-0004 | Dec 12, 2014 |
| United Kingdom | Dumbbell Stand (560 - Top and Bottom Supports Only) | 0025965440004 | Dec 12, 2014 | | Issued | | | 9002596544-0004 | Dec 12, 2014 |
| Mexico | Dumbbell Stand (560 - Top and Bottom Supports Only) | MXf2014003838 | Dec 11, 2014 | | Issued | | | 46097 | Jan 19, 2016 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Dumbbell Stand (560 - Top and Bottom Supports Only) | 29493902 | Jun 13, 2014 | | Issued | D725938 | Apr 7, 2015 | | |
| Australia | Dumbbell Bridge (560 - Bridge Only) | 164252014 | Dec 11, 2014 | | Issued | | | 360289 | Feb 13, 2015 |
| Canada | Dumbbell Bridge (560 - Bridge Only) | 159974 | Dec 11, 2014 | | Issued | | | 159,974 | Oct 15, 2015 |
| China | Dumbbell Bridge (560 - Bridge Only) | 2014305200556 | Dec 12, 2014 | | Issued | | | ZL201430520055.6 | Aug 19, 2015 |
| Europe | Dumbbell Bridge (560 - Bridge Only) | 0025965440005 | Dec 12, 2014 | | Issued | | | 002596544-0005 | Dec 12, 2014 |
| United Kingdom | Dumbbell Bridge (560 - Bridge Only) | 0025965440005 | Dec 12, 2014 | | Issued | | | 9002596544-0005 | Dec 12, 2014 |
| Mexico | Dumbbell Bridge (560 - Bridge Only) | MXf2014003832 | Dec 11, 2014 | | Issued | | | 45367 | Oct 21, 2015 |
| United States | Dumbbell Bridge (560 - Bridge Only) | 29493903 | Jun 13, 2014 | | Issued | D753247 | Apr 5, 2016 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Weight Sensing Base For an Adjustable Dumbbell System (Dumbbell Base/Scale) | 158760421 | Dec 22, 2015 | Jul 25, 2017 | Issued | 3241001 | Jul 22, 2020 | | |
| Germany | Weight Sensing Base For an Adjustable Dumbbell System (Dumbbell Base/Scale) | 158760421 | Dec 22, 2015 | | Issued | 60 2015 056 335.2 | Jul 22, 2020 | | |
| United Kingdom | Weight Sensing Base For an Adjustable Dumbbell System (Dumbbell Base/Scale) | 158760421 | Dec 22, 2015 | | Issued | 3241001 | Jul 22, 2020 | | |
| United States | Weight Sensing Base For an Adjustable Dumbbell System (Dumbbell Base/Scale) | 14587642 | Dec 31, 2014 | | Issued | 9814922 | Nov 14, 2017 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Australia | Weight Sensing Base For an Adjustable Dumbbell System (Dumbbell Base/Scale) | 2015374401 | Dec 22, 2015 | Jun 23, 2017 | Issued | 2015374401 | Mar 28, 2019 | | |
| United States | Exercise Bike Fan (AD Pro) | 29516429 | Feb 2, 2015 | | Issued | D767050 | Sep 20, 2016 | | |
| China | Exercise Bike Handle (AD Pro) | 2015302827917 | Jul 31, 2015 | | Issued | | | ZL201530282791.7 | Jan 20, 2016 |
| Europe | Exercise Bike Handle (AD Pro) | 0027460990003 | Jul 30, 2015 | | Issued | | | 002746099-0003 | Jul 30, 2015 |
| United Kingdom | Exercise Bike Handle (AD Pro) | 0027460990003 | Jul 30, 2015 | | Issued | | | 9002746099-0003 | Jul 30, 2015 |
| Taiwan | DES Exercise Bike Handle (AD Pro) | 104304097 | Jul 30, 2015 | | Issued | | | D177753 | Aug 21, 2016 |
| United States | Exercise Bike Handle (AD Pro) | 29516434 | Feb 2, 2015 | | Issued | D792533 | Jul 18, 2017 | | |
| China | Exercise Bike Foot Peg (AD Pro) | 2015302829414 | Jul 31, 2015 | | Issued | | | ZL201530282941.4 | Jan 20, 2016 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Exercise Bike Foot Peg (AD Pro) | 0027460990001 | Jul 30, 2015 | | Issued | | | 002746099-0001 | Jul 30, 2015 |
| United Kingdom | Exercise Bike Foot Peg (AD Pro) | 0027460990001 | Jul 30, 2015 | | Issued | | | 9002746099-0001 | Jul 30, 2015 |
| Taiwan | DES Exercise Bike Foot Peg (AD Pro) | 104304098 | Jul 30, 2015 | | Issued | | | D177754 | Aug 21, 2016 |
| United States | Exercise Bike Foot Peg (AD Pro) | 29516449 | Feb 2, 2015 | | Issued | D781385 | Mar 14, 2017 | | |
| United States | Exercise Bike Fan Cage (AD Pro) | 29516439 | Feb 2, 2015 | | Issued | D767051 | Sep 20, 2016 | | |
| Australia | DES Exercise Bike (AD Pro) | 201513804 | Jul 29, 2015 | | Issued | | | 363534 | Aug 18, 2015 |
| Canada | DES Exercise Bike (AD Pro) | 163539 | Jul 29, 2015 | | Issued | | | 163,539 | Feb 22, 2016 |
| Switzerland | Parts of an Exercise Bike | 141755 | Jul 28, 2015 | | Issued | | | 141755 | Sep 10, 2015 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | Exercise Bike (AD Pro) | 2015302829594 | Jul 31, 2015 | | Issued | | | ZL201530282959.4 | Jan 20, 2016 |
| Europe | Exercise Bike (AD Pro) | 0027460990002 | Jul 30, 2015 | | Issued | | | 002746099-0002 | Jul 30, 2015 |
| United Kingdom | Exercise Bike (AD Pro) | 0027460990002 | Jul 30, 2015 | | Issued | | | 9002746099-0002 | Jul 30, 2015 |
| New Zealand | Exercise Bike (AD Pro) | 420489 | Jul 29, 2015 | | Issued | | | 420489 | Feb 2, 2015 |
| Taiwan | Exercise Bike (AD Pro) | 104304099 | Jul 30, 2015 | | Issued | | | D178454 | Sep 21, 2016 |
| United States | Exercise Bike (AD Pro) | 29516441 | Feb 2, 2015 | | Issued | D767049 | Sep 20, 2016 | | |
| United States | EXERCISE DUMBBELLS | 13836908 | Mar 15, 2013 | | Issued | 9375602 | Jun 28, 2016 | | |
| United States | Exercise Dumbbells | 15151054 | May 10, 2016 | | Issued | 9604092 | Mar 28, 2017 | | |
| United States | Ball and Board Balance Training Device (M-Board) | 13951580 | Jul 26, 2013 | | Issued | 9387363 | Jul 12, 2016 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Exercise Machine (M7 Max Machine) | 0030396350001 | Mar 23, 2016 | | Issued | | | 003039635-0001 | Mar 23, 2016 |
| United Kingdom | Exercise Machine (M7 Max Machine) | 0030396350001 | Mar 23, 2016 | | Issued | | | 9003039635-0001 | Mar 23, 2016 |
| United State | Elliptical Exercise Machine (M7 Max Machine) | 29540808 | Sep 28, 2015 | | Issued | D792530 | Jul 18, 2017 | | |
| Europe | Pedal Assembly for Exercise Machine | 168823409 | Dec 16, 2016 | Jul 19, 2018 | Issued | 3397360 | Jan 20, 2021 | | |
| Germany | Pedal Assembly for Exercise Machine | 168823409 | Dec 16, 2016 | | Issued | 602016051888.0 | Jan 20, 2021 | | |
| United Kingdom | Pedal Assembly for Exercise Machine | 168823409 | Dec 16, 2016 | | Issued | 3397360 | Jan 20, 2021 | | |
| United States | Pedal Assembly for Exercise Machine | 14986068 | Dec 31, 2015 | | Issued | 10369404 | Aug 6, 2019 | | |
| China | Pedal Assembly for Exercise Machine | 201680081846X | Dec 16, 2016 | Aug 15, 2018 | Issued | ZL 201680081846.X | Aug 14, 2020 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | Exercise Machine Having Non-Matched Cable Pairing (Non-Matched Cable Pairing (EVO)) | 2016800818402 | Dec 16, 2016 | Aug 15, 2018 | Issued | 201680081840.2 | Mar 30, 2021 | | |
| United States | Exercise Machine Having Non-Matched Cable Pairing (Non-Matched Cable Pairing (EVO)) | 16082409 | Dec 16, 2016 | Sep 5, 2018 | Issued | 10953267 | Mar 23, 2021 | | |
| Europe | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 168825529 | Dec 28, 2016 | Jul 19, 2018 | Issued | 3397358 | Apr 7, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Switzerland | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 168825529 | Dec 28, 2016 | | Issued | 3397358 | Apr 7, 2021 | | |
| Germany | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 168825529 | Dec 28, 2016 | | Issued | 602016055887.4 | Apr 7, 2021 | | |
| Spain | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 168825529 | Dec 28, 2016 | | Issued | 3397358 | Apr 7, 2021 | | |
