| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br><br>DISTRICT OF NEW JERSEY | |
| In Re:<br><br>BOWFLEX, INC.<br><br>          Debtor. | Case No.:   24-12364-ABA<br><br>Chapter:    11<br><br>Hearing Date:    07/31/2025<br><br>Judge:    Andrew B. Altenburg, Jr. |

## MEMORANDUM DECISION

Before this court is a *Joint Motion of the Bowflex Liquidating Trust and Johnson Health Tech Trading, Inc., Johnson Health Tech Retail, Inc. and their Affiliate Entities to Enforce the Plan, Confirmation Order, and Sale Order* (Doc. No. 777) ("Motion to Enforce") filed by the BowFlex Liquidating Trust (the "Trust"), Johnson Health Tech Trading, Inc. ("JHTT") and Johnson Health Tech Retail, Inc. ("JHTR," and together with JHTT and its affiliated entities, "Johnson") (collectively the "Movants"). Movants seek to (i) enforce the release, injunction, gatekeeper, and limitation of liability provisions; (ii) compel Elizabeth M. Cosin, Duke Douglas, Alan Calderon, and Robert Ahearn (collectively, the "Plaintiffs") to dismiss with prejudice four putative class-action complaints filed against BowFlex and/or Johnson arising out of the Debtors' pre-petition and pre-closing operations (together, the "Violative Actions");[1] (iii) find that the Violative Actions and any other similar claims or causes of action based on the manufacture and sale of the Debtors' products that arose prior to April 22, 2024 are void *ab initio*; and (iv) granting such further relief as the Court deems just and proper. For the reasons that follow, the Motion to Enforce is hereby granted.

## JURISDICTION AND VENUE

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), and the court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334, 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23,

---

[1] *See Douglas v. Johnson Health Tech Trading, Inc. et al.*, Case No. 3:25-cv-0500, Docket No. 1 (W.D. Wis.) (the "Douglas Complaint"); *Cosin v. Johnson Health Tech Retail, Inc.*, Case No. 4:25-cv-5085, Docket No. 1 (N.D. Cal.) (the "Cosin Complaint"); *Calderon v. Johnson Health Tech Trading, Inc. et al.*, 3:25-cv-00513, Docket No. 1 (W.D. Wis.) (the "Calderon Complaint"); *Ahearn v. Johnson Health Tech Trading, Inc., et al.*, Case No. 2:25-cv-03435, Docket No. 1 (E.D.N.Y.) (the "Ahearn Complaint," and together with the Douglas Complaint, Cosin Complaint and Calderon Complaint, the "Complaints").

1984, as amended on September 18, 2012, and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. Pursuant to Federal Rule of Bankruptcy Procedure 7052, the court issues the following findings of fact and conclusions of law.

## FACTS AND PROCEDURAL HISTORY[2]

Debtors, BowFlex Inc. (the "Debtor") and BowFlex New Jersey LLC (collectively with the Debtor, the "Debtors") filed for chapter 11 bankruptcy on March 3, 2024.[3] As is the normal course of a mega-case, on March 6, 2024, the court issued an Order authorizing Debtors to retain and appoint Epiq Corporate Restructuring, LLC as the claims and noticing agent.[4] Doc. No 63. Said appointment was effective as of March 4, 2024, i.e., the Petition Date. *Id.* at ¶2. On March 15, 2024, the Official Committee Of Unsecured Creditors ("Creditors Committee") was appointed. Doc. No. 116. The Creditors Committee remained active throughout the case.

On April 12, 2024, the court entered an *Order (I) Setting Bar Dates For Filing Proofs Of Claim, Including Requests For Payment Under Section 503(B)(9), (II) Setting A Bar Date For The Filing Of Proofs Of Claim By Governmental Units, (III) Setting A Bar Date For Allowance Of Administrative Expense Claims, (IV) Establishing Amended Schedules Bar Date And Rejection Damages Bar Date, (V) Approving The Form Of And Manner For Filing Proofs Of Claim, (VI) Approving Notice Of Bar Dates, And (VII) Granting Related Relief*. Doc. No. 253. On that same day, a document titled: *Notice Of (I) Dates By Which Parties Must File Proofs Of Claim And Administrative Expense Requests, And (II) Procedures For Filing Proofs Of Claim, Including Claims Under 11 U.S.C. § 503(B)(9), And Administrative Expense Requests Against The Debtors* was filed on the court's Docket (the "Bar Date Notice"). Doc. No. 255. The Debtors provided the Bar Date Notice via first class mail to all known persons or entities holding potential claims. Doc. No. 374. In addition, the Debtors caused the notice of the Bar Date Notice to be published in *USA Today* and *The Seattle Times*. Doc. Nos. 337 and 338. Lastly, the Debtors delivered the Bar Date Notice via email to over 1,800,000 customers, in accordance with the Court's order providing for this method of service. Doc. No. 374. Ms. Cosin admits that she received the Bar Date Notice from Epiq on April 16, 2024. *See* Declaration of Elizabeth M. Cosin, Doc. No. 802, ¶2 and Exhibit 1.[5]

---

[2] The Plaintiffs do not challenge the authenticity of Movants' exhibits, Doc. No. 806, submitted for purposes of the July 31, 2025 hearing, Doc. No 807 at ¶1, and did not object to those exhibits on any other grounds. Nevertheless, the court finds it easier and prefers to refer to the exhibits as they exist on the docket of the case and will be using the court's Docket number ("Doc. No.") instead of the exhibit number.

[3] On March 6, 2024, the court entered an order granting the Debtors' motion for joint administration of the cases with the BowFlex Inc. case being the lead case. Doc. No. 58.

[4] *See* 28 U.S.C.A. § 156(c) ("[a]ny court may utilize facilities or services, . . . which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, …") and *In re E. Orange Gen. Hosp., Inc.*, 587 B.R. 53, 58 (D.N.J. 2018) (district court acknowledging the ability on a bankruptcy court to appoint a claims and noticing agent for the Debtors).

[5] The other plaintiffs have remained silent on this issue.

### The Sale Transaction

On March 4, 2024, the Debtor entered an Asset Purchase Agreement with Johnson wherein Johnson sought protections to serve as a stalking horse bidder for a sale of the Debtor's assets. *See* Doc. No. 288 at 31-171, Exhibit A (the "APA"). On March 5, 2024, the Debtor filed the *Motion For Entry Of An Order (I)(A) Approving The Auction And Bidding Procedures, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Bid Deadlines And An Auction, (D) Approving The Form And Manner Of Notice Thereof, (E) Authorizing The Debtors To Enter Into The Stalking Horse Agreement, And (II) (A) Establishing Notice And Procedures For The Assumption And Assignment Of Contracts And Leases, (B) Authorizing The Assumption And Assignment Of Assumed Contracts, (C) Authorizing The Sale Of Assets And (D) Granting Related Relief* (the "Auction and Sale Motion"). Doc. No 35. The United States Trustee filed an Objection to the Auction and Sale Motion. Doc. No. 67. On March 8, 2024, the court conducted a hearing on the Auction and Sale Motion and while the bidding procedure portion of the motion was approved, the sale portion was adjourned until April 15, 2024. On March 8, 2024, the Bankruptcy Court entered an Order approving the bidding procedures and stalking horse protections. Doc. No 79 (the "Bid Order"). The Bid Order contained the Notice of Sale By Auction And Sale Hearing approved by the court. *See* Doc. No. 79 at 10, ¶20, Ex. 2 at p. 45-49 ("Sale Notice"). Between March 13, 2024 and March 15, 2024, the Sale Notice was published in *The New York Times*, *The Seattle Times* and *The Columbian*. *See* Doc. Nos. 784 -786. The Bid Order was subsequently amended on March 18, 2024. Doc. No. 131.