| France | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 168825529 | Dec 28, 2016 | | Issued | 3397358 | Apr 7, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United Kingdom | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 168825529 | Dec 28, 2016 | | Issued | 3397358 | Apr 7, 2021 | | |
| Italy | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 168825529 | Dec 28, 2016 | | Issued | 3397358 | Apr 7, 2021 | | |
| Netherlands | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 168825529 | Dec 28, 2016 | | Issued | 3397358 | Apr 7, 2021 | | |
| Taiwan | Treadmill Including a Lift Assistance Mechanism | 106145872 | Dec 27, 2017 | | Issued | I739978 | Sep 21, 2021 | | |
| United States | Treadmill Including a Deck Locking Mechanism | 14985516 | Dec 31, 2015 | | Issued | 10335632 | Jul 2, 2019 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Treadmill Including a Lift Assistance Mechanism | 15391680 | Dec 27, 2016 | | Issued | 10398932 | Sep 3, 2019 | | |
| China | Treadmill Including a Deck Locking Mechanism and/or a Lift Assist Mechanism | 2016800826377 | Dec 28, 2016 | Aug 20, 2018 | Issued | ZL201680082637.7 | Oct 30, 2020 | | |
| United States | Balance Board (Edge Board) | 29549152 | Dec 18, 2015 | | Issued | D797212 | Sep 12, 2017 | | |
| China | Handle for Exercise Machine (NLS) | 2016303382328 | Jul 22, 2016 | | Issued | | | ZL201630338232.8 | Feb 8, 2017 |
| Europe | Handle for Exercise Machine (NLS) | 0033119190001 | Jul 19, 2016 | | Issued | | | 003311919-0001 | Jul 19, 2016 |
| United Kingdom | Handle for Exercise Machine (NLS) | 0033119190001 | Jul 19, 2016 | | Issued | | | 9003311919-0001 | Jul 19, 2016 |
| United States | Handle for Exercise Machine (NLS) | 29552528 | Jan 22, 2016 | | Issued | D795973 | Aug 29, 2017 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | Handle for Exercise Machine (BFX) | 201630336947X | Jul 22, 2016 | | Issued | | | ZL201630336947.X | Feb 8, 2017 |
| Europe | Handle for Exercise Machine (BFX) | 0033119190002 | Jul 19, 2016 | | Issued | | | 003311919-0002 | Jul 19, 2016 |
| United Kingdom | Handle for Exercise Machine (BFX) | 0033119190002 | Jul 19, 2016 | | Issued | | | 9003311919-0002 | Jul 19, 2016 |
| United States | Handle (BFX) | 29552532 | Jan 22, 2016 | | Issued | D795974 | Aug 29, 2017 | | |
| China | Handle for Exercise Machine (BFX2) | 2016303369465 | Jul 22, 2016 | | Issued | | | ZL201630336946.5 | Feb 8, 2017 |
| Europe | Handle for Exercise Machine (BFX2) | 0033119190003 | Jul 19, 2016 | | Issued | | | 003311919-0003 | Jul 19, 2016 |
| United Kingdom | Handle for Exercise Machine (BFX2) | 0033119190003 | Jul 19, 2016 | | Issued | | | 9003311919-0003 | Jul 19, 2016 |
| United States | Handle (BFX2) | 29552535 | Jan 22, 2016 | | Issued | D795975 | Aug 29, 2017 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | MOTORLESS TREADMILL STEPPER EXERCISE DEVICE | 12854123 | Aug 10, 2010 | | Issued | 8597161 | Dec 3, 2013 | | |
| United States | Stowable Rowing Machine | 15344219 | Nov 4, 2016 | | Issued | 10449409 | Oct 22, 2019 | | |
| Taiwan | Exercise Machine with Adjustable Stride | 106145871 | Dec 27, 2017 | | Issued | I737877 | Sep 1, 2021 | | |
| United States | Exercise Machine with Adjustable Stride (Adjustable Stride Max Machine) | 15633698 | Jun 26, 2017 | | Issued | 10328301 | Jun 25, 2019 | | |
| United States | Pedal Assembly for Exercise Machine | 16450681 | Jun 24, 2019 | | Issued | 11191995 | Dec 7, 2021 | | |
| Europe | Stationary Exercise Machine with a Power Measurement Apparatus | 178326724 | Dec 22, 2017 | Jul 4, 2019 | Issued | 3562564 | Aug 25, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Germany | Stationary Exercise Machine with a Power Measurement Apparatus | 178326724 | Dec 22, 2017 | | Issued | 3562564 | Aug 25, 2021 | | |
| United Kingdom | Stationary Exercise Machine with a Power Measurement Apparatus | 178326724 | Dec 22, 2017 | | Issued | 3562564 | Aug 25, 2021 | | |
| Taiwan | Stationary Exercise Machine with a Power Measurement Apparatus | 106145870 | Dec 27, 2017 | | Issued | I744450 | Nov 1, 2021 | | |
| United States | STATIONARY EXERCISE MACHINE WITH A POWER MEASUREMENT APPARATUS | 15633689 | Jun 26, 2017 | | Issued | 10226657 | Mar 12, 2019 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | STATIONARY EXERCISE MACHINE WITH A POWER MEASUREMENT APPARATUS | 16296050 | Mar 7, 2019 | | Issued | 10758765 | Sep 1, 2020 | | |
| China | Stationary Exercise Machine with a Power Measurement Apparatus | 201780086441X | Dec 22, 2017 | Aug 14, 2019 | Issued | ZL201780086441.X | Feb 26, 2021 | | |
| United States | Box with Closeable Aperture | 15233611 | Aug 10, 2016 | | Issued | 10351292 | Jul 16, 2019 | | |
| Canada | Exercise Machine (HVT) | 172949 | Feb 9, 2017 | | Issued | | | 172,949 | Sep 14, 2017 |
| Switzerland | Exercise Machine (HVT) | 201700094 | Feb 10, 2017 | | Issued | | | 143042 | Mar 10, 2017 |
| Europe | Exercise Machine (HVT) | 0037473850001 | Feb 10, 2017 | | Issued | | | 003747385-0001 | Feb 10, 2017 |
| United Kingdom | Exercise Machine (HVT) | 0037473850001 | Feb 10, 2017 | | Issued | | | 9003747385-0001 | Feb 10, 2017 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Japan | Exercise Machine (HVT) | 2017002527 | Feb 10, 2017 | | Issued | | | 1584840 | Aug 4, 2017 |
| New Zealan | Exercise Machine (HVT) | 422688 | Feb 13, 2017 | | Issued | | | 422688 | Aug 12, 2016 |
| United States | Exercise Machine (HVT) | 29574258 | Aug 12, 2016 | | Issued | D807445 | Jan 9, 2018 | | |
| United States | Media Holder Component for Exercise Machine | 29575240 | Aug 23, 2016 | | Issued | D815702 | Apr 17, 2018 | | |
| Europe | Exercise Machine | 187316427 | May 22, 2018 | Dec 4, 2019 | Published | | | | |
| Taiwan | Exercise Machine | 107117768 | May 24, 2018 | | Issued | I755539 | Feb 21, 2022 | | |
| United States | Exercise Machine (Commercia l Max) | 15606754 | May 26, 2017 | | Issued | 10561891 | Feb 18, 2020 | | |
| China | Exercise Machine | 2018800465236 | May 22, 2018 | Jan 13, 2020 | Issued | ZL201880046523.6 | Oct 22, 2021 | | |
| China | Dumbbell Stand (SelectTech Dumbbell Stand) | 2017303422419 | Jul 31, 2017 | | Issued | | | ZL201730342241.9 | Feb 23, 2018 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Dumbbell Stand (SelectTech Dumbbell Stand) | 0041281630001 | Jul 31, 2017 | | Issued | | | 004128163-0001 | Jul 31, 2017 |
| United Kingdom | Dumbbell Stand (SelectTech Dumbbell Stand) | 0041281630001 | Jul 31, 2017 | | Issued | | | 9004128163-0001 | Jul 31, 2017 |
| United States | Dumbbell Stand (SelectTech Dumbbell Stand) | 29592619 | Jan 31, 2017 | | Issued | D837560 | Jan 8, 2019 | | |
| Europe | DUMBBELL AND BASE | 0018445980001 | Apr 1, 2011 | | Issued | | | 001844598-0001 | Apr 1, 2011 |
| United Kingdom | DUMBBELL AND BASE | 0018445980001 | Apr 1, 2011 | | Issued | | | 9001844598-0001 | Apr 1, 2011 |
| United States | Exercise Machine (Compact Elliptical 2017) | 16760832 | Oct 30, 2018 | Apr 30, 2020 | Issued | 11583726 | Feb 21, 2023 | | |
| Europe | Storable Exercise Bench | 187431838 | Jun 26, 2018 | Jan 13, 2020 | Published | | | | |