On March 14, 2024, Epiq also served Ms. Cosin via email as authorized by the court, with a copy of the Sale Notice.[6] *See* Certificate of Mailing filed by Epiq, Doc. No 152 at 2, ¶2.vii;[7] Doc. No. 805 at ¶¶ 6-8 (listing Ms. Cosin at her associated email address and identifying the notices she was served with at that address).[8] *See also* Declaration of Elizabeth M. Cosin, at Exhibit 1 (confirming the associated email as her email address). The Sale Notice informed all parties of the auction and sale with April 15, 2024 as the return date of for the hearing on the sale. It stated:

> **PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction at a hearing scheduled to commence on or before **April 15, 2024, at 1 p.m. (prevailing Eastern Time)** (the "Sale Hearing")
> . . .

Sale Notice, Doc. No. 79 at 2 (emphasis in original). It also warned:

---

[6] The other plaintiffs have remained silent on this issue.

[7] Actually, Epiq served over 1,800,000 customers via email with a copy of the Sale Notice.

[8] As to this fact, Plaintiffs objected to the testimony of the witness and asked that it be stricken. After discussion with Plaintiffs' counsel, the court indicated that it would listen again to the testimony as it understood that the witness testified that he personally reviewed the internal records of Epiq and confirmed that the Sale Notice, as well as every other document listed in the Declaration, was transmitted to emcosin@mac.com and did not generate any bounce-back, error, undeliverable message, or other irregularity that would indicate an issue with service. Having listened to the testimony again, the court has confirmed its understanding of the witness testimony and finds the witness, the testimony and the information contained in these paragraphs of the Declaration credible. The court finds Mr. Saraceni's testimony was based on his personal knowledge and review of Epiq's business records and, accordingly, the Plaintiffs' oral motion to strike the testimony of Mr. Saraceni as hearsay is hereby denied.

3

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANYOBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Sale Notice, Doc. No. 79 at 2-3 (emphasis in original).

The auction took place and Johnson was the successful bidder. On April 15, 2024, the court conducted its hearing on the motion to approve the APA and sale to Johnson. Counsel for the Creditors Committee and United States Trustee *appeared and participated*. Ms. Cosin did not object to the sale or appear at the hearing. Having concluded that proper notice had been given, all the necessary elements for approval of the sale under Section 363 of the Bankruptcy Code, 11 U.S.C. § 363, had been met, and further concluded that Johnson was the successful purchaser, the court entered the *Order (I) Approving The Sale Of The Acquired Assets Free And Clear Of All Liens, Claims And Encumbrances, (II) Authorizing The Debtors To Enter Into And Perform Their Obligations Under The Asset Purchase Agreement, And (III) Granting Related Relief* (the "Sale Order"). *See generally*, Doc. No. 288 at 5-16. In the Sale Order, the court approved the APA. Doc. No. 288 at 4, and 17, ¶5. The Sale Order included a copy of the APA. *Id.*, Ex. A at 31 *et seq.*

Notably, in ultimately approving the sale, the court found that Johnson was a good faith purchaser under the Bankruptcy Code and that the APA was negotiated, proposed, and entered into by the Debtors and Johnson without collusion and from arm's-length bargaining positions. The court found that neither party engaged in any conduct that would cause or permit the APA or the sale to be avoided. Sale Order, Doc. No, 288 at 7, Art. III, ¶¶H and I; Doc. No. 288 at 13-14, Art. IX, ¶¶U and W. The court also acknowledged that:

> [Johnson] would not have entered into the APA and would not consummate the transactions contemplated thereby, if (i) the sale and/or transfer of the Acquired Assets to [Johnson] were not free and clear of all Claims, Encumbrances and Interests (other than Assumed Liabilities and Permitted Liens), or (ii) [Johnson] would, or in the future could, be liable for any such Claims, Encumbrances and Interests (other than the Assumed Liabilities and Permitted Liens).

Sale Order, Doc. No. 288 at 13, Art. IX, ¶V.

Having made its determination that the sale was appropriate, the court ruled that:

> This Sale Order and the terms and provisions of the APA shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of and holders of equity interests in any Debtor, any holders of Claims, Encumbrances and

Interests (whether known or unknown) in, against, or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchaser, designees, successors and assigns of the Purchaser, the Acquired Assets, and any trustees, examiners, or receivers, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. The APA shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their equity holders, or any trustees, examiners, or receivers. Any trustee appointed in these cases (including a Chapter 7 trustee, if applicable) shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Sale Order. This Sale Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing (including the Purchaser's designees).

Sale Order, Doc. No. 288 at 18-19, ¶8.

As to the transfer of the Debtors' assets, they were sold to Johnson "free and clear" Paragraph 9 of Sale Order specifically provides in relevant part:

Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code…the Debtors are authorized and directed to transfer the Acquired Assets to the Purchaser in accordance with the terms of the APA and such transfer shall constitute a legal, valid, binding, and effective sale….[P]ursuant to sections 105(a) and 363(f) of the Bankruptcy Code, other than the Assumed Liabilities and Permitted Liens, the Acquired Assets *shall be sold free and clear of all Claims, Encumbrances and Interests of any kind or nature whatsoever.…*"

Sale Order, Doc. No. 288 at 19, ¶9 (emphasis added). Further the Order states:

As of Closing, this Sale Order (a) shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Acquired Assets to the Purchaser pursuant to the APA and (b) is and shall be effective as a determination that all Claims, Encumbrances and Interests (other than Assumed Liabilities and Permitted Liens) existing as to the Acquired Assets have been and hereby are adjudged to be unconditionally released, discharged and terminated, . . .

Sale Order, Doc. No. 288 at 21, ¶13.

As to Johnson's successor liability and the prohibition against litigation against Johnson, Paragraph 15 of the Sale Order provides:

**Prohibition of Actions Against the Purchaser.**

15. All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed to or by the [Johnson] pursuant to the APA are hereby directed to surrender possession of the Acquired Assets to the Purchaser on the Closing Date. Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities, including, without limitation, the Debtors, creditors, employees, former employees, shareholders, administrative agencies, tax and regulatory authorities, governmental departments, secretaries of state, federal, state and local officials, litigation claimants, and their respective successors and assigns, are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and/or transfer the Acquired Assets to the Purchaser (or its designee) in accordance with the terms of the APA and this Sale Order and are hereby forever barred, estopped and permanently enjoined from asserting such claims against any Purchaser Party or its property (including the Acquired Assets).

Sale Order, Doc. No. 288 at 23, Art. IV ¶15. What is more, the court ordered that:

19. No Purchaser Party shall be deemed, as a result of any action taken in connection with the APA, the consummation of the Transaction or the transfer, operation or use of the Acquired Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than solely with respect to any Assumed Liabilities after the Closing), (b) have *de facto* or otherwise merged with or into the Debtors or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors, in each case for any purpose or under any applicable law.