| Taiwan | Storable Exercise Bench | 107121905 | Jun 26, 2018 | | Issued | I766047 | Jun 1, 2022 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Storable Exercise Bench | 16018969 | Jun 26, 2018 | | Issued | 10850154 | Dec 1, 2020 | | |
| United States | Storable Exercise Bench | 17107661 | Nov 30, 2020 | | Issued | 11413492 | Aug 16, 2022 | | |
| United States | Storable Exercise Bench | 17819832 | Aug 15, 2022 | | Published | | | | |
| Australia | Storable Exercise Bench | 2018295277 | Jun 26, 2018 | Dec 24, 2019 | Issued | 2018295277 | Aug 26, 2021 | | |
| Australia | Storable Exercise Bench | 2021215163 | Jun 26, 2018 | Aug 11, 2021 | Issued | 2021215163 | Sep 14, 2023 | | |
| Canada | Storable Exercise Bench | 3068295 | Jun 26, 2018 | Dec 20, 2019 | Allowed | | | | |
| China | Storable Exercise Bench | 201880054243X | Jun 26, 2018 | Feb 21, 2020 | Issued | ZL201880054243.X | May 24, 2022 | | |
| Japan | Storable Exercise Bench | 2019572101 | Jun 26, 2018 | Dec 26, 2019 | Issued | 6957655 | Oct 8, 2021 | | |
| United Kingdom | Exercise Bike | 0052828370001 | May 25, 2018 | | Issued | | | 9005282837-0001 | May 25, 2018 |
| United States | Exercise Bike | 29627933 | Nov 30, 2017 | | Issued | D852905 | Jul 2, 2019 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Lateral Elliptical Trainer | 16221029 | Dec 14, 2018 | | Issued | 10729934 | Aug 4, 2020 | | |
| Europe | Adjustable Weight Kettlebell | 197068372 | Feb 4, 2019 | Jul 29, 2020 | Issued | 3746193 | Aug 30, 2023 | | |
| Europe | Adjustable Weight Kettlebell | 231925876 | Feb 4, 2019 | Aug 22, 2023 | Pending | | | | |
| Taiwan | Adjustable Weight Kettlebell | 108104167 | Feb 1, 2019 | | Issued | I810242 | Aug 1, 2023 | | |
| Canada | Adjustable Weight Kettlebell | 3090147 | Feb 4, 2019 | Jul 30, 2020 | Issued | 3090147 | Aug 29, 2023 | | |
| China | Adjustable Weight Kettlebell | 2019800216914 | Feb 4, 2019 | Sep 24, 2020 | Issued | ZL201980021691.4 | May 24, 2022 | | |
| United States | Adjustable Weight Kettlebell | 16967104 | Feb 4, 2019 | Aug 3, 2020 | Issued | 11491361 | Nov 8, 2022 | | |
| United States | Adjustable Weight Kettlebell | 17850074 | Jun 27, 2022 | | Published | | | | |
| Europe | Compact Elliptical Exercise Machine | 217138585 | Mar 2, 2021 | Sep 1, 2022 | Published | | | | |
| United States | ELLIPTICAL EXERCISE MACHINE | 16808221 | Mar 3, 2020 | | Issued | 11413497 | Aug 16, 2022 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | ELLIPTICAL EXERCISE MACHINE | 17136947 | Dec 29, 2020 | | Issued | 11673019 | Jun 13, 2023 | | |
| United States | ELLIPTICAL EXERCISE MACHINE | 18326167 | May 31, 2023 | | Pending | | | | |
| China | Compact Elliptical Exercise Machine | 2021800307319 | Mar 2, 2021 | Oct 25, 2022 | Published | | | | |
| United States | Media Holder for Exercise Machine | 16446135 | Jun 19, 2019 | | Issued | 11135473 | Oct 5, 2021 | | |
| Europe | Rowing Machine | 197495203 | Jul 19, 2019 | Jan 27, 2021 | Published | | | | |
| United States | Rowing Machine | 16517415 | Jul 19, 2019 | | Issued | 11013952 | May 25, 2021 | | |
| United States | Stationary Exercise Machine with Four-Bar Linkage Transmission | 17328954 | May 24, 2021 | | Issued | 11724152 | Aug 15, 2023 | | |
| United States | Stationary Exercise Machine with Four-Bar Linkage Transmission | 18345491 | Jun 30, 2023 | | Pending | | | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | Rowing Machine | 201980059018X | Jul 19, 2019 | Mar 10, 2021 | Issued | ZL201980059018.X | Nov 22, 2022 | | |
| China | Kettlebell | 201930089894X | Mar 6, 2019 | | Issued | | | ZL201930089894.X | Sep 20, 2019 |
| Europe | Kettlebell | 0062851280001 | Mar 6, 2019 | | Issued | | | 006285128-0001 | Mar 6, 2019 |
| Europe | Kettlebell | 0062851280002 | Mar 6, 2019 | | Issued | | | 006285128-0002 | Mar 6, 2019 |
| Europe | Kettlebell | 0062851280003 | Mar 6, 2019 | | Issued | | | 006285128-0003 | Mar 6, 2019 |
| United Kingdom | Kettlebell | 0062851280001 | Mar 6, 2019 | | Issued | | | 9006285128-0001 | Mar 6, 2019 |
| United Kingdom | Kettlebell | 0062851280002 | Mar 6, 2019 | | Issued | | | 9006285128-0002 | Mar 6, 2019 |
| United Kingdom | Kettlebell | 0062851280003 | Mar 6, 2019 | | Issued | | | 9006285128-0003 | Mar 6, 2019 |
| United States | Kettlebell | 29662554 | Sep 6, 2018 | | Issued | D879888 | Mar 31, 2020 | | |
| United States | Kettlebell | 29725921 | Feb 27, 2020 | | Issued | D895035 | Sep 1, 2020 | | |
| United States | Kettlebell | 29748666 | Aug 31, 2020 | | Issued | D908819 | Jan 26, 2021 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | System and Method for Visualizing Synthetic Objects Within Real-World Video Clip | 128305489 | Sep 10, 2012 | Apr 7, 2014 | Issued | 2754131 | Oct 26, 2022 | | |
| United States | System and Method for Visualizing Synthetic Objects Within Real-World Video Clip | 14343378 | Sep 10, 2012 | Mar 6, 2014 | Issued | 9586141 | Mar 7, 2017 | | |
| United States | System and Method for Visualizing Synthetic Objects Within Real-World Video Clip | 14579535 | Dec 22, 2014 | | Issued | 9566517 | Feb 14, 2017 | | |
| United States | System and Method for Visualizing Synthetic Objects Within Real-World Video Clip | 15451100 | Mar 6, 2017 | | Issued | 10828570 | Nov 10, 2020 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Systems and Methods for Motion-Vector-Aided Video Interpolation Using Real-Time Smooth Video Playback Speed Variation | 147929038 | Sep 30, 2014 | Nov 2, 2016 | Published | | | | |
| United States | Systems and Methods for Motion-Vector-Aided Video Interpolation Using Real-Time Smooth Video Playback Speed Variation | 14503029 | Sep 30, 2014 | | Issued | 9131202 | Sep 8, 2015 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Systems and Methods for Motion-Vector-Aided Video Interpolation Using Real-Time Smooth Video Playback Speed Variation | 14843782 | Sep 2, 2015 | | Issued | 9659596 | May 23, 2017 | | |
| United States | Systems and Methods for Generating 360 Degree Mixed Reality Environments | 15188356 | Jun 21, 2016 | | Issued | 9704298 | Jul 11, 2017 | | |
| United States | Systems and Methods for Generating 360 Degree Mixed Reality Environments | 15643110 | Jul 6, 2017 | | Issued | 10810798 | Oct 20, 2020 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | FOOT SUPPORTS AND HANDLEBAR WITH FIT ENHANCEMENT FEATURES FOR AN EXERCISE MACHINE | 207161449 | Mar 6, 2020 | Oct 4, 2021 | Published | | | | |
| United States | Foot Supports With Fit Enhancement Features For An Exercise Machine | 16297310 | Mar 8, 2019 | | Issued | 11103740 | Aug 31, 2021 | | |
| United States | Foot Supports With Fit Enhancement Features For An Exercise Machine | 17389213 | Jul 29, 2021 | | Allowed | | | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | FOOT SUPPORTS AND HANDLEBAR WITH FIT ENHANCEMENT FEATURES FOR AN EXERCISE MACHINE | 2020800313851 | Mar 6, 2020 | Oct 26, 2021 | Issued | 202080031385.1 | Sep 5, 2023 | | |
| China | FOOT SUPPORTS AND HANDLEBAR WITH FIT ENHANCEMENT FEATURES FOR AN EXERCISE MACHINE | 2023110624994 | Mar 6, 2020 | Aug 22, 2023 | Pending | | | | |
| Europe | Adjustable Barbell System | 207205832 | Mar 23, 2020 | Oct 5, 2021 | Published | | | | |
| Taiwan | Adjustable Barbell System | 109110040 | Mar 25, 2020 | Mar 25, 2020 | Published | | | | |