20. Except as expressly provided in the APA with respect to the Purchaser, no Purchaser Party shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective business or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

Sale Order, Doc No. 288 at 24-25, ¶¶19-20.

Above all, in its findings, the court concluded that the Sale Order also permanently enjoined all entities from seeking to enforce successor liability claims. This court found that:

**VII. No Merger.**

O. Neither the Purchaser nor its subsidiaries, parents, affiliates, designees, successors and assigns, nor any of its nor their respective directors, managers,

officers, employees, shareholders, members, agents, representatives or attorneys (collectively, the "Purchaser Parties"), is a mere continuation of the Debtors or their estates and there is no continuity of enterprise or common identity between any Purchaser Party, on the one hand, and the Debtors, on the other hand. No Purchaser Party is holding itself out to the public as a continuation of the Debtors or their estates. None of the Purchaser Parties is a successor to the Debtors or their estates by reason of any theory of law or equity, and the Transaction does not amount to a consolidation, merger, or *de facto* merger of any Purchaser Party with or into any of the Debtors.

Sale Order, Doc. No. 288 at 9-10, Art. VII ¶O.

Finally, the Sale Order contains broad reservations of this court's jurisdiction to adjudicate matters related to it. Paragraph 27 of the Sale Order provides in relevant part:

The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto…and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transaction, including, but not limited to, retaining jurisdiction to…(b) interpret, implement, and enforce the provisions of this Sale Order; *and (c) protect the Purchaser against any Claims, Encumbrances and Interests with respect to the Sellers or the Acquired Assets of any kind or nature whatsoever…*.

Sale Order, Doc. No. 288 at 27-28, ¶27 (emphasis added).

On April 22, 2024, the Debtors and Johnson closed on the sale of substantially all of the Debtors' assets for $37.5 million.

### The Plan

On May 23, 2024, the Debtors filed their Chapter 11 Plan and Disclosure Statement. Doc. Nos. 400 and 401. In connection therewith, the Debtors filed a *Motion For Entry Of An Order (I) Approving The Adequacy Of The Disclosure Statement, (II) Approving The Solicitation And Voting Procedures With Respect To Confirmation Of The Proposed Joint Chapter 11 Plan Of Liquidation Of Bowflex Inc. And Its Debtor Affiliate, (III) Approving The Forms Of Ballots And Notices In Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, And (V) Granting Related Relief* (the Adequacy Motion"). Doc. No. 402. As Exhibits to the proposed form of Order for the Adequacy Motion, the Debtors attached, *inter alia*, a ballot for voting on the Debtors' Plan and information regarding the release opt-out related to third party releases set forth in Article IX of the Plan and the Plan and the binding effect of the Plan. Doc. No. 402, Ex A. Ms. Cosin admits that she received notice of the Adequacy Motion on May 24, 2024. Doc. No. 802 at ¶3 and Exhibit 2. In the notice, Ms. Cosin was advised that the Debtors' Disclosure Statement and Plan were being submitted to the court for approval at a hearing on June 20, 2024, to consult the documents, and to seek copies of those documents. *Id.* The Debtors also timely delivered the Adequacy Motion Notice via email to over 1,800,000 customers. Doc. No 805 at ¶6. On June 20, 2024, the court

conducted a hearing on the adequacy of the Debtors' Disclosure Statement and approved same. The order approving the adequacy of the Disclosure Statement was signed on June 21, 2024. Doc. No. 474.

The Debtors then filed a First Modified Plan (Doc. No. 475), and a Second Modified Plan, which provided for the creation of the Trust to facilitate distributions to creditors (Doc. No. 607). After a full hearing on the Debtors Second Modified Plan (the "Plan") on August 19, 2024, the court rendered its oral decision and entered its *Findings Of Fact, Conclusions Of Law, And Order Confirming The Second Amended Joint Chapter 11 Plan Of Liquidation Of Bowflex Inc. And Its Debtor Affiliate* (the "Confirmation Order"). Doc. No. 614. A copy of the Plan was attached to the Confirmation Order. Ms. Cosin has admitted she received notice of the entry of the Confirmation Order. Doc. No. 802 at ¶4 and Exhibit 3. The Debtors also delivered the notice of the entry of the Confirmation Order via email to over 1,800,000 customers. Doc. No. 805 at 3, ¶6.

The Plan contains an Injunction provision which provides in relevant part:

> all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that . . . are otherwise satisfied, stayed, released or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding . . . against the Debtors [or the Trust]."

Doc. No. 607 at 46, Plan Art. IX.D.[9] "The term "entity" includes person, estate, trust, governmental unit, and United States trustee." 11. U.S.C. § 101(15). *See also* the Confirmation Order, Doc. No. 614 at 23, ¶29.iv (finding that "the releases, injunctions, and exculpations set forth in the Plan . . . are fair, equitable, reasonable, and in the best interests of the Debtors" and that "[t]he injunction provision set forth in Section IX.D of the Plan is essential to the Plan and necessary to preserve and enforce the Debtors' Releases, the Third-Party Releases, and the Exculpation, each as set forth in the Plan.").

Like the Sale Order, the Plan and the Confirmation Order contain broad reservations of this court's jurisdiction to adjudicate matters related to those documents. The Plan provides, in relevant part, this court:

> shall retain exclusive jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157 over all matters arising in or related to the Chapter 11 Cases for among the other things, the following purposes:
>
> * * *
>
> 8. Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all

---

[9] Of note, nothing in the "Plan shall affect, impair or supersede the Sale Order(s) or Sale Documents, each of which remains in full force and effect and governs in the event of any inconsistency with this Plan." Plan, Doc. No. 607 at 32, Art. IV.J.

contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement.

9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan.

10. Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of this Plan.

11. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in this Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions.

* * *

24. Enforce all orders previously entered by the Bankruptcy Court….

Doc. No. 607 at 55-57, Article X ¶¶ 8-11, 24.

Additionally, Paragraph 113 the Confirmation Order provides:

**Retention of Jurisdiction.** The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article X of the Plan and section 1142 of the Bankruptcy Code.

Doc. No. 614 at 68, ¶ 113.

Lastly, the Plan contains a Gatekeeper provision which provides "No party may commence…a Cause of Action of any kind against the Debtors, the Liquidating Trust, the Exculpated Parties, or the Released Parties…without first" seeking leave from the bankruptcy court. Doc. No. 607 at 50, Plan Art. IX.G. *See also* the Confirmation Order, Doc. No. 614 at 23-24 (finding the "Gatekeeper Provision is material, necessary, appropriate, and critical to the effective and efficient administration, implementation, and consummation of the Plan.").

On June 5, 2025, Johnson, implemented a Recall for certain BowFlex Adjustable Dumbbells, which the Debtors had been selling since 2004, due to concerns that the weight plates in the dumbbells can dislodge and cause a potential hazard to its user. Thereafter, four Plaintiffs filed putative class action complaints against Johnson in three different district courts. These Complaints seek to hold Johnson responsible and liable for allegedly defective BowFlex Adjustable Dumbbells sold prior to the Closing Date, including on theories of successor liability. Two Plaintiffs—Douglas and Calderon—have named Debtor BowFlex as a defendant.  Johnson asserts Plaintiffs' claims all arise out of BowFlex Adjustable Dumbbells purchased prior to the Petition Date.