| United States | Adjustable Barbell System | 16827479 | Mar 23, 2020 | | Issued | 11590380 | Feb 28, 2023 | | |
| United States | Adjustable Barbell System | 18174955 | Feb 27, 2023 | | Published | | | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | Adjustable Barbell System | 2020800368873 | Mar 23, 2020 | Nov 18, 2021 | Issued | ZL202080036887.3 | Dec 27, 2022 | | |
| Europe | TILT-ENABLED BIKE WITH TILT-DISABLING MECHANISM | 208452862 | Dec 18, 2020 | Jul 1, 2022 | Published | | | | |
| Taiwan | TILT-ENABLED BIKE WITH TILT-DISABLING MECHANISM | 109145751 | Dec 23, 2020 | | Published | | | | |
| United States | TILT-ENABLED BIKE WITH TILT-DISABLING MECHANISM | 17122861 | Dec 15, 2020 | | Issued | 11291883 | Apr 5, 2022 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | TILT-ENABLED BIKE WITH TILT-DISABLING MECHANISM | 17709248 | Mar 30, 2022 | | Published | | | | |
| Canada | TILT-ENABLED BIKE WITH TILT-DISABLING MECHANISM | 3162738 | Dec 18, 2020 | Jun 22, 2022 | Pending | | | | |
| China | TILT-ENABLED BIKE WITH TILT-DISABLING MECHANISM | 2020800964443 | Dec 18, 2020 | Aug 12, 2022 | Published | | | | |
| China | Stationary Bike | 2020307423465 | Dec 3, 2020 | | Issued | | | ZL202030742346.5 | Jun 18, 2021 |
| Europe | Stationary Bike | 0082095480001 | Oct 21, 2020 | | Issued | | | 008209548-0001 | Oct 21, 2020 |
| United Kingdom | Stationary Bike | 0082095480001 | Oct 21, 2020 | | Issued | | | 9008209548-0001 | Oct 21, 2020 |
| United States | Stationary Bike | 29737308 | Jun 8, 2020 | | Issued | D961014 | Aug 16, 2022 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | Stationary Bike Frame | 2020307401324 | Dec 3, 2020 | | Issued | | | ZL202030740132.4 | Jun 8, 2021 |
| Europe | Stationary Bike Frame | 0082095480002 | Oct 21, 2020 | | Issued | | | 008209548-0002 | Oct 21, 2020 |
| United Kingdom | Stationary Bike Frame | 0082095480002 | Oct 21, 2020 | | Issued | | | 9008209548-0002 | Oct 21, 2020 |
| United States | Stationary Bike Frame | 29737312 | Jun 8, 2020 | | Issued | D961015 | Aug 16, 2022 | | |
| China | Frame Member Of A Stationary Bike | 2020307400872 | Dec 3, 2020 | | Issued | | | ZL202030740087.2 | Jun 8, 2021 |
| Europe | Frame Member Of A Stationary Bike | 0082095480003 | Oct 21, 2020 | | Issued | | | 008209548-0003 | Oct 21, 2020 |
| United Kingdom | Frame Member Of A Stationary Bike | 0082095480003 | Oct 21, 2020 | | Issued | | | 9008209548-0003 | Oct 21, 2020 |
| United States | Frame Member Of A Stationary Bike | 29737314 | Jun 8, 2020 | | Issued | D961016 | Aug 16, 2022 | | |
| China | Handlebar Of A Stationary Bike | 2020307402492 | Dec 3, 2020 | | Issued | | | ZL202030740249.2 | Jun 22, 2021 |
| Europe | Handlebar Of A Stationary Bike | 0082095480004 | Oct 21, 2020 | | Issued | | | 008209548-0004 | Oct 21, 2020 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United Kingdom | Handlebar Of A Stationary Bike | 0082095480004 | Oct 21, 2020 | | Issued | | | 9008209548-0004 | Oct 21, 2020 |
| United States | Handlebar Of A Stationary Bike | 29737328 | Jun 8, 2020 | | Issued | D947300 | Mar 29, 2022 | | |
| China | Flywheel of a Stationary Exercise Machine | 2020307424415 | Dec 3, 2020 | | Issued | | | ZL202030742441.5 | Jun 8, 2021 |
| Europe | Flywheel of a Stationary Exercise Machine | 0082095480005 | Oct 21, 2020 | | Issued | | | 008209548-0005 | Oct 21, 2020 |
| United Kingdom | Flywheel of a Stationary Exercise Machine | 0082095480005 | Oct 21, 2020 | | Issued | | | 9008209548-0005 | Oct 21, 2020 |
| United States | Flywheel of a Stationary Exercise Machine | 29737332 | Jun 8, 2020 | | Issued | D947297 | Mar 29, 2022 | | |
| Europe | Display of a Stationary Exercise Machine | 0082103970001 | Oct 21, 2020 | | Issued | | | 008210397-0001 | Oct 21, 2020 |
| United Kingdom | Display of a Stationary Exercise Machine | 0082103970001 | Oct 21, 2020 | | Issued | | | 9008210397-0001 | Oct 21, 2020 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Display of a Stationary Exercise Machine | 29737350 | Jun 8, 2020 | | Issued | D953456 | May 31, 2022 | | |
| China | Free Weight Handlebar | 2020306172065 | Oct 16, 2020 | | Issued | | | ZL.202030617206.5 | Apr 9, 2021 |
| Europe | Free Weight Handlebar | 0081962240001 | Oct 8, 2020 | | Issued | | | 008196224-0001 | Oct 8, 2020 |
| United Kingdom | Free Weight Handlebar | 0081962240001 | Oct 8, 2020 | | Issued | | | 9008196224-0001 | Oct 8, 2020 |
| United States | Free Weight Handlebar | 29731650 | Apr 16, 2020 | | Issued | d958266 | Jul 19, 2022 | | |
| China | Weight Plate for Free-Weight Exercise Equipment | 2020306159484 | Oct 16, 2020 | | Issued | | | ZL.202030615948.4 | Apr 9, 2021 |
| Europe | Weight Plate for Free-Weight Exercise Equipment | 0081962240002 | Oct 8, 2020 | | Issued | | | 008196224-0002 | Oct 8, 2020 |
| United Kingdom | Weight Plate for Free-Weight Exercise Equipment | 0081962240002 | Oct 8, 2020 | | Issued | | | 9008196224-0002 | Oct 8, 2020 |
| United States | Weight Plate for Free-Weight Exercise Equipment | 29731653 | Apr 16, 2020 | | Issued | D952770 | May 24, 2022 | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| Europe | Handlebar Of A Stationary Bike | 0082095480007 | Oct 21, 2020 | | Issued | | | 008209548-0007 | Oct 21, 2020 |
| United Kingdom | Handlebar Of A Stationary Bike | 0082095480007 | Oct 21, 2020 | | Issued | | | 9008209548-0007 | Oct 21, 2020 |
| United States | Handlebar Of A Stationary Bike | 29737338 | Jun 8, 2020 | | Issued | D947966 | Apr 5, 2022 | | |
| China | Display of a Stationary Exercise Machine | 2020307402261 | Dec 3, 2020 | | Issued | | | ZL202030740226.1 | Jul 13, 2021 |
| Europe | Display of a Stationary Exercise Machine | 0082103970002 | Oct 21, 2020 | | Issued | | | 008210397-0002 | Oct 20, 2020 |
| United Kingdom | Display of a Stationary Exercise Machine | 0082103970002 | Oct 21, 2020 | | Issued | | | 9008210397-0002 | Oct 21, 2020 |
| United States | Display of a Stationary Exercise Machine | 29737351 | Jun 8, 2020 | | Issued | D953457 | May 31, 2022 | | |
| Europe | Handlebar of A Stationary Bike | 0082095480006 | Oct 21, 2020 | | Issued | | | 008209548-0006 | Oct 21, 2020 |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United Kingdom | Handlebar of A Stationary Bike | 0082095480006 | Oct 21, 2020 | | Issued | | | 9008209548-0006 | Oct 21, 2020 |
| United States | Handlebar of A Stationary Bike | 29737344 | Jun 8, 2020 | | Issued | D947967 | Apr 5, 2022 | | |
| United States | CRITICAL POWER ADAPTIVE TRAINING WITH VARYING PARAMETERS | 16192733 | Nov 15, 2018 | | Issued | 10603543 | Mar 31, 2020 | | |
| Europe | SWIVEL MOUNT FOR DISPLAY OF EXERCISE MACHINE | 218476513 | Dec 28, 2021 | Jun 14, 2023 | Pending | | | | |
| United States | SWIVEL MOUNT FOR DISPLAY OF EXERCISE MACHINE | 17563626 | Dec 28, 2021 | | Published | | | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| China | SWIVEL MOUNT FOR DISPLAY OF EXERCISE MACHINE | 202180088106X | Dec 28, 2021 | Jun 28, 2023 | Pending | | | | |
| United States | FREE-WEIGHT EXERCISE SYSTEM | 17814289 | Jul 22, 2022 | | Published | | | | |