The Motion to Enforce and certification in support thereof was filed on July 1, 2025. Doc. Nos. 777 and 778. The parties entered into a *Stipulation and Consent Order Regarding Joint Motion to Enforce the Plan, Confirmation Order, and Sale Order and Related Deadlines* (the "Stipulation") agreeing to, *inter alia*, the deadlines for the parties to file their responsive pleadings and scheduling the plenary hearing on the matter. Doc. No. 796. The Plaintiffs timely filed an Objection and certifications in support thereof on July 21, 2025. Doc. Nos. 800, 801, 802. Consistent with the Stipulation, the Movants timely filed a Response and a certification in support thereof on July 25, 2025. Doc. Nos. 804 and 805. The Movants then filed their witness and exhibit list. Doc. No. 806. The Plaintiffs filed a response to that witness and exhibit list. Doc. 807. In that response the Plaintiffs did not dispute the authenticity of the exhibits relied on by the Movants (but reserved the right to object to them on other grounds). *Id*. at ¶1. Plaintiffs also indicated:

> 2.  Proposed Class Representative Elizabeth M. Cosin will be available during the July 31 hearing via Zoom if the Court wishes to ask her any questions regarding her declaration [Docket No. 802].

Doc. No. 807, ¶2.

Consistent with the Stipulation, the plenary hearing was held on Thursday, July 31, 2025 at which the court heard oral arguments from the party and testimony from Mr. Joseph Saraceni of Epiq. The parties made closing arguments after Mr. Saraceni's testimony. Plaintiff's presented no witness. The court had no questions about the Declaration of Ms. Cosin.

The record is closed and the matter is ripe for resolution.

## DISCUSSION

While the parties raise numerous issues and arguments, the court has determined that resolution of the Motion to Enforce requires the court to answer two primary questions: (1) whether this matter is brought under the court's core or non-core jurisdiction; and (2) whether the Debtors provided adequate notice to potential creditors. Consequently, the court will discuss only the arguments relevant to these issues.

### Jurisdiction

### 1.  The Parties' Arguments

Movants assert this court has jurisdiction under 28 U.S.C. §§ 157 and 1334, the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Simandle, C.J.), paragraph 113 of the Confirmation Order, paragraph 27 of the Sale Order, and Article X of the Plan.[10] Movants further assert this is a core proceeding pursuant to 28 U.S.C. § 157(b). Doc No. 777 at 10, ¶7. Movants contend that pursuant to Section 105(a), 11 U.S.C. § 105(a), the court is empowered to enforce its prior orders and that where the plain terms

---

[10]  *See* Confirmation Order, Doc. No. 614 at 68, ¶113, Sale Order, Doc. No. 288 at 27, ¶27, Chapter 11 Plan, Doc. No. 607 at 50-52, Article X.

of the order unambiguously apply the terms should be given effect. Doc. No. 777 at 17, ¶38 quoting *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008) and *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009).

The Plaintiffs counter that this court lacks subject matter jurisdiction over their lawsuits. The Plaintiffs acknowledge that paragraph 113 of the Confirmation Order includes a broad reservation of subject matter jurisdiction, but the Plaintiffs assert the lawsuits concern claims arising under non-bankruptcy law between non-debtors with no conceivable effect on the Debtors' estates, so there is no arising in, arising under, or related to jurisdiction under 28 U.S.C. § 1334. Doc. No. 800 at 3 citing *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984). The Plaintiffs further contend the lawsuits will not in any way impede the consummation of, or have a "close nexus" to, the Debtors' reorganization Plan. Doc. No. 800 at 3 citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161, 166-67 (3d Cir. 2004). The Plaintiffs maintain that Johnson can assert that the Sale Order bars the defect claims before the district courts.

Plaintiffs assert this court does not have ancillary jurisdiction to enforce the Sale Order because the Sale Order does not bar the defect claims. The Plaintiffs argue that while this court always has ancillary jurisdiction to interpret and enforce its prior order such power doesn't extend to every dispute that is an alleged collateral attack on the sale free and clear provisions of a sale order. Doc. No. 800 at 4 citing *In re Ray*, 624 F.3d 1124 (9th Cir. 2010) and *In re D'Angelo*, 654 B.R. 553 (Bankr. W.D. Pa. 2023). Plaintiffs maintain it is Johnson's burden, a burden which it has failed to carry, to identify an order entered by this court enjoining the Proposed Class Representatives from pursuing the defect claims against Johnson. Doc. No. 800 at 5 citing *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

The Plaintiffs deny that the language of paragraph 15 of the Sale Order enjoins the defect claims. The Plaintiffs read the language of paragraph 15 as only prohibiting litigation that would interfere with consummation of the sale; a transaction that was consummated more than a year ago. Doc. 800 at 5. The Plaintiffs contend Movants drafted the injunction language and any ambiguity must weigh against Movants' interpretation.

Movants counter that Plaintiffs have mistakenly asserted this court does not have ancillary jurisdiction and Plaintiffs have completely failed to address the court's core jurisdiction. Movants emphasize this court is exercising its core jurisdiction when it is called to "interpret and to give effect to its previous sale orders." Doc. No. 804 at 6, ¶12 quoting *In re Essar Steel Minn., LLC*, 47 F.4th 193, 197 (3d Cir. 2022) and citing *In re Allegheny Health Educ. & Rsch. Found.*, 383 F.3d 169, 174–76 (3d Cir. 2004), *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991), *In re Motors Liquidation Co.*, 428 B.R. 43, 57 (S.D.N.Y. 2010). Movants argue that contrary to Plaintiffs' assertions, the court's core jurisdiction to interpret and enforce its own order is not limited to actions by or against a debtor or its successors but includes actions between non-debtors and other non-debtors. Doc. No. 804 at 7, ¶13 citing *Allegheny Health*, 383 F.3d at 175–76 and *In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002). The Movants contend the Plaintiffs directly challenge the interpretation and enforcement of the Sale Order by attacking the sufficiency of the notice given and whether the language of the Sale Order enjoins the Violative Actions and, thus, the court's core jurisdiction is invoked because the court must interpret and give effect to its prior Sale Order. Doc. No. 804 at 8, ¶15. Movants also note that Articles X.9., X.10., X.11., X.13. and

11

X.18 of the Plan specifically reserve to the court's jurisdiction over matters arising in or related to the chapter 11 cases including the matters raised in the Motion to Enforce.

Movants explain that the Plaintiffs' reliance upon *Pacor* and *In re Resorts* is misplaced. *Pacor* is inapplicable because it sets forth the Third Circuit's test for "related to" (non-core) jurisdiction. Doc. No. 804 at 10, ¶19. Plaintiffs' reliance upon *In re Resorts* is unavailing because as the Third Circuit explained in *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 260 (3d Cir. 2007) a court may in the context of post-confirmation litigation choose which type of jurisdiction, core or non-core, to assert as to the particular matter before the court.  Doc. No. 804 at 10, ¶20.

## 2.   The Law

A bankruptcy court may exercise jurisdiction over four categories of matters: "(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *In re Marcus Hook*, 943 F.2d at 264.

Bankruptcy court jurisdiction is divided into "core" and "non-core" proceedings. Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are core proceedings. *In re Combustion Eng'g Inc.*, 391 F.3d 190, 225-26 (3d Cir. 2004). A proceeding arises under the Bankruptcy Code when the Code creates the cause of action or provides the substantive right being invoked. *Stoe v. Flaherty*, 436 F.3d 209, 213, 217 (3d Cir. 2006). A proceeding arises in a case when it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case and has no existence outside of a bankruptcy case.  *Id.* at 216 (quoting *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999)).