| International Patent Cooperation Treaty (PCT) | FREE-WEIGHT EXERCISE SYSTEM | PCTUS202207404 5 | Jul 22, 2022 | | Published | | | | |
| United States | Plate-Sensing Base For A Connected Adjustable Free Weight System | 17531435 | Nov 19, 2021 | | Issued | 11,857,827 | Jan 2, 2024 | | |
| PCT | Plate-Sensing Base For A Connected Adjustable Free Weight System | PCTUS202207991 3 | Nov 16, 2022 | | Pending | | | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | EXERCISE SYSTEM WITH TRANSLATABLE AND ROTATABLE DISPLAY | 17814311 | Jul 22, 2022 | | Published | | | | |
| PCT | EXERCISE SYSTEM WITH TRANSLATABLE AND ROTATABLE DISPLAY | PCTUS202207404 2 | Jul 22, 2022 | | Published | | | | |
| WIPO | Graphical User Interface [Computer Screen Layout] | | Feb 17, 2022 | | Issued | | | DM/219696 | Feb 17, 2022 |
| United States | Adjustable Dumbbell System | 18420315 | Jan 23, 2024 | | Pending | | | | |
| PCT | Adjustable Dumbbell System | PCTUS20240125 98 | Jan 23, 2024 | | Pending | | | | |
| United States | Pinion Lock For Adjustable Barbell System | 18/512,928 | Nov 17, 2023 | | Pending | | | | |

Schedule 4.5

| JURISDICTION | TITLE | APPLICATION NO | DATE FILED | LOCAL FILING DATE | STATUS | PATENT NO | ISSUE DATE | DESIGN REGISTRATION NUMBER | DESIGN GRANT DATE |
|---|---|---|---|---|---|---|---|---|---|
| United States | Rotary Control Unit for an Exercise Machine | 63621313 | Jan 16, 2024 | | Pending | | | | |
| United States | Treadmill Deck Suspension | 63622648 | Jan 19, 2024 | | Pending | | | | |
| United States | Adaptive Weight Prescription System and Method for Resistance Training | 18095394 | Jan 10, 2023 | | Pending | | | | |
| PCT | Adaptive Weight Prescription System and Method for Resistance Training | PCTUS2024010205 | Jan 3, 2024 | | Pending | | | | |

**Registered and Pending Trademarks (Bowflex Inc.)**

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| 700IC | | EUROPEAN UNION (EUTM & RCD) | 18475664 | 5/21/2021 | 18475664 | 9/8/2021 | REGISTERED |
| 700IC | | UNITED KINGDOM | 3645418 | 5/21/2021 | 3645418 | 10/8/2021 | REGISTERED |
| 800IC | | EUROPEAN UNION (EUTM & RCD) | 18475670 | 5/21/2021 | 18475670 | 9/8/2021 | REGISTERED |
| 800IC | | UNITED KINGDOM | 3645424 | 5/21/2021 | 3645424 | 10/8/2021 | REGISTERED |
| AIR DYNE | | MALAYSIA | 84003912 | 8/23/1984 | 84003912 | 1/6/1990 | REGISTERED |
| AIRDYNE | | AUSTRIA | AM56091 | 2/4/1991 | 136154 | 6/17/1991 | REGISTERED |
| AIRDYNE | | AUSTRALIA | 550850 | 2/21/1991 | 550850 | 1/24/1994 | REGISTERED |
| AIRDYNE | | BRAZIL | 816090726 | 2/28/1991 | 816090726 | 5/19/1992 | REGISTERED |
| AIRDYNE | | BENELUX | 0759597 | 2/12/1991 | 0491594 | 2/12/1991 | REGISTERED |
| AIRDYNE | | CANADA | 619,102 | 11/14/1988 | TMA360,467 | 9/15/1989 | REGISTERED |
| AIRDYNE | | SWITZERLAND | 01185/1991 | 2/20/1991 | 387866 | 11/11/1991 | REGISTERED |
| AIRDYNE | | CHINA | 647759 | 7/6/1992 | 647759 | 6/28/1993 | REGISTERED |
| AIRDYNE | | GERMANY | SCH37029 | 2/18/1991 | 2017663 | 7/23/1992 | REGISTERED |
| AIRDYNE | | DENMARK | VA199101121 | 2/13/1991 | VR199108364 | 11/22/1991 | REGISTERED |
| AIRDYNE | | SPAIN | 1618914 | 2/20/1991 | 1618914 | 3/5/1992 | REGISTERED |
| AIRDYNE | | FINLAND | 119755 | 2/6/1991 | 119755 | 6/5/1992 | REGISTERED |
| AIRDYNE | | FRANCE | 1645369 | 2/20/1991 | 1645369 | 2/20/1991 | REGISTERED |
| AIRDYNE | | UNITED KINGDOM | 1454118 | 1/28/1991 | 1454118 | 10/16/1992 | REGISTERED |
| AIRDYNE | | ITALY | 301991900168460 | 3/6/1991 | 1425869 | 12/16/1993 | REGISTERED |
| AIRDYNE | | SOUTH KOREA | 4019910003247 | 2/21/1991 | 4002354070000 | 4/8/1992 | REGISTERED |
| AIRDYNE | | MEXICO | 107802 | 3/4/1991 | 407074 | 3/2/1992 | REGISTERED |
| AIRDYNE | | SWEDEN | 1982/01070 | 2/19/1982 | 183915 | 11/12/1982 | REGISTERED |
| AIRDYNE | | UNITED STATES | 73835361 | 11/1/1991 | 1601104 | 6/12/1990 | REGISTERED |
| AIRDYNE | | SOUTH AFRICA | 910709 | 2/5/1991 | 910709 | 2/5/1991 | REGISTERED |
| AIR-DYNE | | BRUNEI | 15494 | 8/14/1984 | 13556 | 8/14/1984 | REGISTERED |
| AIR-DYNE | | TAIWAN | 077037678 | 8/16/1988 | 00443421 | 5/16/1989 | REGISTERED |
| AIRDYNE in Chinese Characters | 艾登 | CHINA | 17272414 | 6/24/2015 | 17272414 | 8/28/2016 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| B Stylized (Old Bowflex Logo) | | SWITZERLAND | WO1217131 | 1/2/2014 | WO1217131 | 8/24/2015 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | BRAZIL | 829753400 | 6/6/2008 | 829753400 | 8/9/2011 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | CANADA | 1,249,206 | 3/2/2005 | TMA700,780 | 11/14/2007 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | UNITED KINGDOM | WO1217131 | 1/2/2014 | UK00801217131 | 8/4/2015 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| B Stylized (Old Bowflex Logo) | | UNITED KINGDOM | WO847338 | 3/2/2005 | UK008WO847338 | 4/4/2006 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | HONG KONG | 301147239 | 6/24/2008 | 301147239 | 12/12/2008 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | INDONESIA | D002006019468 | 6/20/2006 | IDM000151054 | 1/3/2008 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | INDIA | 1456928 | 5/26/2006 | 1456928 | 10/24/2008 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|------|-------|---------|---------------|-----------|-----------------|-------------------|--------|
| B Stylized (Old Bowflex Logo) | | MEXICO | 704977 | 3/2/2005 | 886764 | 6/20/2005 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | MALAYSIA | 06009058 | 5/29/2006 | 06009058 | 5/29/2006 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | THAILAND | 629526 | 6/21/2006 | TM277593 | 3/12/2008 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | TAIWAN | 094009094 | 3/2/2005 | 01186954 | 12/16/2005 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| B Stylized (Old Bowflex Logo) | | UNITED STATES | 76609914 | 9/2/2004 | 3127405 | 8/8/2006 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | AUSTRALIA | WO1217131 | 1/2/2014 | WO1217131 | 1/12/2015 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | AUSTRALIA | WO847338 | 9/1/2006 | WO847338 | 4/23/2007 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | CHINA | WO847338 | 3/2/2005 | WO847338 | 11/12/2006 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|------|-------|---------|---------------|-----------|----------------|--------------------|--------|
| B Stylized (Old Bowflex Logo) | | EUROPEAN UNION (EUTM & RCD) | WO1217131 | 1/2/2014 | WO1217131 | 8/4/2015 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | EUROPEAN UNION (EUTM & RCD) | WO847338 | 3/2/2005 | WO847338 | 4/4/2006 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | INDIA | WO1217131 | 1/2/2014 | WO1217131 | 4/2/2016 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | JAPAN | WO850666 | 5/19/2006 | WO850666 | 6/15/2007 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|------|-------|---------|--------------|-----------|----------------|-------------------|--------|