## 3.   Legal Analysis

The matter before this court presently is Movants' Motion to Enforce. This court is not exercising jurisdiction over the Plaintiffs' putative class action claims. A motion to enforce a bankruptcy court's prior sale order and/or confirmation order is within the court's core subject matter jurisdiction. *See e.g. In re East Orange Gen. Hosp., Inc.*, 587 B.R. 54, 73 (D.N.J. 2018) (district court affirmed bankruptcy court's exercise of its core jurisdiction to grant motion to enforce sale order and to require claimant to dismiss state court employment discrimination case).

The current Motion to Enforce is based upon the court's properly entered Sale Order and Confirmation Order. While it is not disputed by the parties, the court wishes to emphasize that the entry of the Sale Order itself was a core proceeding within the jurisdiction of the court because a sale order is authorized by the Code, 11 U.S.C. § 363, which empowers a debtor to sell property free and clear. Indeed, such a sale order is listed as a core proceeding in 28 U.S.C. § 157(b)(2)(N). *See also In re TWA Inc.*, 322 F.3d 283, 289-90 (3d Cir. 2003). The injunctive provision and successor liability provisions contained within the Sale Order were likewise within the court's core jurisdiction. *In re Te Holdcorp LLC*, No. 22-1807, 2023 U.S. App. LEXIS 2029 at *7, 2023 WL 418059 at *2 (3d Cir. Jan. 26, 2023).

The Third Circuit has repeatedly held that a post-sale and post-confirmation posture of an enforcement motion did "not divest the Bankruptcy Court of jurisdiction because it had jurisdiction to interpret and enforce those prior orders." *In re Te Holdcorp LLC*, 2023 U.S. App. LEXIS 2029 at *7, 2023 WL 418059 at *2 citing *Travelers*, 557 U.S. at 151 (a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders."); *In re Essar Steel*, 47 F.4th at 199-200 (bankruptcy court had core jurisdiction to interpret "the discharge injunction order in its own plan and confirmation order" post-confirmation); *In re Allegheny Health*, 383 F.3d at 174-76 (post-confirmation matter "was a core proceeding because it required the court to interpret and give effect to its previous sale orders"). *See also In re East Orange*, 587 B.R. at 72-75; *In re CTE 1 LLC¸* No. 19-30256 (VFP), 2024 Bankr. LEXIS 1235, at *3-*4, 2024 WL 2349620 at *2 (Bankr. D.N.J. May 21, 2024).

The court will first examine the non-exhaustive list of core proceedings provided in 28 U.S.C. §157(b)(2) to determine whether the Motion to Enforce is a core proceeding. The Motion to Enforce falls within the scope of 28 U.S.C. § 157(b)(2)(A) as a "matter[ ] concerning the administration of the estate." The motion also falls within the scope of 28 U.S.C. § 157(b)(2)(N) as a "order[ ] approving the sale of property other than property resulting from claims brought by the state against persons who have filed claims against the estate." The Motion falls within the scope of 28 U.S.C. § 157(b)(2)(O) as "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." The Motion to Enforce concerns estate administration (Section 157(b)(2)(A)), related to an order approving the sale of property (Section 157 (b)(2)(O)), and affects the liquidation of the estate (Section 157(b)(2)(O)).  *See In re East Orange*, 587 B.R. at 74 (affirming bankruptcy court had core jurisdiction over a motion to enforce sale order against a state law employment discrimination plaintiff); *In re CTE¸* 2024 Bankr. LEXIS 1235 at *3, 2024 WL 2349620 at *2 (holding the court had core jurisdiction under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O)).

Second, the Third Circuit has held that where a proceeding requires a court to interpret and give effect to its previous sale order the matter is a core proceeding.  *In re Allegheny Health,* 383 F.3d at 176. The Motion to Enforce asks the court to determine whether the Sale Order and Confirmation Order in conjunction with the Plan bar the Plaintiffs' defect claims. Pursuant to the Third Circuit's guidance in *In re Allegheny*, the Motion to Enforce constitutes a core proceeding because it asks this court to interpret and enforce its prior orders. *See also In re East Orange*, 587 B.R. at 74; *In re CTE¸* 2024 Bankr. LEXIS 1235 at *3, 2024 WL 2349620 at *2.

Alternatively, the Motion to Enforce is core proceeding either "arising in" or "arising under" the bankruptcy case, and therefore jurisdiction exists under 28 U.S.C. § 1334(b). *See In re Christ Hosp.*, 502 B.R. 158, 180 n.25 (Bankr. D.N.J. 2013), *aff'd*, No. CIV.A. 14-472 ES, 2014 U.S. Dist. LEXIS 128409, 2014 WL 4613316 (D.N.J. Sept. 12, 2014) (holding the "matter "arises under title 11" (§ 363 and the statutory confirmation process), and "arises in" a case under title 11 (that is, the collateral attack on this court's orders undertaken during the pendency of this Chapter 11 case); *In re East Orange*, 587 B.R. at 74-75.

Movants have requested that this court enforce the Sale Order issued pursuant to 11 U.S.C. § 363—Use, sale, or lease of property. Consequently, this proceeding arises under Section 363 of

the Bankruptcy Code. *See In re East Orange*, 587 B.R. at 75 quoting 1 Collier on Bankruptcy ¶ 3.01 (stating that sales free and clear of liens are an example of civil proceedings "arising under title 11"). By rendering a decision on the Motion to Enforce, the court is merely resolving a matter of bankruptcy administration that arose in and could only occurred in a bankruptcy case.

Finally, if the parties are in any doubt as to whether this court has jurisdiction to resolve the Motion to Enforce, the court can exercise its inherent or ancillary jurisdiction to enforce its own orders. *See Travelers*, 557 U.S. at 151 (recognizing that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders"); *In re Revel AC, Inc.*, 532 B.R. 216, 224 (Bankr. D.N.J. 2015) (asserting ancillary jurisdiction to enforce the Sale Order, which expressly reserved this Court's jurisdiction over matters arising out of or related to the Sale Order). As detailed above, the Sale Order, the Confirmation Order, and the Plan all contain a reservation of this court's exclusive jurisdiction. *See* Doc No. Doc. No. 288 (Sale Order) at 27-28, ¶27 ("The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA…"); Doc. No. 614 (Confirmation Order) at 68, ¶ 113 ("retain[ing] jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article X of the Plan…); Doc. No. 607 (the Plan) at 53-55, Article X, ¶24 (retaining exclusive jurisdiction to "[e]nforce all orders previously entered by the Bankruptcy Court."). In Paragraph 9 of the Sale Order this court found that pursuant to Section 363 Johnson had acquired the assets of the Debtors "free and clear." Doc. No. 288 at 19, ¶9. Paragraphs 19 and 20 of the Sale Order provide that Johnson shall not have any successor or vicarious liability arising out of its acquisition of Debtors' assets. Doc. No. 288 at 24-25, ¶¶19-20. The enforcement of the provisions of the Sale Order and Confirmation Order are at the heart of the Motion to Enforce whether under the statutory grant of jurisdiction, 28 U.S.C. § 1334, or under the court's ancillary jurisdiction.  *See In re East Orange*, 587 B.R. at 75.