| B Stylized (Old Bowflex Logo) | | NORWAY | WO1217131 | 1/2/2014 | WO1217131 | 4/10/2015 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | NEW ZEALAND | WO1217131 | 1/2/2014 | WO1217131 | 2/3/2015 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | WIPO | WO1217131 | 1/2/2014 | WO1217131 | 1/2/2014 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | WIPO | WO847338 | 3/2/2005 | WO847338 | 3/2/2005 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| B Stylized (Old Bowflex Logo) | | WIPO | WO850666 | 3/2/2005 | WO850666 | 3/2/2005 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | SINGAPORE | WO1217131 | 1/2/2014 | WO1217131 | 7/13/2015 | REGISTERED |
| B Stylized (Old Bowflex Logo) | | TURKEY | WO1217131 | 1/2/2014 | WO1217131 | 10/10/2015 | REGISTERED |
| BLAZE | | UNITED STATES | 78856892 | 4/7/2006 | 3337049 | 11/13/2007 | REGISTERED |
| BOWFLEX | | UNITED ARAB EMR | 324671 | 1/28/2020 | 324671 | 5/23/2020 | REGISTERED |
| BOWFLEX | | AUSTRALIA | 1066821 | 7/27/2005 | 1066821 | 3/6/2006 | REGISTERED |
| BOWFLEX | | BRAZIL | 828967083 | 2/7/2007 | 828967083 | 8/21/2012 | REGISTERED |
| BOWFLEX | | BRAZIL | 829247149 | 7/20/2007 | 829247149 | 8/19/2014 | REGISTERED |
| BOWFLEX | | CANADA | 2,091,917 | 3/15/2021 | | | PENDING |
| BOWFLEX | | SWITZERLAND | 58290/2004 | 12/2/2004 | 530293 | 2/3/2005 | REGISTERED |
| BOWFLEX | | CHINA | 3814461 | 11/25/2003 | 3814461 | 12/14/2006 | REGISTERED |
| BOWFLEX | | COLOMBIA | 08048313 | 5/13/2008 | 367111 | 11/19/2008 | REGISTERED |
| BOWFLEX | | EUROPEAN UNION (EUTM & RCD) | 000377689 | 9/18/1996 | 000377689 | 6/16/1998 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| BOWFLEX | | UNITED KINGDOM | 000377689 | 9/18/1996 | UK00900377689 | 6/16/1998 | REGISTERED |
| BOWFLEX | | HONG KONG | 300590139 | 3/1/2006 | 300590139 | 6/23/2006 | REGISTERED |
| BOWFLEX | | INDONESIA | D002006019471 | 6/20/2006 | IDM000151870 | 1/3/2008 | REGISTERED |
| BOWFLEX | | ISRAEL | 277490 | 8/19/2015 | 277490 | 12/2/2015 | REGISTERED |
| BOWFLEX | | INDIA | 1426233 | 3/2/2006 | 1426233 | 1/12/2011 | REGISTERED |
| BOWFLEX | | JAPAN | 2004114089 | 12/14/2004 | 4887451 | 8/12/2005 | REGISTERED |
| BOWFLEX | | SOUTH KOREA | 40-2006-58427 | 11/19/2006 | 40-735791 | 1/29/2008 | REGISTERED |
| BOWFLEX | | SRI LANKA | 182052 | 7/23/2013 | 182052 | 3/22/2017 | REGISTERED |
| BOWFLEX | | MEXICO | 933524 | 5/13/2008 | 1043275 | 5/29/2008 | REGISTERED |
| BOWFLEX | | MALAYSIA | 06009055 | 5/29/2006 | 06009055 | 5/29/2006 | REGISTERED |
| BOWFLEX | | NORWAY | 200602418 | 3/7/2006 | 235194 | 9/28/2006 | REGISTERED |
| BOWFLEX | | NEW ZEALAND | 743740 | 3/1/2006 | 743740 | 9/7/2006 | REGISTERED |
| BOWFLEX | | RUSSIA | 2010702282 | 1/29/2010 | 425784 | 12/16/2010 | REGISTERED |
| BOWFLEX | | SINGAPORE | 40201927100Q | 12/13/2019 | 40201927100Q | 6/6/2020 | REGISTERED |
| BOWFLEX | | THAILAND | 629523 | 6/21/2006 | TM278487 | 3/31/2008 | REGISTERED |
| BOWFLEX | | TAIWAN | 092068053 | 11/25/2003 | 01112024 | 7/16/2004 | REGISTERED |
| BOWFLEX | | UNITED STATES | 73595861 | 4/28/1986 | 1416128 | 11/4/1986 | REGISTERED |
| BOWFLEX | | UNITED STATES | 98180350 | 9/14/2023 | | | PENDING |
| BOWFLEX | | VENEZUELA | 2008-009055 | 5/13/2008 | P291193 | 12/30/2008 | REGISTERED |
| BOWFLEX | | SOUTH AFRICA | 200628472 | 11/22/2006 | 200628472 | 1/18/2010 | REGISTERED |
| BOW-FLEX | | CANADA | 0569,200 | 9/15/1986 | TMA334,211 | 11/13/1987 | REGISTERED |
| BOWFLEX and LOGO (2022) | BowFlex | CHINA | 75584156 | 12/5/2023 | | | PENDING |
| BOWFLEX and LOGO (2022) | BowFlex | CHINA | 75590965 | 12/5/2023 | | | PENDING |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| BOWFLEX in Chinese Characters | | CHINA | 5064507 | 12/16/2005 | 5064507 | 6/21/2009 | REGISTERED |
| BOWFLEX in Chinese Characters | | CHINA | 5064508 | 12/16/2005 | 5064508 | 6/21/2009 | REGISTERED |
| Bowflex Logo | | UNITED ARAB EMR | 324672 | 1/28/2020 | 324672 | 5/23/2020 | REGISTERED |
| Bowflex Logo | | SINGAPORE | 40201927099P | 12/13/2019 | 40201927099P | 6/11/2020 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| Bowflex Logo (2022) | | CHINA | 66745508 | 8/22/2022 | | | PENDING |
| Bowflex Logo (2022) | | CHINA | 66743096 | 8/22/2022 | | | PENDING |
| Bowflex Logo (2022) | | CHINA | 66740947 | 8/22/2022 | | | PUBLISHED |
| Bowflex Logo (2022) | | UNITED STATES | 97489727 | 7/5/2022 | | | ALLOWED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|------|-------|---------|--------------|-----------|----------------|-------------------|--------|
| Bowflex Logo (2022) | | AUSTRALIA | WO1735807 | 12/5/2022 | WO1735807 | 9/18/2023 | REGISTERED |
| Bowflex Logo (2022) | | CANADA | WO1735807 | 12/5/2022 | | | PENDING |
| Bowflex Logo (2022) | | SWITZERLAND | WO1735807 | 9/11/2023 | | | PENDING |
| Bowflex Logo (2022) | | EUROPEAN UNION (EUTM & RCD) | WO1735807 | 12/5/2022 | WO1735807 | 11/14/2023 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|------|-------|---------|---------------|-----------|----------------|-------------------|--------|
| Bowflex Logo (2022) | | UNITED KINGDOM | WO1735807 | 12/5/2022 | WO1735807 | 9/8/2023 | REGISTERED |
| Bowflex Logo (2022) | | JAPAN | WO1735807 | 9/11/2023 | | | PENDING |
| Bowflex Logo (2022) | | NORWAY | WO1735807 | 9/11/2023 | | | PENDING |
| Bowflex Logo (2022) | | WIPO | WO1735807 | 12/5/2022 | WO1735807 | 12/5/2022 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| BOWFLEX LOGO 2015 | | UNITED STATES | 86818779 | 11/12/2015 | 5297028 | 9/26/2017 | REGISTERED |
| BOWFLEX MAX TRAINER | | SWITZERLAND | 00207/2016 | 5/17/2016 | 689055 | 6/15/2016 | REGISTERED |
| BOWFLEX MAX TRAINER | | EUROPEAN UNION (EUTM & RCD) | 014799175 | 11/13/2015 | 014799175 | 3/10/2016 | REGISTERED |
| BOWFLEX MAX TRAINER | | UNITED KINGDOM | 014799175 | 11/13/2015 | UK00914799175 | 3/10/2016 | REGISTERED |
| BOWFLEX MAX TRAINER | | NORWAY | 201701524 | 2/8/2017 | 293006 | 6/29/2017 | REGISTERED |
| BOWFLEX MAX TRAINER | | UNITED STATES | 86044378 | 8/21/2013 | 4534919 | 5/20/2014 | REGISTERED |
| BOWFLEX MAX TRAINER and Design | | CHINA | 15676440 | 11/13/2014 | 15676440 | 7/7/2016 | REGISTERED |
| BOWFLEX REVOLUTION | | UNITED STATES | 78633896 | 5/20/2005 | 3199718 | 1/16/2007 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| BOWFLEX REVOLUTION and Design | BOWFLEX REVOLUTION | UNITED STATES | 77205750 | 6/14/2007 | 3381152 | 2/12/2008 | REGISTERED |
| BOWFLEX SPORT | | EUROPEAN UNION (EUTM & RCD) | 003901808 | 6/25/2004 | 003901808 | 10/21/2005 | REGISTERED |
| BOWFLEX SPORT | | UNITED KINGDOM | 003901808 | 6/25/2004 | UK00903901808 | 10/21/2005 | REGISTERED |
| BOWFLEX XCEED | | UNITED STATES | 86108450 | 11/1/2013 | 4559635 | 7/1/2014 | REGISTERED |
| BOWFLEX XTREME | | SWITZERLAND | 58292/2004 | 12/2/2004 | 530295 | 2/3/2005 | REGISTERED |
| BOWFLEX XTREME | | EUROPEAN UNION (EUTM & RCD) | 004151262 | 12/1/2004 | 004151262 | 2/3/2006 | REGISTERED |
| BOWFLEX XTREME | | UNITED KINGDOM | 004151262 | 12/1/2004 | UK00904151262 | 2/3/2006 | REGISTERED |
| BOWFLEX XTREME | | INDIA | 1456927 | 5/26/2006 | 1456927 | 3/31/2010 | REGISTERED |
| BOWFLEX XTREME | | JAPAN | 2004114095 | 12/14/2004 | 4887453 | 8/12/2005 | REGISTERED |
| BOWFLEX XTREME | | MALAYSIA | 06009057 | 5/29/2006 | 06009057 | 5/29/2006 | REGISTERED |
| BOWFLEX XTREME | | THAILAND | 629525 | 6/21/2006 | TM278489 | 3/31/2008 | REGISTERED |
| BOWFLEX XTREME | | UNITED STATES | 78281058 | 7/30/2003 | 3089399 | 5/9/2006 | REGISTERED |