Having determined that the Motion to Enforce is within this court's core subject matter jurisdiction, the court roundly rejects the Plaintiffs' arguments regarding any alleged lack of subject matter jurisdiction. The Plaintiffs not only ignored the distinction between core and non-core subject matter jurisdiction but also case law from the Third Circuit and the District of New Jersey that unequivocally holds that the enforcement of a bankruptcy court's prior sale order, confirmation order and related discharge and gatekeeper provisions are within a bankruptcy court's core subject matter jurisdiction. *See In re Essar Steel, In re Allegheny, In re Marcus Hook*, *In re East Orange, In re Revel, In re CTE 1.* The Plaintiffs seemingly rushed into district court without any concern for the effects of the Debtors' bankruptcy case on their claims or any regard for the injunction and gatekeeper provisions approved by this court.  *See* Doc. No. 607 at 50, Plan Art. IX.G (Gatekeeper provision); Doc. No. 607 at 46, Plan Art. IX.D (Injunction Provision); Confirmation Order, Doc. No. 614 at 23-24 (Gatekeeper provision). Plaintiffs assert their defect claims are not barred by the Sale Order. The interpretation of the scope and effect of this court's Sale Order is a core matter as it necessary to provide full effect to Sale Order, the Plan, and the Confirmation Order which effectuated the sale of Debtors' assets free and clear to a good faith purchaser who consummated the transaction based upon the negotiated terms of the APA, as approved by the Sale order, and the Plan, as approved by the Confirmation Order, which included both a prohibition on successor liability and an injunction against future claims arising from pre-petition assets. To accept the Plaintiffs' assertions would undermine the underlying policies of the Bankruptcy Code including the swift and efficient administration of a debtor's estate and finality.

14

**Adequate Notice**

### 1. The Parties' Arguments

The Plaintiffs argue the language of the Sale Order does not apply because they were not served with adequate notice as required by due process, the Federal Rules of Bankruptcy Procedure, and the Bid Order. The Plaintiffs assert that despite representations in the ¶44 of Auction and Sale Motion (Doc. No. 35) and the actual notice requirement of Rule 6004(c), there is no evidence Debtors served actual notice of the proposed sale on the holders of the defect claims, and accordingly Debtors' assets were not sold free and clear.  Doc. No. 800 at 7 citing *In re Savage Indus.*, 43 F.3d 714 (1st Cir. 1994).

The Plaintiffs argue both the Debtors, who had received 337 complaints regarding dislodging plates, and Johnson, who during its due diligence should have become aware of the complaints, had adequate knowledge of the alleged defect and should have provided actual notice to the Plaintiffs. Doc. No. 800 at 8. The Plaintiffs rely upon *In re Motors Liquidation*, 829 F.3d 135, 158-61 (2d Cir. 2016) which held that publication notice was not sufficient adequate notice where General Motors had adequate knowledge of the extent and nature of the alleged defect.

The Plaintiffs assert at least some of the holders of defect claims were identified in the Debtors' books and records as purchasers of the Debtors' defective products. Ms. Elizabeth Cosin avers she did not receive notice of the hearing regarding the motion to sell the Debtors' assets, but did receive on April 16, 2024, one day after entry of the Sale Order, notice of the general bar date, and then subsequently she received notice of the Debtors' reorganization plan. Doc. No. 802 at ¶2, Exhibit 1. The Plaintiffs submit that the holders of the defect claims that were served with the notice of general bar date, such as Ms. Cosin, are known creditors that were specifically entitled to actual notice of the proposed sale free and clear of the defect claims. Doc. No. 800 at 10-11.

Finally, the Plaintiffs assert that the Sale Order cannot be enforced because the Sale Notice failed to provide reasonable notice the sale affected the rights of the holders of defect claims. The Plaintiffs argue that the Sale Notice was defective it failed to disclose: (1) the existence of the defect; (2) that the sale to Johnson would be free and clear of the defect claims; and (3) that any successor liability claims would be terminated. Doc. No. 800 at 12 citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 15 (1978), *In re Barton Indus.*, 104 F.3d 1241, 1245 (10th Cir. 1997), I*n Re Linkous*, 990 F.2d 160 (4th Cir. 1993).

The Plaintiffs argue, in the event that the court determines the Plaintiffs are "unknown creditors," that the notice by publication was in adequate because the language of the Bid Order[11]

---

[11]     **ANY PARTY…WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR A SALE TRANSACTION…SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS….**

Bid Order, Doc. No. 79 at 42 (emphasis in original).

was insufficient to advise the Plaintiffs that they had purchased defective products, and that the Sale Order would bar their defect claims. Doc. No. 800 at 13 citing *In re Motors Liquidation*, 829 F.3d at 159 (holding "if a debtor does not reveal claims that it is aware of, then bankruptcy law cannot protect it.").

Movants counter that Plaintiffs' assertion of inadequate notice is an end-run around the court's conclusions that the notice of the Sale Transaction was "good, sufficient and appropriate under the circumstances" and the Sale Transaction indisputably extinguished the Plaintiffs' purported claims as against Johnson. Doc. No. 804 at 13-14, ¶27.

Movants argue that under the totality of the circumstance the Plaintiffs received adequate notice. Doc. No. 804 at 14, ¶28 citing *In re CTE 1 LLC*, 2024 WL 2349620, at *8 (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010)). Movants note the totality of the circumstances encompasses the policies underlying Section 363 including maximizing property value and prompt and effectual administration and settlement of the Debtors' estate. Movants assert that attaching successor liability to good-faith, third party purchasers would have a chilling effect on future sales and lower recovery by creditors. Movants also contend allowing Plaintiffs to pursue their claims would result in Plaintiffs reaping the windfall of a full recovery rather than a pro-rata distribution contrary to the Code's priority scheme. Doc. No. 804 at 15, ¶29 citing *In re TWA.*, 322 F.3d at 292.

Movants assert the Plaintiffs received more than sufficient notice to satisfy due process whether the Plaintiffs are considered "known" or "unknown" creditors. Movants note the court approved service via email (Doc. No. 72 at 6, ¶8) and entered the Bid Order finding the proposed form of Notice of Sale By Auction And Sale Hearing constituted adequate notice of the Sale Transaction. *See* Doc. No. 79 at 10, ¶20. Additionally, Movants assert that pursuant to the presumption of delivery for properly mailed notice, the Debtors carried their burden with respect to demonstrating notice was proper. Doc. No. 804 at 19, ¶30 citing *In re Freedom Commc'ns Holdings, Inc.*, 472 B.R. 257, 261 (Bankr. D. Del. 2012) and *Stephenson v. AT&T Servs., Inc.*, No. 0709, 2021 U.S. Dist. LEXIS 153021 at *12-*13, 2021 WL 3603322, at *5 (E.D. Pa. Aug. 13, 2021).

Next, the Movants assert the Plaintiffs were not known creditors and that Publication notice in *The New York Times* on March 13, 2024, *The Seattle Times* on March 14, 2024, and *The Columbian* on March 14, 2024, was sufficient for unknown creditors. Movants argue that simply being a debtor's customer or making a complaint to a debtor does not make a claimant an "known creditor," but rather there must be more specific or substantial contact such as a demand for arbitration or the threat of litigation to transform an unknow creditor into a known creditor. Doc. No. 804 at 17, ¶33 relying upon *In re Rental Car Intermediate Holdings, LLC*, No. 20-11247 (MFW) 2022 Bankr. LEXIS 1945 at *19, 2022 WL 2760127, *7, and *8 n.73 (Bankr. D. Del. July 14, 2022). Movants contend the mere existence of customer complaints against the Debtors cannot establish either the Debtors' or Johnson's knowledge of any alleged defect that could give rise to potential claims, because such complaints cannot establish that a defect existed. Doc. No. 804 at 17, ¶34 citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("[s]ome courts

have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect.").