| BOWFLEX XTREME | | AUSTRALIA | WO898353 | 9/14/2006 | WO898353 | 4/30/2007 | REGISTERED |
| BOWFLEX XTREME | | WIPO | WO898353 | 9/14/2006 | WO898353 | 9/14/2006 | REGISTERED |
| DUMBBELL Design | | UNITED STATES | 77644102 | 1/6/2009 | 3783324 | 5/4/2010 | REGISTERED |
| EXPLORE THE WORLD | | UNITED STATES | 88486892 | 6/24/2019 | 6025650 | 3/31/2020 | REGISTERED |
| EXPLORE THE WORLD | | UNITED KINGDOM | WO1516611 | 12/23/2019 | UK00801516611 | 10/19/2020 | REGISTERED |
| EXPLORE THE WORLD | | CANADA | WO1516611 | 12/23/2019 | WO1516611 | 4/27/2022 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| EXPLORE THE WORLD | | EUROPEAN UNION (EUTM & RCD) | WO1516611 | 12/23/2019 | WO1516611 | 10/19/2020 | REGISTERED |
| EXPLORE THE WORLD | | WIPO | WO1516611 | 12/23/2019 | WO1516611 | 12/23/2019 | REGISTERED |
| FREEDOM ARMS | | UNITED STATES | 78875103 | 5/3/2006 | 3486408 | 8/12/2008 | REGISTERED |
| GET THE BODY YOU WANT IN HALF THE TIME | | UNITED STATES | 78319156 | 10/27/2003 | 2884481 | 9/14/2004 | REGISTERED |
| HVT | | CANADA | 1,850,981 | 8/3/2017 | TMA1,058,557 | 10/10/2019 | REGISTERED |
| HVT | | CHINA | 25665750 | 8/3/2017 | 25665750 | 9/21/2019 | REGISTERED |
| HVT | | UNITED KINGDOM | WO1366838 | 8/3/2017 | UK008O1366838 | 3/2/2018 | REGISTERED |
| HVT | | UNITED STATES | 87324281 | 2/3/2017 | 5347804 | 11/28/2017 | REGISTERED |
| HVT | | AUSTRALIA | WO1366838 | 8/3/2017 | WO1366838 | 1/24/2018 | REGISTERED |
| HVT | | SWITZERLAND | WO1366838 | 8/3/2017 | WO1366838 | 8/28/2018 | REGISTERED |
| HVT | | EUROPEAN UNION (EUTM & RCD) | WO1366838 | 8/3/2017 | WO1366838 | 3/2/2018 | REGISTERED |
| HVT | | WIPO | WO1366838 | 8/3/2017 | WO1366838 | 8/3/2017 | REGISTERED |
| JRNY | | AUSTRALIA | 2069251 | 2/14/2020 | 2069251 | 6/29/2020 | REGISTERED |
| JRNY | | CANADA | 2,012,089 | 2/14/2020 | | | PENDING |
| JRNY | | SWITZERLAND | 2041/2020 | 2/14/2020 | 743039 | 2/17/2020 | REGISTERED |
| JRNY | | CHINA | 44091661 | 2/17/2020 | 44091661 | 10/7/2020 | REGISTERED |
| JRNY | | EUROPEAN UNION (EUTM & RCD) | 18200846 | 2/25/2020 | 18200846 | 6/27/2020 | REGISTERED |
| JRNY | | UNITED KINGDOM | 18200846 | 2/25/2020 | UK00918200846 | 6/27/2020 | REGISTERED |
| JRNY | | UNITED KINGDOM | 3466859 | 2/14/2020 | 3466859 | 8/9/2020 | REGISTERED |
| JRNY | | UNITED STATES | 88582387 | 8/16/2019 | 6154883 | 9/15/2020 | REGISTERED |
| JRNY Logo | | AUSTRALIA | 2077020 | 3/20/2020 | 2077020 | 7/13/2020 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|------|-------|---------|---------------|-----------|-----------------|-------------------|--------|
| JRNY Logo | | CANADA | 2,018,677 | 3/19/2020 | | | PENDING |
| JRNY Logo | | SWITZERLAND | 3982/2020 | 3/20/2020 | 754378 | 11/2/2020 | REGISTERED |
| JRNY Logo | | CHINA | 73378279 | 8/9/2023 | | | PENDING |
| JRNY Logo | | EUROPEAN UNION (EUTM & RCD) | 18224642 | 4/14/2020 | 18224642 | 8/7/2020 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|------|-------|---------|---------------|-----------|----------------|-------------------|--------|
| JRNY Logo | | UNITED KINGDOM | 18224642 | 4/14/2020 | UK00918224642 | 8/7/2020 | REGISTERED |
| JRNY Logo | | UNITED KINGDOM | 3476724 | 3/23/2020 | 3476724 | 8/9/2020 | REGISTERED |
| JRNY Logo | | UNITED STATES | 88655738 | 10/15/2019 | 6252417 | 1/19/2021 | REGISTERED |
| JRNY with Circle Logo | | AUSTRALIA | 2077021 | 3/20/2020 | 2077021 | 7/13/2020 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| JRNY with Circle Logo | JrnY | CANADA | 2,018,676 | 3/19/2020 | | | PENDING |
| JRNY with Circle Logo | JrnY | SWITZERLAND | 3977/2020 | 3/20/2020 | 754379 | 11/2/2020 | REGISTERED |
| JRNY with Circle Logo | JrnY | CHINA | 73373027 | 8/9/2023 | | | PENDING |
| JRNY with Circle Logo | JrnY | EUROPEAN UNION (EUTM & RCD) | 18225127 | 4/14/2020 | 18225127 | 8/7/2020 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| JRNY with Circle Logo | | UNITED KINGDOM | 18225127 | 4/14/2020 | UK00918225127 | 8/7/2020 | REGISTERED |
| JRNY with Circle Logo | | UNITED KINGDOM | 3476728 | 3/23/2020 | 3476728 | 8/11/2020 | REGISTERED |
| JRNY with Circle Logo | | UNITED STATES | 88655744 | 10/15/2019 | 6252418 | 1/19/2021 | REGISTERED |
| MAX INTELLIGENCE | | UNITED KINGDOM | WO1464491 | 3/21/2019 | UK00801464491 | 10/8/2019 | REGISTERED |
| MAX INTELLIGENCE | | UNITED STATES | 88129844 | 9/24/2018 | 5841110 | 8/20/2019 | REGISTERED |
| MAX INTELLIGENCE | | EUROPEAN UNION (EUTM & RCD) | WO1464491 | 3/21/2019 | WO1464491 | 10/8/2019 | REGISTERED |
| MAX INTELLIGENCE | | WIPO | WO1464491 | 3/21/2019 | WO1464491 | 3/21/2019 | REGISTERED |
| MAX TOTAL | | UNITED KINGDOM | WO1516998 | 1/10/2020 | UK00801516998 | 7/14/2020 | REGISTERED |
| MAX TOTAL | | UNITED STATES | 88520141 | 7/17/2019 | 6044060 | 4/28/2020 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| MAX TOTAL | | AUSTRALIA | WO1516998 | 1/10/2020 | WO1516998 | 9/1/2020 | REGISTERED |
| MAX TOTAL | | CANADA | WO1516998 | 1/10/2020 | WO1516998 | 4/27/2022 | REGISTERED |
| MAX TOTAL | | EUROPEAN UNION (EUTM & RCD) | WO1516998 | 1/10/2020 | WO1516998 | 7/14/2020 | REGISTERED |
| MAX TOTAL | | NEW ZEALAND | WO1516998 | 1/10/2020 | WO1516998 | 11/3/2020 | REGISTERED |
| MAX TOTAL | | WIPO | WO1516998 | 1/10/2020 | WO1516998 | 1/10/2020 | REGISTERED |
| MAX TRAINER | | AUSTRALIA | 1642055 | 8/20/2014 | 1642055 | 3/23/2015 | REGISTERED |
| MAX TRAINER | | CANADA | 1,692,261 | 9/3/2014 | TMA932,869 | 3/29/2016 | REGISTERED |
| MAX TRAINER | | SWITZERLAND | 50380/2016 | 1/12/2016 | 688736 | 6/7/2016 | REGISTERED |
| MAX TRAINER | | CHINA | 15676439 | 11/13/2014 | 15676439 | 12/28/2015 | REGISTERED |
| MAX TRAINER | | GERMANY | 302016005125 | 8/19/2014 | 302016005125 | 3/21/2016 | REGISTERED |
| MAX TRAINER | | EUROPEAN UNION (EUTM & RCD) | 013183447 | 8/19/2014 | 013183447 | 5/3/2016 | REGISTERED |
| MAX TRAINER | | UNITED KINGDOM | 013183447 | 8/19/2014 | UK00913183447 | 5/3/2016 | REGISTERED |
| MAX TRAINER | | ITALY | 302016000034266 | 4/4/2016 | 302016000034266 | 12/7/2018 | REGISTERED |
| MAX TRAINER | | NEW ZEALAND | 1003635 | 8/20/2014 | 1003635 | 2/24/2015 | REGISTERED |
| MAX TRAINER | | UNITED STATES | 86363380 | 8/11/2014 | 4719566 | 4/14/2015 | REGISTERED |
| MAX TRAINER (MAI XUN in Chinese Characters) | 迈迅 | CHINA | 17272417 | 6/24/2015 | 17272417 | 10/28/2016 | REGISTERED |
| POWER ROD | | UNITED STATES | 73679268 | 8/19/1987 | 1523651 | 2/7/1989 | REGISTERED |
| POWER-PAK | | UNITED STATES | 73450210 | 10/28/1983 | 1331025 | 4/16/1985 | REGISTERED |
| SELECTTECH | | AUSTRALIA | 1024390 | 10/11/2004 | 1024390 | 2/14/2005 | REGISTERED |
| SELECTTECH | | CANADA | 1,233,495 | 10/12/2004 | TMA682,784 | 3/2/2007 | REGISTERED |
| SELECTTECH | | CHINA | 4304800 | 10/11/2004 | 4304800 | 5/28/2008 | REGISTERED |
| SELECTTECH | | EUROPEAN UNION (EUTM & RCD) | 004070686 | 10/12/2004 | 004070686 | 1/18/2006 | REGISTERED |
| SELECTTECH | | UNITED KINGDOM | 004070686 | 10/12/2004 | UK00904070686 | 1/18/2006 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| SELECTTECH | 诺德士 | HONG KONG | 300299917 | 10/12/2004 | 300299917 | 2/21/2005 | REGISTERED |
| SELECTTECH | | INDONESIA | D002006019467 | 6/20/2006 | IDM000151053 | 1/3/2008 | REGISTERED |