In the alternative, Movants argue to the extent actual notice was required because the Plaintiffs were known creditors, the Debtors satisfied their burden as to actual notice. Consistent with this court's order (Doc. No. 72 at 6, ¶8), the Debtors served by email copies of the Sale Notice on 1,816,576 BowFlex consumers. Movants maintain Ms. Cosin is presumed to have received direct notice despite her assertion that she did not receive notice of the Sale Transaction based upon her own certification that she received notice of the bar date and the Debtor's Plan and based upon the certificates of service filed by the Debtors' claims and noticing agent, Epiq, which triggered the presumption of delivery. Doc. No. 804 at 20-21, ¶42 relying upon *In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 304 (3d Cir. 2002) (properly mailed item is presumed to have been received by addressee) and *Stephenson*, 2021 U.S. Dist. LEXIS 153021 at \*12-\*13, 2021 WL 3603322 at \*5 (presumption of delivery applies to email). Additionally, Movants assert the Cosin Declaration (Doc. No. 802) is rebutted by the Saraceni Declaration (Doc. No. 805), which confirms that Ms. Cosin was provided email notice of the Sale Notice at the same email address at which she admits she received other notices in this case.  Doc. No. 804 at 21, ¶43.

Movants argue the form and content of the Sale Notice satisfied the requirements of Bankruptcy Rule 2002(a)(2), (c)(1), which requires that notice of a section 363 sale must include: (1) a general description of the property; (2) the time and place of any public sale; (3) the terms and conditions of any private sale; (4) the time to file objections; and (5) for a proposed sale or lease of personally identifiable information under a statement whether the sale is consistent with any policy that prohibits transferring the information. Doc. No. 804 at 21-22, ¶¶45-46. Movants note the Auction and Sale Notice unambiguously advised that Debtors' assets would be transferred "**FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS….**" Doc. No. 804 at 22, ¶47 (emphasis in original).

Movants argue Plaintiffs' reliance upon *Memphis Light, In re Barton Indus., Inc.*, and *In re Linkous* is misplaced and those cases are distinguishable. Movants assert *In re Cone Mills Corp.*, 313 F. App'x 538, 540-41 (3d Cir. 2009), which rejected a creditor's assertion that its successor liability claims against a purchaser were not extinguished because the debtor, Cone Mills, failed to provide it with specific notice that a 363 sale would eliminate its successor liability claims, is directly on-point, dispositive, and inapposite to the Plaintiffs' arguments. Doc. No. 804 at 23-24, ¶50.

## 2.  The Law

Section 102(1) of the Bankruptcy Codes defines "Notice" to mean "such notice as is *appropriate in the particular circumstances . . ..*" 11 U.S.C. § 102(1) (emphasis added).  The particular circumstances refers to whether a creditor is "known" or "unknown." *Chemetron Corp. v. Jones*, 72 F.3d 341, 345-47 (3d Cir. 1995). A known creditor is one whose identity is either actually known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988). On the other hand, an unknown creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the

17

debtor]." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Known creditors are entitled to actual written notice of a debtor's bankruptcy filing. *Chemetron Corp.*, 72 F.3d at 345. While notification by publication will generally suffice for unknown creditors. *Id. See also In re Energy Future Holdings Corp*, 949 F.3d 806, 822 (3d Cir. 2020) ("claimants who were unknown ... were entitled only to publication notice of a property deprivation."); *In re CTE 1*, 2024 Bankr. LEXIS 1235 at *25, 2024 WL 2349620 at *9. "The burden of proving inadequate notice lies with the party contending that a plan's discharge or injunction does not apply. *In re RML, LLC*, 662 B.R. 858, 868 (Bankr. S.D.N.Y. 2024) (other citations omitted).

### 3.  Legal Analysis

The court examines the particular circumstances of this case to determine (1) whether the Plaintiffs are known or unknown creditors and (2) whether the Plaintiffs received adequate notice.

The Plaintiffs[12] are "unknown creditors" as defined by the Supreme Court and the Third Circuit. The record does not contain any evidence that the Debtors had any knowledge of the Plaintiffs' claims at the time the Debtors filed for bankruptcy. The Plaintiffs identities as potential creditors were not reasonably ascertainable by the Debtors.  The Plaintiffs were four customers among the more than 1.8 million customers the Debtors could identify from their books and records. The Plaintiffs have not alleged they are among the small group of customers who complained to the Debtors about the dumbbells. The Plaintiffs have not provided any evidence that they engaged in communication with the Debtors concerning the existence of their alleged claims. *See In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 47 n.10 (Bankr. D. Del. 2012) ("The availability of the Whites' names and address in the Debtors' loan files may have reflected that the Whites were known customers, but without more, it did not make them 'known creditors.'"); *In re CTE I*, 2024 Bankr. LEXIS 1235 at *14-*16, 2024 WL 2349620 at *8-9 (concluding that a customer who did not have any communication with the Debtor or its predecessor about the existence of his claim was an unknown creditor).

Further, the Plaintiffs reliance upon the Second Circuit's opinion in *In re Motors Liquidation* is unavailing.  In that case, General Motors failed to disclose the existence of the ignition switch defect during its bankruptcy.  In the decade prior to filing for bankruptcy the existence of the defect became known to General Motors' engineers, its legal department, and its product safety teams. *In re Motors Liquidation*, 829 F.3d at 148-50.  In addition, General Motors received customer complaints, news reports of fatalities linked to the defect, and a National Highway Traffic Safety Administration report on the defect.  *Id.* As a result of this overwhelming evidence of General Motors' reckless disregard of the facts, the Second Circuit held that General Motors had actual knowledge of the defect, and the holders of ignition switch defects were entitled to actual notice by direct mail or some equivalent. *Id*. at 160-61. In this case, the existence of 337 complaints regarding a product without more information does not constitute evidence of a defect or claim about which the Debtors and Johnson should have known and given actual notice.

---

[12] Ms. Cosin averred that she was customer of BowFlex, Inc. and that she received several notices via email related to the Debtors' bankruptcy case. Doc. No. 802. The court does not have any information regarding the other three putative class representatives.

As unknown creditors, the publication of the Sale Notice in the *The New York Times*, *The Seattle Times*, and *The Columbian* was adequate notice to the Plaintiffs. *In re Energy Future Holdings Corp*, 949 F.3d at 822 (claimants who were unknown at the time of the discharge were entitled only to publication notice of a property deprivation).[13]

Even if the court were to conclude the Plaintiffs were known creditors, the court would conclude that the Plaintiffs received adequate notice via email as authorized by the Court.