| SELECTTECH | | INDIA | 1456924 | 5/26/2006 | 1456924 | 12/27/2013 | REGISTERED |
| SELECTTECH | | JAPAN | 200493412 | 10/12/2004 | 4878801 | 7/8/2005 | REGISTERED |
| SELECTTECH | | SOUTH KOREA | 4020040045732 | 10/11/2004 | 40-712738 | 6/8/2007 | REGISTERED |
| SELECTTECH | | MEXICO | 681694 | 10/12/2004 | 864402 | 12/16/2004 | REGISTERED |
| SELECTTECH | | MALAYSIA | 06009059 | 5/29/2006 | 06009059 | 5/29/2006 | REGISTERED |
| SELECTTECH | | TAIWAN | 093046679 | 10/11/2004 | 01169949 | 8/16/2005 | REGISTERED |
| SELECTTECH | | UNITED STATES | 78400336 | 4/12/2004 | 3099981 | 6/6/2006 | REGISTERED |
| SELECTTECH in Chinese Characters | 赛泰 | CHINA | 17272415 | 6/24/2015 | 17272415 | 8/28/2016 | REGISTERED |
| STRONGER EVERY DAY | | UNITED STATES | 88425065 | 5/10/2019 | 6070810 | 6/2/2020 | REGISTERED |
| STRONGER EVERY DAY | | CANADA | WO1506176 | 11/7/2019 | WO1506176 | 8/17/2022 | REGISTERED |
| STRONGER EVERY DAY | | NEW ZEALAND | WO1506176 | 11/7/2019 | WO1506176 | 5/8/2020 | REGISTERED |
| STRONGER EVERY DAY | | WIPO | WO1506176 | 11/7/2019 | WO1506176 | 11/7/2019 | REGISTERED |
| SYNCLINK | | UNITED STATES | 78479680 | 9/7/2004 | 3105096 | 6/13/2006 | REGISTERED |
| TREADCLIMBER | | CHINA | 3900046 | 1/30/2004 | 3900046 | 2/28/2007 | REGISTERED |
| TREADCLIMBER | | UNITED KINGDOM | WO868251 | 1/27/2005 | UK008WO868251 | 11/29/2006 | REGISTERED |
| TREADCLIMBER | | INDIA | 1456926 | 5/26/2006 | 1456926 | 1/4/2011 | REGISTERED |
| TREADCLIMBER | | MALAYSIA | 06009060 | 5/29/2006 | 06009060 | 5/29/2006 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| TREADCLIMBER | | TAIWAN | 093003153 | 1/28/2004 | 01129684 | 12/1/2004 | REGISTERED |
| TREADCLIMBER | | UNITED STATES | 76403133 | 5/2/2002 | 2762687 | 9/9/2003 | REGISTERED |
| TREADCLIMBER | | AUSTRALIA | WO868251 | 1/27/2005 | WO868251 | 5/22/2006 | REGISTERED |
| TREADCLIMBER | | EUROPEAN UNION (EUTM & RCD) | WO868251 | 1/27/2005 | WO868251 | 11/29/2006 | REGISTERED |
| TREADCLIMBER | | JAPAN | WO868251 | 1/27/2005 | WO868251 | 11/17/2006 | REGISTERED |
| TREADCLIMBER | | SOUTH KOREA | WO868251 | 1/27/2005 | WO868251 | 11/9/2006 | REGISTERED |
| TREADCLIMBER | | WIPO | WO868251 | 1/27/2005 | WO868251 | 1/27/2005 | REGISTERED |
| TREADCLIMBER | | TURKEY | WO868251 | 1/27/2005 | WO868251 | 7/10/2007 | REGISTERED |
| TREADCLIMBER in Chinese Characters | 德攀 | CHINA | 17272416 | 6/24/2015 | 17272416 | 8/28/2016 | REGISTERED |
| TRIMLINE | | CHINA | 3238947 | 7/11/2002 | 3238947 | 11/28/2003 | REGISTERED |
| TRIMLINE in Chinese Characters | 齐康 | CHINA | 3238946 | 7/11/2002 | 3238946 | 11/28/2003 | REGISTERED |
| U and Circle Design (Logo I) | | AUSTRALIA | 1213145 | 12/3/2007 | 1213145 | 7/18/2008 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| U and Circle Design (Logo I) | | CANADA | 1,480,355 | 5/10/2010 | TMA805,407 | 8/29/2011 | REGISTERED |
| U and Circle Design (Logo II) | | CANADA | 1,398,007 | 6/3/2008 | TMA809,795 | 10/21/2011 | REGISTERED |
| U and Circle Design (Logo II) | | EUROPEAN UNION (EUTM & RCD) | 006959084 | 6/3/2008 | 006959084 | 2/4/2009 | REGISTERED |
| U and Circle Design (Logo II) | | UNITED KINGDOM | 006959084 | 6/3/2008 | UK00906959084 | 2/4/2009 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| UNIVERSAL | | AUSTRALIA | 264502 | 12/19/1972 | 264502 | 12/19/1972 | REGISTERED |
| UNIVERSAL | | AUSTRALIA | 5837 | 3/26/1908 | 5837 | 3/26/1908 | REGISTERED |
| UNIVERSAL | | CANADA | 0351,050 | 3/8/1972 | TMA195,579 | 11/23/1973 | REGISTERED |
| UNIVERSAL | | CHILE | 379341 | 6/6/1997 | 948715 | 8/11/1997 | REGISTERED |
| UNIVERSAL | | COLOMBIA | 92274729 | 8/14/1987 | 129598 | 9/19/1990 | REGISTERED |
| UNIVERSAL | | EUROPEAN UNION (EUTM & RCD) | 006965859 | 6/5/2008 | 006965859 | 2/4/2009 | REGISTERED |
| UNIVERSAL | | UNITED KINGDOM | 006965859 | 6/5/2008 | UK00906965859 | 2/4/2009 | REGISTERED |
| UNIVERSAL | | HONG KONG | 301147211 | 6/24/2008 | 301147211 | 4/14/2009 | REGISTERED |
| UNIVERSAL | | MALAYSIA | 85000139 | 1/10/1985 | 85000139 | 8/3/1995 | REGISTERED |
| UNIVERSAL | | NEW ZEALAND | 136174 | 9/10/1986 | 136174 | 2/24/1987 | REGISTERED |
| UNIVERSAL | | THAILAND | 701724 | 7/11/2008 | TM303900 | 7/11/2008 | REGISTERED |
| UNIVERSAL | | TAIWAN | 097029592 | 6/23/2008 | 1386072 | 11/16/2009 | REGISTERED |
| UNIVERSAL | | UNITED STATES | 73454160 | 11/23/1983 | 1350575 | 7/23/1985 | REGISTERED |
| UNIVERSAL | | VENEZUELA | 2008-009052 | 5/13/2008 | | | PENDING |
| UNIVERSAL FITNESS and Design | | CANADA | 1,117,398 | 10/3/2001 | TMA609,541 | 5/6/2004 | REGISTERED |
| UNIVERSAL Stylized (Version 1) | | AUSTRALIA | 1213143 | 12/3/2007 | 1213143 | 2/23/2009 | REGISTERED |

Schedule 4.5

| Mark | Image | Country | Application # | File Date | Registration # | Registration Date | Status |
|---|---|---|---|---|---|---|---|
| UNIVERSAL Stylized (Version 2) | | CANADA | 1,379,148 | 1/14/2008 | TMA785,605 | 12/21/2010 | REGISTERED |
| VELOCORE | | CANADA | 2,051,077 | 9/10/2020 | | | PENDING |
| VELOCORE | | CHINA | 49665139 | 9/11/2020 | 49665139 | 5/7/2021 | REGISTERED |
| VELOCORE | | EUROPEAN UNION (EUTM & RCD) | 18305463 | 9/11/2020 | 18305463 | 1/22/2021 | REGISTERED |
| VELOCORE | | UNITED KINGDOM | 3531966 | 9/10/2020 | 3531966 | 1/1/2021 | REGISTERED |
| VELOCORE | | UNITED STATES | 88831012 | 3/11/2020 | 6191653 | 11/3/2020 | REGISTERED |
| WINDRIGGER | | AUSTRALIA | 717889 | 9/20/1996 | 717889 | 8/15/1997 | REGISTERED |
| WINDSPRINT | | EUROPEAN UNION (EUTM & RCD) | 000473561 | 2/25/1997 | 000473561 | 6/17/1999 | REGISTERED |
| WINDSPRINT | | UNITED KINGDOM | 000473561 | 2/25/1997 | UK00900473561 | 6/17/1999 | REGISTERED |

**Registered Domain Names (Bowflex Inc.)**

| | | | |
|---|---|---|---|
| bowflex-latinamerica.com | bowflex.com.br | bowflex.jp | bowflexhomegyms.com |
| bowflex.adultblock | bowflex.com.cn | bowflex.kr | bowflexinsider.com |
| bowflex.ae | bowflex.com.es | bowflex.net | bowflexmaxtrainer.com |
| bowflex.asia | bowflex.com.gr | bowflex.no | bowflexselecttech.com |
| bowflex.at | bowflex.com.my | bowflex.nz | corebodyreformer.com |
| bowflex.au | bowflex.com.ru | bowflex.org | devnis.com |
| bowflex.be | bowflex.com.tr | bowflex.ph | dfxi.com |
| bowflex.biz | bowflex.com.ua | bowflex.pk | jrny.com |
| bowflex.by | bowflex.cz | bowflex.pl | maxtrainer.com |
| bowflex.bz | bowflex.de | bowflex.pt | modmov.com |
| bowflex.ca | bowflex.dk | bowflex.qc.ca | pr1000workouts.com |
| bowflex.cc | bowflex.es | bowflex.ro | qanls.com |
| bowflex.ch | bowflex.eu | bowflex.se | stagenis.com |
| bowflex.cn | bowflex.fi | bowflex.si | treadclimber.com |
| bowflex.co | bowflex.fitness | bowflex.tel | ucworkouts.com |
| bowflex.co.ee | bowflex.fr | bowflex.training | universalhomefitness.ca |
| bowflex.co.il | bowflex.gr | bowflex.tv | universalhomefitness.com |
| bowflex.co.in | bowflex.hk | bowflex.tw | versatrainer.com |
| bowflex.co.nz | bowflex.hu | bowflex.uk | |
| bowflex.co.uk | bowflex.ie | bowflex.us | |
| bowflex.co.za | bowflex.in | bowflex.vn | |
| bowflex.com | bowflex.info | bowflexbody.com | |
| bowflex.com.au | bowflex.it | bowflexcatalog.com | |

<u>Schedule 4.5</u>

31506174_v16

31506174_v16