Ms. Cosin was a customer of the Debtors and as such received email notice of the Debtors' Bankruptcy. At the hearing, Mr. Joseph Saraceni, a senior consultant at Epiq, testified in support of his Declaration (Doc. No. 805). Mr. Saraceni testified that a list of over 1.8 million customer email addresses was created by FTI Consulting, Inc., the Debtors' financial advisor, based on a search of the Debtors' books and records. That list was used to provide notice to the Debtors' customers of its bankruptcy. Mr. Saraceni testified that once the email list was finalized on March 7, 2024, Epiq did not direct any alterations of the customer email list. And while Mr. Saraceni had no personal knowledge as to the creation of the customer list, he further testified that he was aware that the customer email list was maintained in an excel file at Epiq and that he *personally* searched the file for Ms. Cosin's email address and, additionally, searched for "Cosin." He confirmed that his search revealed that Ms. Cosin's email address, emcosin@mac.com (an email address confirmed by Cosin in Doc. No. 802), was present in the file. His personal research further revealed that Epiq served the Sale Notice on March 14, 2024. Thereafter, Epiq served the Bar Date Notice, the Order Shortening Notice, and the Effective Date Notice. Mr. Saraceni testified Epiq kept a file containing a list of email addresses that generated bounce back notices or undeliverable messages, he personally searched that file, and Ms. Cosin's email did not appear on the list for any of the notices served by Epiq.[14] This testimony supports the presumption that the Debtors properly served Ms. Cosin via email at her email address all the requisite notices including the Sale Notice.

Ms. Cosin merely avers that she did not receive the Sale Notice but she did receive the other notices. The court does not find Ms. Cosin's simple assertion of non-receipt sufficient to rebut the evidence provided by Mr. Saraceni that Ms. Cosin's email address was on the customer list by March 7, the list was never altered, and Epiq did not record any bounce back or undeliverable messages associated with Ms. Cosin's email address. *Stephenson*, 2021 U.S. Dist. LEXIS 153021 at *12-*13 ("party alleging that it did not receive the letter has the burden of establishing such, and merely asserting that the letter was not received, without corroboration, is insufficient to overcome the presumption of receipt."). Ms. Cosin has not provided any evidence that she did not receive the Sale Notice other than her counsel's assertion that she could not find it

---

[13] The court also concludes that the notice given to the Creditors Committee was sufficient. The Creditors Committee was active throughout the Debtors' bankruptcy filing objections and negotiating with the Debtors. The Plaintiffs, had they filed claims, would have been classified as unsecured creditors; the very class represented by the Creditors Committee. In *Southern Railway Co. v. Johnson Bronze Co.*, 758 F.2d 137 (3d. Cir. 1985), the Third Circuit held that a known creditor did not need to receive actual notice when the notice was sent to the creditors committee pursuant to Bankruptcy Rule 2002(i). *See also In re CTE 1, In re CTE 1 LLC*¸ 2024 Bankr. LEXIS 1235, at *20-*22, 2024 WL 2349620 at *7-*8. The Creditors Committee, in addition to over 1.8 million customers, were served with the relevant notices.

[14] The court notes that Mr. Saraceni's written testimony (Doc. No. 805) and in-court testimony were entirely consistent.

in her email. Accordingly, the court finds that the method of service was adequate and Ms. Cosin, and by extension, the other Plaintiffs were provided with adequate notice via email.

The court also rejects the Plaintiffs arguments that the contents of the Sale Notice were not sufficiently specific to notify the Plaintiffs their defect claims would be extinguished by the Sale Transaction. The Plaintiffs argue that for the Sale Notice to provide adequate notice, it was required to disclose: (1) the existence of the defect; (2) that the sale to Johnson would be free and clear of the defect claims; and (3) that any successor liability claims would be terminated.

First, the Sale Notice, as approved by the court, satisfied the requirements of Rule 2002(c)(1). Rule 2002(c)(1) does not require disclosure of an alleged defect or specific warnings that the Sale Transaction would extinguish defects. Second, the Plaintiffs assume there was known defect at the time of the bankruptcy; an assertion that is not supported by the record. Third, the Sale Notice specifically warned in the section titled "**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**" that the Debtors' property was being sold "fee and clear." The Debtors met the requirements of the Bankruptcy Code and it was incumbent upon any potential creditors to take action to protect any potential claims they might have had. *See Mullane*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ("The notice must be of such nature as reasonably to convey the required information."); *In re RML*, 662 B.R. at 869 (rejecting argument that publication failed to satisfy due process because the bar date notice did not mention defective product giving rise to claims). *See also In re Placid Oil Co.*, 753 F.3d 151, 158 (5th Cir. 2014) ("We have never required bar date notices to contain information about specific potential claims.").

The Plaintiffs reliance upon *Memphis Light, Barton*, and *Linkous* is not persuasive. *Memphis Light*, which was not a bankruptcy case, merely required that a utility provider advise customers of the opportunity to contest a charge and seek redress from the utility. *Barton* and *Linkous* are distinguishable on the grounds that they addressed insufficient notice provided to secured creditors in the context of plan confirmation not within the context of notice to unknown, unsecured creditor of a sale transaction. Plaintiffs' assertion that the Debtors were required to explicitly explain that the sale would bar defect claims improperly commingles the requirements of the Sale Notice under Rule 2002 with the requirements of the of the disclosure statement under 11 U.S.C. § 1125.

### The Cases Filed Against the Debtors

The Douglas Complaint and the Calderon Complaint name the Debtors as defendants. The Plaintiffs have acknowledged the Debtors must be dismissed from the putative class actions. Doc. No. 800 at 1. Nevertheless, the court wishes to emphasize that parties who failed to file a proof of claim prior to the bar date are forever barred from asserting a claim against the Debtors. Doc. No. 253 at 11, ¶12. Further, the Plaintiffs and any other parties who attempt to raise similar claims are bound by the provisions of the Plan and Confirmation Order including the Injunction provision (Plan Art. IX.G.) and the Gatekeeper provision (Plan Art. IX.G.) which prohibit prosecution of claims against the Debtors. Doc. No. 607 at 49-50.

The court also concludes the Douglas Complaint and the Calderon Complaint are *void ab initio* at to the Debtors. "Actions which violate the discharge injunction, similar to actions which

violate the automatic stay, are *void ab initio*…." *In re Mariner Post-Acute Network, Inc.*, 303 B.R. 42, 47 (Bankr. D. Del. 2003) quoting *In re Motley*, 268 B.R. 237, 242 (Bankr. C.D. Cal. 2001) (holding state court action was *void ab initio* because plaintiffs asserted causes of action in violation of the confirmation order and discharge injunction).

The court directs the Plaintiffs to dismiss the Debtors from Douglas and Calderon actions within seven days of the filing of this Memorandum Decision and accompanying order.

## **CONCLUSION**

The court has reached two conclusions: (1) the court has jurisdiction over the Movants' Motion to Enforce and (2) the Debtors provided adequate notice of the Sale Transaction to both known and unknown creditors.  Following upon these conclusions, the court finds the Plaintiffs claims are pre-petition claims that are barred by the Plan and the Confirmation Order. In addition, successor liability for the Plaintiffs' defect claims did not attach to Johnson. The filing of the Plaintiffs complaints violated the Sale Order, Plan, and Confirmation Order. Based upon these findings and conclusions the court holds that the Motion to Enforce shall be granted. In addition, the court need not address the parties' other arguments as a result of the court's conclusions.

An Order has been entered consistent with this opinion.

Dated: August 11, 2025                              /s/ Andrew B. Altenburg, Jr.
                                                    Judge, United States Bankruptcy Court
                                                    For the District of New Jersey